Michael Hurey (State Bar No. 139,550)
mhurey@kleinberglerner.com
Christopher J. Dugger (State Bar No. 239,427)
cdugger@kleinberglerner.com
Philip L. Nulud (State Bar No. 245,147)
pnulud@kleinberglerner.com
KLEINBERG & LERNER, LLP
1875 Century Park East, Suite 1150
Los Angeles, California 90067-2501
Telephone: (310) 557-1511
Facsimile:  (310) 557-1540

Attorneys for Defendants IMPLANT DIRECT MFG. LLC,
IMPLANT DIRECT LLC and IMPLANT DIRECT INT'L

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ZEST IP HOLDINGS, LLC, a Delaware limited liability company; ZEST ANCHORS, LLC, a Delaware limited liability company<br><br>Plaintiffs,<br><br>v.<br><br>IMPLANT DIRECT MFG. LLC, a Nevada limited liability company; IMPLANT DIRECT LLC, a Nevada limited liability company; IMPLANT DIRECT INT'L, a Nevada corporation<br><br>Defendants. | Case No.  10-CV-0541 LAB(WVG)<br><br>**IMPLANT DIRECT'S OPPOSITION TO ZEST'S MOTION FOR LEAVE TO AMEND ITS INFRINGEMENT CONTENTIONS**<br><br>Judge: Hon. Lawrence A. Burns<br>Place: Courtroom 9, 2nd Floor<br>Date:   TBD<br>Time:  TBD |

# TABLE OF CONTENTS

I. Background ................................................................................................................4

II. Legal Argument ..........................................................................................................5

    A. Zest's Motion Must be Denied Because The Amended Infringement Contentions are Directed to the Wrong Party .................................5

        1. Zest's Motion is Futile ................................................................................5

        2. Zest has Not Made Any Effort to Add IDSI as a Defendant in this Action.................................................................................................7

        3. Third-Party IDSI Would be Prejudiced if the Present Motion is Granted .......................................................................................8

    B. Zest's Proposed Contentions Do Not Meet the Requirement of the Local Patent Rules ...............................................................................................9

    C. Zest Does Not Have Good Cause To Amend .......................................................10

        1. Implant Direct Will be Prejudiced if the Motion is Granted ..................11

        2. Zest Will not Suffer Prejudice if the Motion is Denied...........................13

III. Conclusion ................................................................................................................14

# TABLE OF AUTHORITIES

Cases

*Bonin v. Calderon*,
  59 F.3d 815 (9th Cir. Cal. 1995) .............................................................................................. 7

*Eli Lilly & Co. v. Crabtree*,
  485 F. Supp. 2d 982, 998 (S.D. Ind. 2006) .............................................................................. 6

*Life Techs. Corp. v.Biosearch Techs., Inc.*,
  No. C 12-00852 WHA, 2012 WL 1831595, at *2 (N.D. Cal. May 18, 2012) ............................... 13

*LG Elecs., Inc. v. Q-lity computer , Inc. v. Asustek Computer, Inc.*,
  211 F.R.D. 360 (N.D. Cal.2002) ............................................................................................ 10

*MEMC Elec. Materials, Inc. v. Mitsubisi Materials Silicon Corp.*,
  420 F.3d 1369 (Fed. Cir. 2005) ............................................................................................. 10

*Nova Measuring Instruments Ltd. v. Nanometrics, Inc.*,
  417 F. Supp. 2d 1121 (N.D. Cal 2006) .................................................................................. 10

*O2 Micro Int'l, Ltd. v. Monolithic Power Sys.*,
  467 F.3d 1355 (Fed. Cir. 2006) ............................................................................................. 11

*Outdoor Systems, Inc. v. City of Mesa,*
  999 F.2d 604 (9th Cir. 1993) ................................................................................................. 8

*Quickie Mfg. Corp v. Libman Co.*,
  180 F. Supp. 2d 636 (D.N.J. 2002) ......................................................................................... 9

*Scholle Corp v. Liqui-Box Corp.*,
  2000 U.S. Dist. LEXIS 18485 (C.D. Cal. June 21, 2000) ........................................................ 9

*Tivo, Inc. v. Verizon Commc'ns, Inc.*,
  No. 2:09-CV-257-JRG, 2012 WL 2036313, at *2 (E. D. Tex. June 6, 2012) .......................... 13

