Michael Hurey (State Bar No. 139,029)
mhurey@kleinberglerner.com
Robert N. Treiman (State Bar No. 133,299)
rtreiman@kleinberglerner.com
Christopher J. Dugger (State Bar No. 239,427)
cdugger@kleinberglerner.com
KLEINBERG & LERNER, LLP
1875 Century Park East, Suite 1150
Los Angeles, California 90067-2501
Telephone: (310) 557-1511
Facsimile: (310) 557-1540

Attorneys for Defendants IMPLANT DIRECT MFG. LLC,
IMPLANT DIRECT LLC and IMPLANT DIRECT INT'L

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ZEST IP HOLDINGS, LLC, a Delaware limited liability company; ZEST ANCHORS, LLC, a Delaware limited liability company<br><br>        Plaintiffs,<br><br>    v.<br><br>IMPLANT DIRECT MFG. LLC, a Nevada limited liability company; IMPLANT DIRECT LLC, a Nevada limited liability company; IMPLANT DIRECT INT'L, a Nevada corporation<br><br>        Defendants. | Case No.  10-CV-0541 LAB (WVG)<br><br>**OPPOSITION OF DEFENDANTS IMPLANT DIRECT MFG. LLC, IMPLANT DIRECT LLC, AND IMPLANT DIRECT INT'L, TO PLAINTIFFS' MOTION TO JOIN IMPLANT DIRECT SYBRON INTERNATIONAL AND IMPLANT DIRECT SYBRON MANUFACTURING LLC PURSUANT TO RULE 25(c)**<br><br>Date:    November 13, 2012<br>Time:   11:15 a.m.<br>Place:   Courtroom 9, 2d Floor |

-1-                **OPPOSITION TO MOTION TO JOIN**

**I.   INTRODUCTION**

Defendants Implant Direct Mfg., LLC ("IDM"), Implant Direct LLC and Implant Direct Int'l ("IDI") (collectively, "Defendants" or "Implant Direct"), for themselves alone, oppose the motion of Plaintiffs Zest IP Holdings, LLC and Zest Anchors, LLC ("Plaintiffs" or "Zest") pursuant to Federal Rule of Civil Procedure 25(c) to join Implant Direct Sybron International ("IDSI") and Implant Direct Sybron Manufacturing, LLC ("IDSM") as defendants in this action.[1]

The motion should be denied for the following reasons:

*First*, Plaintiffs have not served IDSI and IDSM with their motion pursuant to Federal Rule of Civil Procedure 4, as is required by Rule 25(c).  Plaintiffs cannot avoid the service requirement by suggesting that the transaction at issue somehow was a "shell game" or that IDSI and IDSM are the "same parties" as Defendants.  The transaction that created IDSI and IDSM was an arms-length transaction in which a subsidiary of a major corporation, Danaher, purchased assets from Defendants, and the assets relating to the Accused Products (the GoDirect and GPS products) comprised only a small part of the assets that were sold.

*Second*, Plaintiffs have unreasonably delayed in filing their Rule 25(c) motion.  Plaintiffs have known of the transaction at issue since December 2010.  Defendants produced a complete set of the transaction documents during discovery, and Plaintiffs' counsel had possession of those documents by July 29, 2011.  Plaintiffs waited until August 21, 2012 to file this motion.  Courts have denied Rule 25(c) motions where the moving party failed to act promptly.

*Third*, Plaintiffs filed their motion well after the Court's deadline for adding new parties.  The Court's scheduling order of February 9, 2011 (Docket No. 27) set the deadline for filing a motion to join parties as March 14, 2011.  While Plaintiffs' request that the Court's Scheduling Order be amended, Plaintiffs have not shown that they acted diligently in seeking to amend the Scheduling Order.

---

[1] Defendants note that the only relief requested by Plaintiffs is to join IDSI and IDSM as Defendants. Plaintiffs have not sought any declarations as to other issues (e.g., the effect of an injunction as to other entities, successor liability, or any other issues).

