# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ZEST IP HOLDINGS, LLC and ZEST ANCHORS, LLC,<br><br>                             Plaintiffs,<br>  vs.<br><br>IMPLANT DIRECT MFG, LLC et al.,<br><br>                             Defendants. | CASE NO. 3:10-cv-0541-GPC-WVG<br><br>**ORDER DENYING PLAINTIFF'S MOTION TO JOIN**<br><br>[DKT. NO.116] |

## BACKGROUND

This is an action for patent and trademark infringement of dental attachment products. Plaintiffs Zest IP Holdings, LLC and Zest Anchors, LLC ("Plaintiff" or "Zest") filed this action on March 12, 2012 against Defendants Implant Direct Mfg. LLC, Implant Direct LLC, and Implant Direct International ("Defendant" or "Implant Direct").[1] In the original complaint, Plaintiff alleged infringement of U.S. patents through the manufacture and sale of the product GoDirect. (Dkt. No. 1.) Plaintiff further alleged claims for federal trademark infringement with respect to Plaintiff's marks "Zest" and "LOCATOR" (a dental attachment system sold by Zest), false designation of origin, false advertising under §43(a) of the Lanham Act, and state law statutory and common law unfair competition. Plaintiff's amended complaint on August 27, 2010 added the allegation that another product, the GPS abutment, infringed the patents-in-suit, and added an additional claim for state law false advertising. These two products are collectively known as the "accused products."

---

[1] The background section draws exclusively from the pleadings filed in this case.

On November 17, 2010, Defendant Implant Direct entered into a corporate transaction with a third party, Sybron Canada Holdings, Inc. ("Sybron"). (Dkt. No. 116, Ex. A.; Dkt. No. 146.) The seller, Implant Direct, formed new wholly owned subsidiaries and transferred their interests into the subsidiaries. Sybron then bought a majority percentage of the issued and outstanding limited liability company interests of the newly formed subsidiaries: Implant Direct Sybron Manufacturing LLC and Implant Direct Sybron International LLC ("IDSI"). Following the acquisition, IDSI maintained much of its predecessor's previous business structure. The former president of Implant Direct, Dr. Gerald Niznick, remained as the president and CEO of the new entity, IDSI; the company continues to manufacture the accused products; the company utilizes the same website address; and other features of Implant Direct were retained. (Dkt. No. 116, 3-4.) Plaintiff was aware of this business transaction when it occurred in 2010, and litigation in this matter has continued since the acquisition.

On July 25, 2012, Plaintiff filed a motion for leave to amend its infringement contentions to include a different GPS male attachment, which is a "new iteration of a product that is already part of the present case." (Dkt. No. 107.) In it's opposition brief, Defendant raises the most logical bar to Plaintiff's amended infringement contention – Defendant Implant Direct did not manufacture or sell the new product, and therefore cannot be sued for patent infringement of the new product. (Dkt. No. 113.) Accordingly, the infringement claim cannot be amended to add a product manufactured by IDSI, a company that is not a party to the lawsuit. Defendant further asserts that Plaintiff failed to make any effort to add IDSI as a party to this action, and that Defendant and IDSI as a third party would be prejudiced if the motion were granted. (Id.) In a separate letter, attorneys for Plaintiff wrote to the Court, stating that Defendant "raise[s] an issue in its papers for the first time - that Implant Direct transferred its business to IDSI and therefore is not responsible for the continuing acts alleged by Zest to be infringing." (Dkt. No. 120.)

One week later, Plaintiff filed a motion to join Implant Direct Sybron Manufacturing LLC and Implant Direct Sybron International LLC ("IDSI") pursuant to Federal Rule of Civil Procedure 25 (c). (Dkt. No. 116.) In their motion to join, Plaintiff asserts that IDSI has "stepped into the shoes" of the Defendant, and therefore are successor-in-interests according to Rule 25 (c). Id.

1  Plaintiff also points to numerous examples that show IDSI has already acted as a party to the
2  litigation.  In opposition to Plaintiff's motion, Defendant Implant Direct argues that Plaintiff failed
3  to properly serve the motion to IDSI entities, unreasonably delayed filing a motion to join, failed to
4  add parties by the scheduling order deadline of March 14, 2011, and unfair prejudice. (Dkt. 146.)
5       For the reasons discussed below, the Court **DENIES** Plaintiff's motion to join.