*Western Shoshone Nat'l Council v. Molini*,
  951 F.2d 200, 204 (9th Cir. 1991), ........................................................................................ 7

Statutes

35 U.S.C. § 271 .......................................................................................................................... 6

Rules

Local Patent Rule 3.1 ..................................................................................................... 4, 9, 10

Local Patent Rule 3.7 .......................................................................................................... 10

Defendants submit this memorandum in opposition to the motion by Plaintiffs ("Zest") to amend the patent infringement contentions in this action. The motion should be denied for the following reasons: (1) Zest is pursuing its claim of infringement against the incorrect party, and the amendment would therefore be futile; (2) the claim charts offered by Zest do not comply with the requirements of Local Patent rule 3.1(c); (3) the Defendants would be prejudiced if Zest were to be permitted to introduce a new claim of infringement at this late date; and (4) Zest will not be prejudiced if the present motion is denied.

## I. BACKGROUND

Three separate companies are named as Defendants in the present action: Implant Direct Manufacturing, LLC, Implant Direct, LLC and Implant Direct Int'l, LLC (in this memorandum, the term "Implant Direct" is intended to refer collectively to the three named Defendants). Zest accuses Implant Direct of infringing United States Patents 6,030,219 and 6,299,447 by selling components of an overdenture attachment system. The products at issue are sold under the trademarks GPS and GoDirect (the "Original Accused Products"). The attachment system includes an abutment that is fastened to a dental implant. A metal cap that includes a nylon liner (also referred to as the "male member") attaches to the abutment. The GPS and GoDirect products previously identified by Zest include a connection between the abutment and the nylon liner in the metal cap which is located on the *external* surface of the abutment.[1] Zest now seeks to add an additional product which includes an *internal* connection between the abutment and the cap. (The attachment system with the internal connection will be referred to as the "New Accused Product" in this memorandum.)

---

[1] Further technical information concerning the GPS and GoDirect products are included in Implant Direct's claim construction briefs filed in this action.

- 4 -  IMPLANT DIRECT'S OPPOSITION TO ZEST'S MOTION FOR LEAVE TO AMEND ITS INFRINGEMENT CONTENTIONS

None of the named Defendants conducted any businesses after November of 2010. Declaration of Gerald Niznick at ¶ 4.  At that time, the original Implant Direct companies entered into a joint venture transaction with third-party Sybron Canada Holdings, Inc. ("Sybron Canada"). Niznick Decl.¶ 2, Exhibit 1.  All business under the "Implant Direct" tradename is now conducted by three different legal entities, which (in the interests of clarity) will be collectively referred to as Implant Direct Sybron International, or IDSI.[2]  IDSI is the legal entity that is presently engaged in the manufacture and sale of the GoDirect and GPS products with an external connection that are the subject of Zest's original infringement contentions.  IDSI also sells the product with an internal connection.  Niznick Decl.¶ 6.

## II.     LEGAL ARGUMENT

**A.     Zest's Motion Must be Denied Because The Amended Infringement Contentions are Directed to the Wrong Party**

**1.     Zest's Motion is Futile.**

Zest now seeks to add the New Accused Product to its infringement contentions.  The motion should be denied because the named Defendants have had nothing whatsoever to do with the New Accused Product.  Consequently, Zest cannot possibly prove patent infringement for the New Accused Device and its proposed amendments to the infringement contentions would be futile.

---

[2] The exact corporate structure is somewhat complicated.  Three legal entities were formed in the transaction with Sybron Canada: (1) Implant Direct Sybron International, LLC; (2) Implant Direct Sybron Manufacturing, LLC; and (3) Implant Direct Sybron International, LLC.  Each of these companies were originally wholly-owned subsidiaries of a prior Implant Direct Company.  At the closing of the transaction the original Implant Direct companies sold 75% of the IDSI entities to Sybron Canada.  Assets of the prior Implant Direct companies were also transferred to the IDSI entities.  Details of the transaction are set out in the Transaction Agreement, a copy of which is attached as Exhibit 1 to the accompanying declaration of Dr. Gerald Niznick.