1      *Fourth*, joining IDSI and IDSM as parties at this time will prejudice Defendants.  This action,
2 as pled, only involves claims against Defendants.  Under substantive law governing this action,
3 Defendants are only liable for their alleged infringement.  Defendants believe that the evidence will
4 show that they have not, after the transaction closed, made used, offered for sale, or sold, the Accused
5 Products, or engaged in acts of trademark infringement as alleged by Zest.  Further, Plaintiffs have
6 not pled any theory in their complaint, or suggested any theory in their Rule 25(c) motion, under
7 which Defendants could be liable for alleged infringement by IDSI or IDSM.  Joining IDSI and
8 IDSM at this time will introduce several issues into this action that will likely result in confusion and
9 delay, including introducing new accused products that are unrelated to Defendants.  Plaintiffs have
10 filed a motion to add to their patent infringement contentions a new product sold by IDSI and IDSM
11 (but not Implant Direct).  Further, if ISDI and IDSM were joined, those parties would presumably
12 have a right to take discovery and potentially seek a new *Markman* hearing with respect to both the
13 existing Accused Products and the new product that is accused of infringement.  Defendants would
14 also have a right to take discovery regarding this new product, and potentially seek claim
15 construction.  All of the foregoing would result in prejudice to Defendants, especially in light of the
16 fact that discovery is set to close for Defendants on November 21, 2012.
17      Plaintiffs' motion should therefore be denied.

**II.     BACKGROUND**

19      Plaintiffs filed this action on March 12, 2010.  Plaintiffs alleged that Defendants
20 infringed Plaintiffs' U.S. Patent Nos. 6,030,219 and 6,299,447 (the "Patents-In-Suit") through the
21 manufacture and sale of the GoDirect product.  Plaintiffs also alleged claims for federal
22 trademark infringement with respect to Plaintiffs' marks "Zest" and "Locator", false designation
23 of origin and false advertising in violation of § 43(a) of the Lanham Act, and state law statutory
24 and common law unfair competition.
25      On August 27, 2010, Plaintiffs amended their Complaint.  Plaintiffs added the allegation
26 that another product, the GPS abutment, infringed the Patents-In-Suit.  Plaintiffs also included a

claim for state law false advertising. (The Go Direct implant and GPS abutment are collectively referred to as the "Accused Products.")

On November 17, 2010, Implant Direct Mfg., LLC and Implant Direct Int'l. along with certain other parties, entered into a corporate transaction with a third party, Sybron Canada Holdings, Inc. ("Sybron"). The parties to the transaction were separately represented by their own counsel and the transaction was "arms-length." Pursuant to the transaction, the sellers formed wholly owned subsidiaries and transferred 100% of their interests into the subsidiaries. Implant Direct Mfg., LLC formed Implant Direct Sybron Manufacturing LLC (IDSM), and Implant Direct Int'l. formed Implant Direct Sybron International LLC (IDSI). Further, another seller, Mikana, formed Implant Direct Sybron Administration LLC. Thus, pursuant to the transaction, the following transfers of assets occurred:

| | |
|---|---|
| Implant Direct Mfg. LLC  (IDM)→ | Implant Direct Sybron Manufacturing LLC (IDSM) |
| Implant Direct Int'l.  (IDI)→ | Implant Direct Sybron International LLC (IDSI) |
| Mikana Manufacturing Company, Inc.  (Mikana)→ | Implant Direct Sybron Administration, LLC (IDSA) |

At the closing of the transaction, Sybron bought a majority percentage of the issued and outstanding limited liability company interests of each of the newly formed wholly owned subsidiaries: IDSM, IDSI and IDSA.[2] Ex. 1 to Dugger Declaration. The closing occurred on December 31, 2010. The Accused Products only represented a small portion of Implant Direct's sales and the assets that were transferred to IDSM and IDSI.

The transaction was widely publicized in the dental community. Among other things, Implant Direct announced the transaction. *See* http://www.implantdirect.com/newsletters/2010/announcement_111910.htm.

Moreover, Plaintiffs themselves were aware of the transaction in December 2010. See Dugger Decl., ¶ 4 and Ex. 2. Plaintiffs served their First Set of Requests for Production on April

---

[2] The exact percentage is set out in paragraph 3 of the declaration of Christopher Dugger, which is being filed under seal, because it contains proprietary information of the Defendants.

-4-     **OPPOSITION TO MOTION TO JOIN**

1  8, 2011, and included in the request was a demand for documents sufficient to show the

2  organizational structure of IDSI.  (Dugger Decl., Ex. 5 (Request No. 4).)  Defendants produced

3  documents relating to the corporate transaction on July 29, 2011, including the transaction

4  agreement.  (Dugger Decl., Ex. 1.)