## DISCUSSION

Federal Rule of Civil Procedure 25(c) provides:

> In the case of any transfer of interest, an action may be continued by or against the original party, unless the court upon motion directs the person to whom the interest is transferred to be substituted in the action or joined with the original party. Service of the motion shall be made as provided in subdivision (a) of the rule.

A motion under Rule 25(c) for substitution or joinder of a party after suit has commenced is addressed to the discretion of the court, taking into account all the exigencies of the situation. Educational Credit Mgmt. Corp. V. Bernal (In re Bernal), 207 F.3d 595 (9th Cir. 2000); McComb v. Row River Lumber Co., 177 F.2d 129 (9th Cir. 1949).  A corporation's purchase of all assets of corporate defendant constitutes a "transfer of interest" under Rule 25 (c), and court appropriately ordered joinder where purchasing corporation would have burden of liability as result of its purchase.  Wainwright v. Kraftco Corp. 58 F.R.D 9, 13 (N.D. Ga. 1973).

The record clearly establishes that a "transfer of interest" has occurred between Implant Direct and IDSI.  It is undisputed that Implant Direct Manufacturing LLC, Implant Direct International and Mikana Manufacturing Company, Inc. (together, "Implant Direct") transferred 75 percent of their assets to the newly formed subsidiaries, Implant Direct Sybron Manufacturing LLC, Implant Direct Sybron International LLC, and Implant Direct Sybron Administration, LLC (together, "IDSI"). (Dkt. No. 116, Exhibit 1, Transaction Agreement, filed under Seal as Dkt. No. 155.)  The remaining 25 percent of IDSI is held by Dr. Gerald Niznick, the President and CEO of Implant Direct, who retained the same position and title of the new joint venture, IDSI.  The accused products at the heart of this matter were initially manufactured and sold by Implant Direct,

1  and IDSI has continued to manufacture and sell the accused products. (Deposition of Gerald
2  Niznick at 140.)  As part of the acquisition, Implant Direct agreed to indemnify IDSI from all
3  adverse consequences incurred in connection with "any business, operation, product or asset
4  transferred, sold or discontinued by any of the [Implant Direct] business companies prior to the
5  closing."  (Id at 8.1, emphasis added. *See also*, Deposition of Gerald Niznick at 95.)  Notably, the
6  indemnity agreement covers products manufactured and sold by Implant Direct only prior to
7  closing.  Although not explicitly stated in the transaction agreement, the Court finds that IDSI has
8  impliedly assumed liability of the accused products as it has continued to manufacture and sell the
9  products since the November 2010 acquisition.
10         In his sworn deposition testimony, Dr. Niznick stated that while Implant Direct still exists,
11 the company no longer serves any business purpose, other than to pay taxes. (Id. at 142.)  Dr.
12 Niznick's statement suggests that Implant Direct does little to function as a productive business,
13 and therefore may not have sufficient assets to uphold the indemnity agreement.  In the event of a
14 negative judgment in the present litigation, IDSI may be called upon to assume liability for
15 products produced prior to acquisition if Implant Direct is unable to abide by the indemnity
16 agreement.  The totality of the record shows that IDSI entities purchased a majority of Implant
17 Direct's assets, assumed the same management as Implant Direct, continued to manufacture and
18 sell Implant Direct products, and assumed liability for the accused products since the acquisition.
19 The Court further notes that IDSI could be called upon for full liability in the present litigation.
20 Accordingly, the Court finds the aforementioned factors regarding the transaction between Implant
21 Direct and IDSI are sufficient to constitute a "transfer of interest" within the meaning of Rule 25
22 (c).
23         A transfer of interest having occurred, the Court now considers whether joinder is
24 appropriate.  As a threshold matter, the Court is unable to grant joinder at this time due to
25 Plaintiff's failure to properly serve IDSI as required by Rule 25.  Under Rule 25 (c), the joinder
26 motion must be served as provided in Rule 25(a)(3), which states in part that a "motion to
27 substitute, together with a notice of hearing, must be served on the parties as provided in Rule 5
28 and on nonparties as provided in Rule 4."  Fed. R. Civ. P. 25(a)(3).  As IDSI is a nonparty, Plaintiff

must provide service of process according to Rule 4, which requires summons to be served with a complaint. Fed. R. Civ.P. 4. Since the motion to join is not a complaint, Rule 25(a)(3) "requires service in the *manner* that a summons is served, not service of a summons itself." Brahm Indus., Inc. V. Wildwood Indus., Inc., 2008 WL 3286597 (C.D. Ill. Aug. 7, 2008). A party must be properly served for the Court to obtain personal jurisdiction over that party. If the sufficiency of service is challenged, "the party on whose behalf service was made... has the burden to establish its validity." Wishart v. Agents for International Monetary Fund Internal Revenue Service, 1995 WL 494586 at 2 (N.D.Cal.1995). "Although Rule 4 is to be construed liberally, service is not effective unless a plaintiff has substantially complied with its requirements." Id. If service is insufficient, the Court may either dismiss the case or retain jurisdiction but quash service. So long as there is a chance that the plaintiff still could accomplish service, the latter remedy is preferred. Umbenhauer v. Woog, 969 F.2d 25, 30 (3rd Cir. 1992).