Zest concedes that the New Accused Product was developed in March of 2011. Zest Memo (Docket No. 107.1) at 1. That was *after* the date that Implant Direct ceased doing business and IDSI was formed. Dr. Niznick testified in his deposition that he first conceived of the potential structure for an internal connection in approximately March of 2010 when Zest filed its Complaint in this action. The mere mental act of conceiving an idea, however, does not constitute infringement. *See, Eli Lilly & Co. v. Crabtree*, 485 F. Supp. 2d 982, 998 (S.D. Ind. 2006)("'Conception is the formation in the mind of the inventor, of a definite and permanent idea of the complete and operative invention, as it is hereafter to be applied in practice.")(internal citations omitted). A company only infringes a patent if it "makes, uses, offers to sell, or sells" the accused product. 35 U.S.C. § 271. Implant Direct never made, used, offered to sell or sold the New Accused Product. Niznick Decl., ¶ 7. Dr. Niznick conceived of the structure of the New Accused Product in March of 2010, but actual development work did not begin until almost a year later - *after* Implant Direct ceased doing business. Niznick Decl., ¶ 6. Dr. Niznick testified in his deposition that although he conceived of both products at the same time, the Original Accused Devices (i.e., devices with an external connection) were developed first.

> Q. Now, so why did you go forward with the, what we're calling the external cap, instead of doing both at the same time, the external and internal?
>
> A. I -- I had conceived them both at the same time, and we had to start with one, so we started with the external. It was easier to make, probably, easier to injection mould, we're just now getting our injection moulds for the internal one. I don't know. Started with one then went to the other.

Transcript of May 11, 2012 Deposition of Dr. Gerald Niznick at 214:1-12. Dugger Decl., ¶ 2, Exhibit 1.

Development of the internal connection did not begin until approximately March of 2011. That was when IDSI first created an engineering drawing for the New Accused Product. A copy of the engineering drawing is attached as Exhibit 2 to the Declaration of Dr. Niznick. The drawing

has a date of creation of date of March 19, 2011.  Zest concedes this date in its brief, as noted above.  IDSI did not advertise the New Accused Devices until March of 2012 - a point which Zest also concedes.  *Id*. at 3.  IDSI began to manufacture the New Accused products at about the same time.  That was when it received the injection molds for the parts, as discussed by Dr. Niznick in his deposition.  All of these dates were more than a year after the named Defendants ceased doing business.  Zest has presented no evidence that Implant Direct has engaged in any actions in connection with the New Accused Product that would constitute infringement.  Simply put, Implant Direct did not make, use, sell or offer for sale the New Accused Device.

Zest will not be able to show that Implant Direct has engaged in acts of infringement in connection with the New Accused Product.  Consequently, Zest's motion to amend will be futile.  One basis for denying a motion to amend is when the amendment will be futile.

> [Courts] often consider: bad faith, undue delay, prejudice to the opposing party, futility of the amendment, and whether the party has previously amended his pleadings.  *Western Shoshone Nat'l Council v. Molini*, 951 F.2d 200, 204 (9th Cir. 1991), *cert. denied*, 121 L. Ed. 2d 39, 113 S. Ct. 74 (1992). However, each is not given equal weight. Futility of amendment can, by itself, justify the denial of a motion for leave to amend.  Thus, in *Outdoor Systems*, 997 F.2d 604, 614 (9th Cir. 1993), we affirmed the district court's denial of a motion for leave to amend because the proffered amendments would be nothing more than an exercise in futility.

*Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. Cal. 1995).  Although the holding in *Bonin* was in connection with the amendment of a pleading, the same concepts are applicable here.  The amendment offered by Zest cannot possibly lead to a finding of infringement by in connection with the New Accused Product by Implant Direct.  The amendment is futile.  This futility, by itself, is sufficient grounds to deny the motion to amend.