5  Plaintiffs waited until August 21, 2012 to file this motion.

6  **III.   ARGUMENT**

7  **A. Plaintiffs Have Not Shown They Have Complied With The Service Requirements Of**
8  **Federal Rule of Civil Procedure 25(c)**

9  This Court should not join IDSI or IDSM because Plaintiffs have not served their motion

10  on those entities as required by **Federal Rule of Civil Procedure 4**.

11  Rule 25(c) provides that "[i]f an interest is transferred, the action may be continued by or

12  against the original party unless the court, on motion, orders the transferee to be substituted in

13  the action or joined with the original party.  The motion must be served as provided in Rule

14  25(a)(3)."  Rule 25(a)(3) provides in relevant part:  "A motion to substitute, together with a

15  notice of hearing, must be served on the parties as provided in Rule 5 and on nonparties as

16  provided in Rule 4."

17  IDSI and IDSM are not parties.  They must be served in the manner required by Rule 4.

18  The certificate of service attached to the motion does not show Plaintiffs have met this

19  requirement.  Defendants are not aware that Plaintiffs have served IDSI and IDSM as provided in

20  Rule 4.  Declaration of Dr. Niznick, filed herewith, ¶¶ 3-4.  Therefore, the motion should be

21  denied.  *Alfadda v. Fenn*, 1993 U.S. Dist. LEXIS 10894, case no. 89 Civ. 6217 (LMM), *6-8

22  (S.D.N.Y. Aug. 6, 1993).

23  Plaintiffs cannot argue that IDSI and IDSM need not be served with this motion because

24  they are already "parties" for purposes of Rule 25(a)(3).  IDSI and IDSM are separate legal

25  entities which have never been made parties to this case.

26  The cases Plaintiffs rely on do not show that Plaintiffs can avoid the service requirement

27  by claiming that IDSI and IDSM are already parties to this action and therefore need not be

28

served. In *Kloster Speedsteel AB v. Crucible*, 793 F. 2d 1565, 1583 (Fed. Cir. 1986), the court denied a request by a company that purchased a defendant's assets to modify an injunction enjoining the defendants "and their successors and assigns." *Kloster* did not address the issue whether the company which purchased the defendant's assets was the same company as the defendant for purposes of Rule 25(c) and therefore could be held liable in an action without being joined and served in the action. *In re Bernal*, 207 F.3d 595, 598 (9th Cir. 2000), involved the question of whether an assignee could substitute into a case and thereby avoid a default entered against the assignor; the Ninth Circuit held it could not. *United Access Techs., LLC v. Earthlink, Inc.,* No. 02-272-MPT, 2012 WL 2175786, at *5 (D. Del. June 14, 2012), involved the question whether a party that substituted into the case to appeal and pursue claims for past infringement could avoid liability for pre-substitution costs; again, the court held it could not. Neither *Bernal* nor *United Access* held that a separate legal entity that acquired the assets of a defendant could be viewed as "party" to the action without being joined and served under Rule 25(c).

Plaintiffs' failure to serve IDSI and IDSM with their motion requires denial of their motion.

### B. **Plaintiffs Have Not Timely Filed Their Motion.**

Courts have denied Rule 25(c) motions where plaintiffs delayed in bringing the motions. *E.g.*, *McKesson Info. Solutions, Inc. v. Bridge Med., Inc.*, 2006 U.S. Dist. LEXIS 9904, *8 (E.D. Cal. 2006); *EEOC v. Pan American World Airways, Inc.*, 1987 U.S. Dist. LEXIS 15182, *8-9 (N.D. Cal. 1987).

Here, Plaintiffs delayed in bringing their motion since at least January 2011. Plaintiffs were aware of the corporate transaction that formed IDSI and IDSM and Sybron's acquisition, when the transaction was publicly announced in December of 2010. *See* Dugger Declaration, Ex. 2. The transaction was widely publicized in the dental industry and Plaintiffs were competitors of Defendants at the time. *See* Niznick Declaration, ¶ 6 and Ex. 1. Further, Plaintiffs were actively litigating this action against Defendants. Plaintiffs have not contended they were

unaware of the transaction, much less submitted evidence they were unaware.  Defendants produced the documents underlying the transaction as part of their discovery responses in this action.  Plaintiffs had all of the relevant documents in their possession no later than July 29, 2011.  Plaintiffs, however, waited another 13 months before filing this motion.