In order to prove that IDSI was properly served, Plaintiff must illustrate that Rule 4 has been satisfied. According to the certificate of service, counsel for Plaintiff served the motion to join upon Kleinberg & Lerner, counsel of record for Defendant Implant Direct. (Dkt. No. 116.) During the motion hearing before this Court, counsel for Plaintiff asserted that " in terms of the service issue that Implant Direct's counsel brings up, what we [Plaintiffs] did in terms of bringing this motion is we served it on counsel, who we believe are counsel for IDSI, Kleinberg & Lerner." (Transcript of Hearing on Motion to Join and Motion to Amend Infringement Contentions at 7). Plaintiff's counsel argued that IDSI had been acting like a party throughout the course of the litigation, and that service upon counsel for Implant Direct satisfied service of process upon IDSI.(Id.) As detailed in the motion to join, Plaintiff asserts that IDSI acted as a party over the past two years during the pending litigation. (Dkt. No. 116, 6-8.) Plaintiff points to Defendant Implant Direct's responses to requests for production, in which Defendant objected to IDSI's role in the case. (Id., Ex. 10.) Plaintiff further cites Defendant's production of witnesses who are employees of IDSI, including Gerald Niznick, Brian Banton, Ines Aravena and Roy Chang. (Id.) Plaintiff also asserts that in-house counsel for Sybron attended mediations in the present action, indicating that IDSI was acting as a party to the litigation. (Id.)

1  Defendant responds that these actions in no way indicate that IDSI ever acted as a party to
2  the litigation.  Implant Direct's document and witness production shows compliance with
3  discovery obligations, not that IDSI acted as a party to the litigation. (Dkt. No. 146, 8-9.)
4  Participation by Sybron, the parent company that provided assets for IDSI, indicates that the
5  nonparty may be affected by the litigation, not that it is a party to the litigation.  (Id.)  The Court
6  finds these arguments, while relevant to determine whether a "transfer of interest" has occurred for
7  purposes of Rule 25(c), provide little clarity regarding proper service of process.

8  The record shows that Plaintiff did not effectuate proper service upon IDSI. Rather,
9  Plaintiff served counsel for the current party-defendant, Implant Direct.  Service of process on an
10 attorney who is not authorized to accept service for his client is ineffective.  Santos v. State Farm
11 Fire and Cas. Co., 902 F.2d 1092, 1094 (2d Cir. 1990). *See also* Snyder v. Swanson, 371 Fed.
12 App'x. 285, 287 (3d Cir. 2010) (plaintiff's service of process on attorney was not effective, even if
13 attorney had represented defendant in other matters relating to case, where attorney expressly and
14 unambiguously informed plaintiff that he did not agree to accept service on defendant's behalf.)
15 Counsel for Defendant Implant Direct has consistently opposed the assertion that it has acted as
16 counsel for IDSI.  During the hearing on the motion to join, counsel for Implant Direct stated that,
17 "my firm has never told Plaintiff or Plaintiff's counsel that we represent Sybron in this lawsuit.
18 There were other complaints filed, but separate matters, not in this lawsuit.  We don't have
19 authorization from the client, from Sybron, to act on its behalf in this lawsuit. We only represent
20 the earlier Implant Direct entities with respect to defense." (Transcript  at 6).  Given the record
21 regarding service, the Court finds that service of process on Defendant Implant Direct is
22 insufficient to satisfy service upon IDSI.

23 Having found that service was not effectuated properly upon IDSI, the Court **DENIES**
24 Plaintiff's motion to join and grants Plaintiff 15 days to properly effectuate service of the motion
25 on IDSI.  Upon showing of proper service, the Court will the take the motion to join under
26 submission without a hearing.

27
28

1 **IT IS SO ORDERED.**

3 DATED: January 23, 2013

HON. GONZALO P. CURIEL
United States District Judge