2**.**     **Zest has Not Made Any Effort to Add IDSI as a Defendant in this Action.**

Zest has not made any effort to add IDSI as a Defendant in this action.  Zest could easily have filed such a motion previously.  Implant Direct produced a copy of the Transaction

Agreement between Implant Direct and Sybron Canada on July 29, 2011.  Dugger Decl., ¶ 3.  The Transaction Agreement details the formation of IDSI, and the conduct of the business after the closing of the transaction and formation of the joint venture.  Zest had full knowledge of the corporate structure of the Defendants and IDSI at that time.  Despite having the Transaction Agreement in its possession for nearly a year, Zest has made no effort to add IDSI as a party to this action.[3]

Zest has also not advanced any theory of liability which would make the currently-named Defendants liable for the acts of IDSI.  Indeed, it is difficult to conceive of a scenario where a predecessor entity that is no longer conducting business would be legally responsible for subsequent and independent acts of its successor.  Zest does not explain why it is attempting to hold Implant Direct liable for the later actions of IDSI.  Zest should bring a case against IDSI if it wishes to allege patent infringement by the New Accused Product.

### 3. Third-Party IDSI Would be Prejudiced if the Present Motion is Granted

IDSI would suffer severe prejudice if the present motion is granted.  It would be forced to file a motion to intervene in the case, so that it could present a defense.  IDSI would then be stepping into a lawsuit that has been pending for more than two years.  It would be denied the opportunity to file motions to dismiss under Rule 12, or to present any affirmative defenses that might be available to it - and which are different from the defenses available to Implant Direct.  Discovery is set to close on November 9, 2012.  It is very unlikely that IDSI would be able to step into the case, fully investigate the claims asserted against it, and develop all of its defenses in the short time that is remaining.  The Court should deny the present motion in order to prevent undue prejudice to third-party IDSI.

---

[3] IDSI would oppose any motion to add it as a Defendant at this late date.

**B.      Zest's Proposed Contentions Do Not Meet the Requirement of the Local Patent Rules**

The motion should be denied because the proposed infringement contentions offered by Zest fail to comply with the requirements of Local Patent Rule 3.1(c).  That Rule requires infringement contentions to include "[a] chart identifying specifically where each element of each asserted claim is found within each Accused Instrumentality."  The claim charts in Zest's motion do not meet these requirements.  Zest merely recites all of the elements of the patent claims and then states, in a conclusory fashion, that each element of the claims is present in the New Accused Product.  Zest does not specifically indicate where the various claim elements are located.

Implant Direct would expect to see an identification of specific structures in the New Accused Product that correspond to the various elements of the patent claims.  Zest could easily accomplish this task.  Implant Direct has produced copies of the engineering drawings for the products at issue.  Zest has the ability to point out the exact structure(s) in the New Accused Product that correspond to the claim elements of the Zest patents.  It did not do so.  Implant Direct can only assume that Zest is intentionally withholding information in order to obfuscate its infringement arguments, and deny Implant Direct information that would permit it to prepare for trial.  It is highly unlikely that Zest will try and prove its infringement case by showing the jury nothing more than the claim charts attached to the motion.  Zest should not be permitted to hide relevant information that is required to be disclosed by the rules.

Zest also assets that each and every claim element is present literally or under the doctrine of equivalents.  The doctrine of equivalents is available to a patent owner if there is no literal infringement. *See, e.g., Quickie Mfg. Corp v. Libman Co.*, 180 F. Supp. 2d 636, 647 (D.N.J. 2002) and *Scholle Corp v. Liqui-Box Corp.*, 2000 U.S. Dist. LEXIS 18485 (C.D. Cal. June 21, 2000).  An accused product cannot, therefore, infringe both literally and under the doctrine of equivalents.  Implant Direct cannot determine from the claim charts whether Zest is alleging literal infringement

or infringement under the doctrine of equivalents.  Furthermore, Zest's allegations do not specify which of the claims elements are missing.  Zest's claim charts should have identified which, if any, of the claim elements are missing in order for the doctrine of equivalents to be applicable.  Further, Zest also states that all of the claim elements are infringed by "direct, inducement or contributory" infringement.  This is no notice at all.  Zest has merely listed all of the different types of infringement that might be applicable.

The motion should be denied because Zest has failed to comply with the requirements of the Local Patent Rules.  At a minimum, if the Court is inclined to grant Zest's motion, it should make the amendment conditional on Zest first amending its claim chart to provide the specific information required by Local Patent Rule 3.1(c).