Plaintiffs have not provided evidence as to why they delayed filing their motion.  Plaintiffs' suggestion that they delayed because they thought IDSI and IDSM consented to being parties to this action (*see* Mot. at 1, n.1), is without merit.  Plaintiffs have not provided evidence that in fact, that was their belief; Plaintiffs' counsel's declaration does not address the issue, nor have Plaintiffs themselves provided a declaration.[3]

Further, Plaintiffs have not provided facts that would make any such belief reasonable.  Plaintiffs do not provide evidence they asked Defendants whether IDSI or IDSM consented to being parties to this action

Plaintiffs' reliance on IDSI's complaint in case no. 11-CV2247-IEG (BGS) (the "11-2247 Action") (*see* Mot. at 4:14-24), is without merit.  Nothing in that complaint indicates that IDSI sought to obtain relief for pre-transaction events.  Rather, the Zest advertisements that IDSI attached as Exhibits to the complaint indicated the advertisements were copyrighted in 2011.  (Dkt. no. 1 in the 11-2247 Action, Ex. 1, pp.19, 21.)  The transaction in which IDSI and IDSM were formed and Sybron acquired its interests in those entities, closed in 2010.  That the complaint in the 11-2247 Action also alleges, as background, that "Implant Direct has manufactured, off[ered] for sale, and sold a dental implant, the 'GoDirect' since October 30, 2009" (Dkt. no. 1 in the 11-2247 Action, at 3:6-8), does not show that Plaintiffs mere misled as to whether IDSI consented to being a party in the instant action.  The complaint in the 11-2247 Action was filed on September 27, 2011, and Plaintiffs were aware by that time of the transaction at issue and already had the transaction documents.

---

[3] An at least equally plausible inference would be that Plaintiffs waited to find out the results of the *Markman* hearing before deciding whether to try to join IDSI or IDSM.  The Court denied Implant Direct's motion for reconsideration regarding the *Markman* hearing on June 26, 2012. (Dkt. 102.)

Courts have denied Rule 25(c) motions where the plaintiff delayed for less time than Plaintiffs delayed here. In *McKesson*, plaintiff sought to join nonparty Cerner on the ground that Cerner acquired a system accused of infringing Plaintiff's patent from defendant Bridge Medical in an asset sale. The transaction was entered into in mid-June 2005, and closed on July 7, 2005. The court initially held that no successor liability was shown and then went on to hold the motion was untimely:

> "Plaintiff has known about the sale of the accused 'MedPoint System' to Cerner since the summer of 2005. Yet, plaintiff did not move the court to join Cerner until the final pretrial conference, on March 10, 2006, some seven months later and just one month before trial was set to begin on April 18, 2006. Courts have not condoned such belated attempts at joinder under Rule 25(c), even if an additional lawsuit becomes necessary."

Plaintiffs' failure here timely to seek to join IDSI or IDSM warrants denial of their rule 25(c) motion.

### C. IDSI and IDSM Have Not Acted as Parties to This Case.

Plaintiffs argue that Implant Direct Sybron has acted as a party to the case, over the last two years of this litigation. (Mot. at 4:25-5:13.) This assertion is simply not true. Neither IDSI nor IDSM have taken any action or made any statement that would suggest that they are parties, much less have the binding legal effect of automatically adding them as Defendants.

Plaintiffs first argue that Implant Direct produced documents from IDSI. This argument does not show IDSI acted as a party. Parties frequently are required to produce a related company's documents. As a result of the nature of the corporate transaction in this case, Implant Direct has access to documents of IDSI that were generated after the transaction date. That does not mean the IDSI is a party to the case. Implant Direct produced documents under its possession, custody or control. Implant Direct was merely fulfilling its discovery obligations. Plaintiffs provide no legal authority to support the proposition that when documents from a separate entity are produced, that entity becomes a party to the case.