### C.     Zest Does Not Have Good Cause To Amend

Local Patent Rule 3.7 allows for the amendment of infringement contentions by an order of the Court upon a timely showing of "good cause."  Establishing good cause is a matter of discretion of the Court.  *See MEMC Elec. Materials, Inc. v. Mitsubishi Materials Silicon Corp.*, 420 F.3d 1369, 1380 (Fed. Cir. 2005).  The good cause requirement is interpreted conservatively, in order to give the local rules "bite" and prevent Plaintiff from adopting a "shifting sands" approach to claim construction.  *LG Elecs., Inc. v. Q-Lity Computer, Inc. v. Asustek Computer, Inc.,* 211 F.R.D. 360, 367 (N.D. Cal. 2002).

The purpose of the Local Patent Rules is to "require parties to crystallize their theories of the case early in litigation and to adhere to those theories once they had been disclosed." *Nova Measuring Instruments Ltd. v. Nanometrics, Inc.*, 417 F. Supp. 2d 1121, 1123 (N.D. Cal 2006).  It is essential because parties need to rely on the contentions in order to help them prepare their cases, including the costly and time consuming discovery, Markman hearings, expert testimony and pre-

trial motion practice.  Should the theories keep changing, it highly prejudices the opposing party which is left to re-strategize and expend more time and costs in response.  The reason for the rule is to avoid brinksmanship, gamemanship and strategies that essentially are no more than an ambush.  Accordingly, in keeping with these goals, a movant must show diligence from discovering new information to amending its infringement contentions.  *O2 Micro Int'l, Ltd. v. Monolithic Power Sys.*, 467 F.3d 1355, 1365 (Fed. Cir. 2006).  A movant must also show that the non-movant will not be prejudiced by the amendment.  *Id. at* 1364.  Zest cannot meet this standard.  Implant Direct will be severely prejudiced if the motion is granted.

### 1. Implant Direct Will be Prejudiced if the Motion is Granted.

Zest must show that Implant Direct will not be prejudiced if the present motion is granted.  Zest cannot make this showing.  Implant Direct will certainly suffer prejudice if Zest is allowed to add the New Accused Product to the infringement contentions.  Zest argues that there is no prejudice because there are no new infringement theories.  This is simply not true. Zest is attempting to allege that an entirely new product, which has a structure very different from what has already been identified, infringes the Zest patents.  This is the very epitome of a new theory of infringement.

The products previously accused of infringement by Zest contained a connection between the *external* surface of the abutment and the nylon male member.  The New Accused Product does not have this feature.  Instead, there is an *internal* connection between the abutment and the nylon male member.  This type of connection is an entirely new issue that has not been previously raised by Zest.  Implant Direct has never been placed on notice that the internal connection might considered when determining infringement of the Zest patents.  Consequently, Implant Direct did not consider the issue of an internal connection when preparing its claim construction briefs, designating expert witnesses or in the conduct of discovery to date.

The parties filed their claim construction briefs in August of 2011. Implant Direct was not placed on notice at that time that an internal connection was something that might be at issue in this case. Consequently, it did not focus its claim construction efforts on claim terms that might be relevant to the structure of the New Accused Device. Implant Direct likely would have proposed additional or different claim terms for construction if it knew that the internal connection was at issue. Implant Direct would have also included additional arguments in its briefs and at the *Markman* hearing before the Court on April 10, 2012. By adding the internal connection at this time, Implant Direct is deprived of the ability to present arguments that can rebut Zest's new claims of infringement.

Implant Direct filed a supplemental *Markman* brief of April 12, 2012. (Docket No. 91-2.) In that supplemental brief, Implant Direct withdrew its request that the Court construe the term "snap engagement" in the Zest patents. It is highly unlikely that Implant Direct would have made that request if it knew that Zest was contending that both the external and internal connections were at issue. Zest had never previously raised the issue of an internal connection. Therefore, there was less of a need - in the view of Implant Direct - for the Court to construe the meaning of the term snap engagement. The nature of the internal connection was not something that Zest had ever indicated might constitute an infringement of its patents.

Implant Direct also did not consider the issue of the internal connection when designating its expert witnesses. The deadline for expert witness designations was December 15, 2011. Implant Direct may need to designate an additional or different expert to testify on the nature of the internal connection, and explain how it relates - if at all - to the claims of the Zest patents. Permitting Zest to amend its infringement contentions at this time deprives Implant Direct of the ability to select an expert witness that is able to testify on all of the infringement theories advanced by Zest. Similarly, Implant Direct would be prejudiced because fact discovery closes on

November 9, 2012. Implant Direct will now need to conduct new and additional discovery on this added theory of infringement. There is very little time remaining for Implant Direct to investigate Zest's new claim at this late date.