1   Zest next argues that Implant Direct has produced witnesses from IDSI for deposition.
2   This assertion is also incorrect. Zest identifies four witnesses at issue: Dr Gerald Niznick, Mr.
3   Brian Banton, Ms. Ines Aravena and Mr. Roy Chang. Implant Direct did not identify or offer up
4   the testimony of these witnesses. Rather, it was Zest that sent out deposition notices seeking
5   their testimony. Dr. Niznick, Mr. Banton and Ms. Aravena were all employees of Implant Direct
6   prior to the transaction date. The only witness who was not an employee of Implant Direct was
7   Mr. Chang. Implant Direct served an objection to the Notice of Deposition for Mr. Chang,
8   noting that he was not an employee of any party. Dugger Declaration, Ex.4. Nevertheless, Mr.
9   Chang agreed to appear for his deposition, in order to avoid what would likely be a costly and
10  extended discovery dispute that would, in all likelihood, eventually result in his deposition
11  testimony. Mr. Chang was represented by separate counsel at his deposition. Dugger Decl., Ex.
12  3. The fact that Mr. Chang appeared for a deposition, does not mean that IDSI and IDSM have
13  acted as parties.
14  Finally, Zest argues that "in-house counsel for Sybron" attended mediations in this action.
15  (Mot. at 5:10-13.) IDSI and IDSM did not make an appearance at the mediations, and Zest
16  cannot point to any evidence to the contrary. Dr. Niznick attended the first mediation session.
17  He is the president of Implant Direct. The fact that counsel for Sybron may have also appeared
18  is not unusual. Sybron has made a substantial investment in Implant Direct's business. It is
19  entirely reasonable that the corporate parent of IDSI and IDSM would want to participate in the
20  mediation. The results of any settlement negotiation would likely have a direct effect on the
21  future business of the companies. However, that does not mean that IDSI or IDSM are parties to
22  this action. Having corporate counsel present was merely a reasonable business decision.
23  In summary, Zest's arguments that IDSI and IDSM have acted as though they are parties
24  to this action are without merit. The Court should not grant Zest's motion based on the alleged
25  conduct of IDSI or IDSM as discussed in Plaintiff's opening brief.

**D. Plaintiffs Filed Their Motion After The Deadline To Add New Parties And Have Not Shown Good Cause To Amend The Scheduling Order.**

In the Case Management Order (Dkt. 27 (at 1:20-21)), the Court ordered that any motion to join or add parties would have to be filed by March 14, 2011. Plaintiffs' footnote request in their brief that the scheduling order be amended (Mot. at 1, n.1) is without merit.

In *Fry v. Aztec Doberman Pinscher Club of San Diego*, 2012 U.S. Dist. LEXIS 129422, *13-16 (S.D. Cal. 2012), the Court set forth the standards applicable to a motion to amend a scheduling order:

> "Although Rule 15(a) liberally allows for amendments to pleadings, that policy does not apply after a district court has issued a pretrial scheduling order that established a timetable for amending the pleadings, and the deadline expired. Rather, under those circumstances, parties seeking to amend their complaints must show good cause for not having amended their complaints before the time specified in the scheduling order expired. This standard 'primarily considers the diligence of the party seeking the amendment. Although the existence or degree of prejudice to the party opposing the modification might supply additional reasons to deny a motion, the focus of the inquiry is upon the moving party's reasons for seeking modification. If that party was not diligent, the inquiry should end." [Citations and quotations omitted.]

Here, as discussed above, Plaintiffs do not show they have been diligent. Plaintiffs have known of the transaction at issue since December 2010, and the Scheduling Order was not entered until February 9, 2011. Plaintiffs could have raised the transaction prior to the Scheduling Order's being entered. Further, Plaintiffs, after the Scheduling Order was entered, still had until March 14, 2011 to file a motion to add parties. Rather than seeking to join IDSI and IDSM by the Court's deadline, Plaintiffs delayed filing their motion to amend the Scheduling

-10-  **OPPOSITION TO MOTION TO JOIN**

Order for almost two years.  Plaintiffs have not shown they acted diligently in seeking to amend the Scheduling Order.[4]

### E. Defendants Would Suffer Prejudice If IDSI and IDSM Were Added.

At present, this lawsuit involves claims that Defendants are liable for alleged wrongs prior to the transaction at issue.  In particular, Plaintiffs allege claims for patent infringement, federal trademark infringement, violation of Lanham Act § 43(a), federal false advertising, and state law claims for unfair competition and false advertising.   The claims relate to the manufacture, marketing and sale of two Accused Products – GoDirect and GPS.  (*See* Dkt. 13 (¶¶ 20-43, 48, 56, 60, 64, 67, 69-70, 73, 75, 80-81, 86, 88, 91-92).)  Defendants believe that the evidence will show that they have not manufactured, marketed or sold the Accused Products after the transaction closed and therefore that they will not be liable for any such infringement. *See* 35 U.S.C. § 284 ("Upon finding for the claimant the court shall award the claimant damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by the infringer, together with interest and costs as fixed by the court.").  Plaintiffs have not pled any theory under which Defendants could be liable for any alleged post-transaction infringement.  (*See* Dkt. no. 13.)