The present situation stands in stark contrast to *Tivo, Inc. v. Verizon Commc'ns, Inc.*, No. 2:09-CV-257-JRG, 2012 WL 2036313, at *2 (E. D. Tex. June 6, 2012), which is cited by Zest in support of its claim of an absence of prejudice. In that case, the parties had over a year of discovery left and the court suggested that it would add more time if necessary *and* both parties agreed that significant discovery had already occurred. Furthermore, Zest's reliance on *Life Techs. Corp. v.Biosearch Techs., Inc.*, No. C 12-00852 WHA, 2012 WL 1831595, at *2 (N.D. Cal. May 18, 2012), is misplaced. Zest cites to that case for the proposition that Implant Direct would not be prejudiced since the amendment would introduce no new infringement theories. Zest neglects to mention that the amendment in that case was one of *form only*, necessitated because a venue change required compliance with a new set of local rules. *Id*. The amendment in that case actually reduced the number of asserted claims for trial. *Id*. In contrast, the present amendment would prejudice Implant Direct by increasing the number of products at issue.

In summary, Implant Direct will be severely prejudiced if Zest is allowed to amend its infringement contentions at this late date. Zest will lose the ability to seek construction of claim terms that specifically relate to the internal connection. In addition, Zest will not have an opportunity to designate expert witnesses to testify concerning the New Accused Devices, or sufficient time to conduct discovery into Zest's new legal theories.

**2.      Zest Will not Suffer Prejudice if the Motion is Denied.**

Zest, on the other hand, will not be prejudiced if the motion to amend is denied. Zest can always file a separate action against the proper parties to allege infringement of its patents by the New Accused Product. A new lawsuit will give the defendants a proper opportunity to raise any

applicable defenses, and fully investigate Zest's claims of infringement.  The defendants in the new case will also have an opportunity to ask the Court to construe any claim terms in the Zest patents that have not already been construed, and which are specifically relevant to the nature of the internal connection between the abutment and the cap.  If Zest is concerned that there will be a multiplicity of trials, with the potential for inconsistent results, it can move to consolidate under Rule 42, or to stay the present action until the second lawsuit is ready for trial.

### III.   CONCLUSION

For the foregoing reasons, Zest's motion to amend its infringement contentions should be denied.

Date:   August 13, 2012                    By:   */s/Christopher J. Dugger*
                                                              Michael Hurey, Esq.
                                                              Christopher J. Dugger, Esq.
                                                              Philip L. Nulud
                                                              Kleinberg & Lerner, LLP
                                                             1875 Century Park East, Suite 1150
                                                             Los Angeles, CA 90067

                                                             Attorneys for Defendants
                                                             IMPLANT DIRECT MFG. LLC,
                                                             IMPLANT DIRECT LLC and
                                                             IMPLANT DIRECT INT'L

# CERTIFICATE OF SERVICE

I, the undersigned, declare under penalty of perjury that I am over the age of 18 years and not a party to this action; and that I served the individuals on the below-service list the following document(s):

**IMPLANT DIRECT'S OPPOSITION TO ZEST'S MOTION FOR LEAVE TO AMEND ITS INFRINGEMENT CONTENTIONS**

Filed August 13, 2012 on the ECF system and served pursuant to General Order No. 550, with:

| | |
|---|---|
| Lisa M. Ferri<br>lferri@mayerbrown.com | Attorneys for Plaintiffs |
| Brian W. Nolan<br>bnolan@mayerbrown.com | |
| Manuel J. Velez<br>mvelez@mayerbrown.com | |
| John Nadolenco<br>jnadolenco@mayerbrown.com | |
| John H. Lien<br>jlien@mayerbrown.com | |
| Brandon D. Baum<br>bbaum@mayerbrown.com | |
| John Molenda<br>jmolenda@mayerbrown.com | |

/*s/Christopher J. Dugger*
Christopher J. Dugger
Email: cdugger@kleinberglerner.com