Further, Plaintiffs have not pointed to any provision in the transaction documents that would make Defendants liable for post-transaction alleged infringement.  (*See* Mot. at 3:2-16, and n.6.)  Plaintiffs appear to argue that the new parties to be added are liable for post-transaction infringement, not that Defendants are liable for post-transaction infringements.  (Mot.

---

[4] Plaintiffs assert that Defendants engaged in improper conduct.  (Mot. at 2:12-14 (requesting sanctions based on alleged "frivolous" actions); *id.* at 5:14 (asserting Defendants have made a "frivolous" challenge); *id.* at 2, n.2 (asserting that the Court granted four motions to compel). Plaintiffs have not shown Defendants engaged in any improper conduct and their sanctions request is improper.  *See Miller v. Cardinale (In re DeVille)*, 361 F.3d 539, 549 (9th Cir. 2004). It appears Plaintiffs seek to fault Defendants in order to avoid showing that Plaintiffs themselves have been diligent.  Plaintiffs have been represented by a major law firm in connection with this action since well before the transaction took place and Plaintiffs were aware of the transaction at the time it occurred.  Plaintiffs cannot avoid showing they have been diligent by claiming, unjustifiably, that Defendants engaged in improper conduct.  Defendants further disagree with the Plaintiffs' characterization of the discovery matters (Mot. at 2, n.2) but as Plaintiffs fail to explain how such discovery matters are relevant to this motion, Defendants do not address them further.

at 3, n.6.)  Plaintiffs also cite language from the transaction regarding "IDI Assumed Liabilities" (Mot. at 3:4-8).  Plaintiffs, however, point to nothing in the agreement indicating that Implant Direct would be liable for any post-transaction infringement.

Joining new parties IDSI and IDSM at this time would add, or potentially add, several new issues to this case.  These would include (1) potential claims that new parties IDSI and IDSM are liable for alleged post-transaction infringement with respect to the Accused Products; (2) potential claims that IDSI and IDSM are liable for post-transaction infringement regarding the New Accused Product; (3) potential claims that new parties IDSI and IDSM are liable for pre-transaction infringement regarding the Accused Products; and (4) potential claims that Defendants are liable for post-transaction infringement regarding the Accused Products; and (5) potential claims that Defendants are liable for post-transaction infringement regarding the New Accused Product.

In addition, joining new parties IDSI and IDSM would create the potential for conflicts among Defendants and the new parties.  Under the transaction documents, the sellers are required to indemnify the buyers "only to the extent of any Adverse Consequences resulting from the sale of any of the Customer Offerings prior to the Closing."  (¶ 8.2(a)(ix).)  If new parties IDSI and IDSM are joined, Defendants and the new parties may have incentives to make arguments at trial that are in conflict.

Moreover, joining IDSI and IDSM would significantly delay this action.  IDSI and IDSM presumably would have to have the right to conduct discovery, bring motions, and seek a claim construction hearing.  The trial would be significantly delayed and additional costs would be incurred.  Such delay and additional costs would result in prejudice to Defendants.

Finally, adding IDSI and IDSM without proper service as required under Rule 4 would also presumably result in additional proceedings, and additional costs and delay.

## IV.     CONCLUSION

For the foregoing reasons, Defendants, for themselves alone, request that this Court deny Plaintiffs' motion to join IDSI and IDSM under Rule 25(c).

Dated:  October 30, 2012

Respectfully submitted,

KLEINBERG & LERNER, LLP

By: */s/ Christopher J. Dugger*
    Michael Hurey (SBN 139029)
    Robert N. Treiman (SBN 133,299)
    Christopher J. Dugger (SBN 239427)
    1875 Century Park East, Suite 1150
    Los Angeles, California 90067-2501
    Telephone: (310) 557-1511
    Facsimile: (310) 557-1540

    Attorneys for Plaintiffs
    IMPLANT DIRECT MFG. LLC,
    IMPLANT DIRECT LLC and
    IMPLANT DIRECT INT'L

**OPPOSITION TO MOTION TO JOIN**