1
2
3
4
5
6
7
8              UNITED STATES DISTRICT COURT

9              SOUTHERN DISTRICT OF CALIFORNIA

10

11   ZEST IP HOLDINGS, LLC and ZEST          CASE NO. 10cv0541-GPC-
     ANCHORS, LLC,                           WVG
12
                          Plaintiffs,        **ORDER:**
13
                                             **(1) GRANTING PLAINTIFFS'**
14                                           **MOTION TO STRIKE IDSI'S**
                                             **ANSWER AND**
15   vs.                                     **COUNTERCLAIM;**

16                                           **(2) GRANTING PLAINTIFFS'**
                                             **MOTION TO STRIKE IDSI'S**
17                                           **PRELIMINARY**
                                             **INVALIDITY**
18                                           **CONTENTIONS;**

19                                           **(3) GRANTING IN PART**
                                             **AND DENYING IN PART**
20   IMPLANT DIRECT MFG, LLC et al.,         **IMPLANT DIRECT'S**
                                             **MOTION TO AMEND**
21                        Defendants.        **INVALIDITY**
                                             **CONTENTIONS**
22
                                             [Dkt. Nos. 226, 230, 250]
23

24

25       Pending before the Court are the following motions:

26   (1) Plaintiffs Zest IP Holdings, LLC, and Zest Anchors, LLC ("Plaintiffs" or "Zest")

27   motion to strike and dismiss Defendant Implant Direct Sybron's answer and

28   counterclaim. (Dkt. No. 226.)  The motion has been fully briefed. (Dkt. Nos. 253, 261.)

(2) Defendants Implant Direct Mfg. LLC, Implant Direct LLC, and Implant Direct International (collectively, "Implant Direct") motion for leave to serve amended invalidity contentions. (Dkt. No. 230.) The motion has been fully briefed. (Dkt. Nos. 252, 297.)

(3) Plaintiffs' motion to strike Defendants Implant Direct Sybron Manufacturing LLC and Implant Direct Sybron International's (collectively, "IDSI") invalidity contentions. (Dkt. No. 250.) The motion has been fully briefed. (Dkt. Nos. 256, 264.)

Pursuant to Civil Local Rule 7.1(d)(1), the Court finds the matters suitable for adjudication without oral argument.  Having reviewed the parties' briefs and relevant legal authority, the Court hereby **GRANTS** Plaintiffs' motion to strike IDSI's answer and counterclaim; **GRANTS** Plaintiffs' motion to strike IDSI's preliminary invalidity contentions; and **GRANTS** in part and **DENIES** in part Implant Direct's motion to amend invalidity contentions.

## BACKGROUND

This is a patent and trademark infringement action for dental attachment products. (Dkt. No. 1.)  In the First Amended Complaint, Zest alleges that the marketing and sale of the GoDirect and GPS products (the "Accused Products") by Implant Direct infringes Zest's patent and trademark rights. (Dkt. No. 13, "FAC," at 12-13.)   The patents at issue are U.S. Patent No. 6,030,219 (the '219 Patent") and U.S. Patent No. 6,299,447 ("the '447 Patent"). (Id.)  Zest also alleges Implant Direct infringed Zest's registered marks "ZEST" and "LOCATOR" without Zest's authorization, resulting in trademark infringement. (Id. at 13.)  Plaintiffs allege several additional federal and state law claims, including false designation of origin, false advertising, unfair business practices, and unfair competition. (Id. at 13-17.)

On September 17, 2010, Implant Direct filed its answer. (Dkt. No. 17.)  Eight months later, Implant Direct sought leave to amend its' answer to add a counterclaim for infringement of the '447 Patent. (Dkt. No. 32.)  The Court denied

Implant Direct's motion, partly due to its' failure to amend the pleadings by the March 14, 2011 deadline. (Dkt. No. 81; see also Dkt. No. 27, "Case Management Conference Order.")

On April 1, 2011, Plaintiffs served their Preliminary Infringement Contentions upon Implant Direct. (Dkt. No. 107-2.)  On May 6, 2011, Implant Direct served Zest with their Preliminary Invalidity Contentions. (Dkt. No. 230, Ex. A.)

On July 25, 2012, Plaintiffs filed a motion to amend infringement contentions to add a revised version of the accused product, which included new GPS male. (Dkt. No. 107.)  Subsequently, on August 21, 2012, Plaintiffs moved to join Defendants Implant Direct Sybron Manufacturing LLC and Implant Direct Sybron International ("IDSI") as a party to the action pursuant to Federal Rule of Civil Procedure 25(c). (Dkt. No. 116.)  On April 4, 2013, the Court granted Plaintiffs' motion to join IDSI to this case and granted Plaintiffs' motion to file amended infringement contentions. (Dkt. No. 202, "Order to Join and Amend.")  In granting the motion to join, the Court held that a "transfer of interest" had occurred between Defendants Implant Direct and IDSI. (Id.) The Court further granted Plaintiffs leave to file amended infringement contentions to add the revised version of the accused products. (Id.)

Following issuance of the Court's Order to Join and Amend, newly-joined Defendant IDSI filed an answer to Plaintiffs' First Amended Complaint and a counterclaim for patent infringement of the '447 Patent. (Dkt. No. 211.)  Defendant IDSI also served Zest with invalidity contentions. (Dkt. No. 250, Exhibit B.)  In opposition, Zest seeks to strike and dismiss IDSI's answer and counterclaim pursuant to Federal Rule of Civil Procedure 12(f) and 12(b)(6), and strike IDSI's invalidity contentions pursuant to Federal Rule of Civil Procedure 25. (Dkt. Nos. 226, 250.)  Separately, Defendant Implant Direct has filed a motion to amend or correct their invalidity contentions pursuant to Patent Local Rule 3.6(b). (Dkt. No.

230.)  Plaintiffs also oppose this motion. (Dkt. No. 252.)

**DISCUSSION**

**I. Motion to Strike and Dismiss IDSI's Answer and Counterclaim**

Zest moves to strike and dismiss IDSI's answer and counterclaim on the grounds that (1) Rule 25 prohibits IDSI from asserting an answer and counterclaim; (2) IDSI's counterclaim is barred by the law of the case doctrine; and (3) allowing IDSI to assert an answer and counterclaim will prejudice Zest. (Dkt. No. 226 at 11.) In opposition, IDSI argues that as a newly joined party it must be allowed the right to assert its own defenses, and Plaintiffs have failed to show the existence of any prejudice. (Dkt. No. 253 at 7-8.)

**A. Legal Standard**

**1. Motion to Strike**

Under Rule 12(f), a " the court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed.R.Civ.P. 12(f). "[T]he function of a 12(f) motion to strike is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." Sidney-Vinstein v. A.H. Robins Co., 697 F.2d 880, 885 (9th Cir. 1983).  "The district court has authority under Rule 12(f) to strike a pleading, in whole or in part, only if a motion is made before the moving party has filed a responsive pleading, unless the court strikes the pleading on its own initiative or no responsive pleading is permitted." Culinary & Serv. Employees Union, AFL-CIO Local 555 v. Hawaii Employee Ben. Admin., Inc., 688 F.2d 1228, 1232 (9th Cir. 1982).  Motions to strike are generally disfavored, unless "it is clear that the matter to be stricken could have no possible bearing on the subject matter of the litigation." LeDuc v. Kentucky Central Life Ins. Co., 814 F. Supp. 820, 830 (N.D. Cal. 1992); Cairns v. Franklin Mint Co., 24 F. Supp. 2d 1013, 1037 (C.D. Cal. 1998).  "The possibility that issues will be unnecessarily complicated or that superfluous pleadings will cause the trier of fact to draw unwarranted inferences at

trial is the type of prejudice that is sufficient to support the granting of a motion to strike." <u>Benham v. Am. Servicing Co.</u>, C 09-01099 JSW, 2009 WL 4456386 (N.D. Cal. Nov. 30, 2009).  On the other hand, courts frequently deny motions to strike when no prejudice could result from the challenged allegations, even though the offending matter literally is within one or more of the categories set forth in Rule 12(f).  <u>See</u> 5C Fed. Prac. & Proc. Civ. §1382 (3d ed.) (collecting cases).

### B. Analysis

The parties' arguments focus on whether Rule 25 prevents newly joined Defendant IDSI to file an answer and counterclaim two years into the litigation. Zest argues that IDSI as a successor in interest must take over the case as it stands, including all claims, defenses and decisions of Implant Direct. (Dkt. No. 226 at 11.) IDSI contends a distinction exists between substitution and joinder of the parties, and argue that where a party is joined as a new defendant, it must be afforded certain due process rights. (Dkt. No. 253 at 7.)  For the reasons below, the Court concludes that as the successor in interest, IDSI cannot two years into the litigation assert its own claims and defenses as to the original complaint.

### 1. Principles of Rule 25(c)

Under Rule 25, "[i]n case of any transfer of interest, the action may be continued by or against the original party, unless the court upon motion directs the person to whom the interest is transferred to be substituted in the action or joined with the original party." Fed. R. Civ. P. 25(c). "Rule 25(c) is not designed to create new relationships among parties to a suit but is designed to allow the action to continue unabated when an interest in the lawsuit changes hands." <u>In re Bernal</u>, 207 F.3d 595, 598 (9th Cir. 2000) (internal citation and quotation omitted).  Even after an interest is transferred, Rule 25(c) does not require substitution or joinder.  <u>Id.</u> Rather, "[a]n order of joinder is merely a discretionary determination by the trial court that the transferee's presence would facilitate the conduct of the litigation." <u>Id.</u> (internal quotations omitted). "The most significant feature of Rule 25(c) is that it

does not require that anything be done after an interest has been transferred." <u>In re Bernal</u>, 207 F.3d at 598 (quoting 7C Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1958 (2d Ed.1986) (footnote omitted). Substitution is not mandatory in every case of a transfer of interest in an action, <u>McComb v. Row River Lumber Co.</u>, 177 F.2d 129 (9th Cir. 1949), and the decision to order joinder or substitution rests in the discretion of the district court, <u>Dodd v. Pioche Mines Consol., Inc.</u>, 308 F.2d 673, 674 (9th Cir. 1962).

In considering whether a potential party is a "successor in interest," courts often look to whether the transferee obtained the transferors assets, trademarks or patents, customer lists, or good will. <u>See Minnesota Mining & Manufacturing Co. v. Eco Chem, Inc.</u>, 757 F.2d 1256, 1263 (Fed. Cir. 1985).  Where a party has been substituted, courts typically conclude the  successor in interest takes the case as he finds it.  <u>See Brook, Weiner, Sered, Kreger & Weinberg v. Coreq, Inc.</u>, 53 F.3d 851, 852 (7th Cir. 1995) (finding that consent to magistrate judge's jurisdiction was not required by a newly substituted defendant); <u>GF Princeton, L.L.C. v. Herring Land Grp., L.L.C.</u>, 518 F. App'x 108, 115 (3d Cir. 2013) ("a [substituted] party stepping into the shoes of its predecessor takes over the original litigant's position and decisions."). Similarly, where courts order joinder of a "successor in interest" under Rule 25(c), substantive issues such as diversity jurisdiction and venue remain undisturbed. <u>Minnesota Mining</u>, 757 F.2d at 1263 ("The transferee is not joined because its substantive rights are in question; rather, the transferee is brought into court solely because it has come to own the property in issue. The merits of the case, and the disposition of the property, are still determined vis-a-vis the originally named parties.") Based on these principles, courts have declined to allow parties joined under Rule 25 to assert substantive rights, such as counterclaims.  <u>See</u>, <u>e.g.</u>, <u>MEI, Inc. v. JCM Am. Corp.</u>, CIV. 09-351 RBK/JS, 2009 WL 3335866 (D.N.J. Oct. 15, 2009).

### 2. Joinder of IDSI

In considering Plaintiffs' first motion to join IDSI, the Court concluded a transfer

of interest occurred between Implant Direct and IDSI.  (See Dkt. No. 185 at 4-5, finding that transfer of interest had occurred when Implant Direct transferred 75 percent of its' assets to IDSI, IDSI maintained the same management and leadership structure as Implant Direct, and IDSI had agreed to indemnify Implant Direct.) Following proper service and the filing of a renewed motion to join, the Court found joinder appropriate because IDSI had assumed liability for the accused products and IDSI continues to manufacture and sell the accused products. (Order to Join and Amend at 4-5.)  In finding that IDSI would not be unduly prejudiced, the Court observed that Dr. Gerald Niznik, the President of both Implant Direct and IDSI and designer of the accused products, had the opportunity to influence the litigation from the start. (Id. at 6.)

IDSI argues it will be denied its due process rights if the Court decided to strike the answer and counterclaim.  IDSI cites to the decision in Panther Pumps to support this argument. Panther Pumps & Equip. Co., Inc. v. Hydrocraft, Inc., 566 F.2d 8, 24 (7th Cir. 1977).  That case does not support IDSI's argument.  In Panther Pumps, the Court found that the successor in interest had a due process right to present evidence and be heard *on the issue of substitution*, but had *no right* to present evidence and defend against the *original infringement charges not made against him*.  Panther Pumps, 566 F.2d at 24.  The Court found there was no denial of procedural due process rights because the substituted defendant had his day in court.  Id.  Similar to Panther Pumps, IDSI had the opportunity to be heard on the issue of joinder and IDSI could be held liable for the original claims against Implant Direct. (See Dkt. No. 184, Transcript of Hearing.)  Implant Direct's argument that all defendants are afforded the "right to file an answer," is controverted by Rule 25 case law that allows defendants to be joined even following final judgment. See Panther Pumps, 566 F.2d at 24; United States v. Walker River Irr. Dist., C-125-ECR-WGC, 2012 WL 1424178 (D. Nev. Apr. 23, 2012) (finding notice and an opportunity to be heard only required when the party to be bound disputes its successor-in-interest status); see also Transfer of Interest in

1   <u>Action</u>, 7C Fed. Prac. & Proc. Civ. §1958 (3d ed.) (collecting cases at n.9-10).

2   Overall, the Court finds IDSI has not shown it would be denied any procedural or

3   substantive due process rights as a result of its' joinder with Implant Direct.

4        The Court views the filing of IDSI's answer and counterclaim within the

5   context of joinder under Rule 25.  The Federal Circuit has adopted the following

6   principle when applying Rule 25 to a successor in interest:

> If a third party may thus come into the acquisition of rights
> involved in pending litigation without being bound by the final
> judgment, and require a suit de novo in order to bind him, he
> might, pending that suit, alienate that right to another with the
> same result, and a final decree bearing fruit could never be
> reached.

11  <u>Kloster Speedsteel AB v. Crucible Inc.</u>, 793 F.2d 1565, 1583 (Fed. Cir. 1986)

12  overruled on other grounds by <u>Knorr-Bremse Systeme Fuer Nutzfahrzeuge GmbH</u>

13  <u>v. Dana Corp.</u>, 383 F.3d 1337 (Fed. Cir. 2004)(internal citations omitted).   In

14  <u>Kloster</u>, the court joined a defendant following a final judgment and reasoned that

15  beginning the litigation de novo would upend the purpose of Rule 25.  Although a

16  final judgment has not been rendered in this case, the same principle applies here.

17  Dr. Niznick, the President of Implant Direct, sold 75 percent of its assets, including

18  the accused products, to IDSI.  IDSI, as Implant Direct's successor in interest and

19  joined as a defendant under Rule 25(c), now continues in the litigation unabated.

20  <u>See</u> <u>In re Bernal</u>, 207 F.3d 595, 598 (9th Cir. 2000).  Assertion of new defenses and

21  claims at this stage of the litigation are contrary to the principles of Rule 25(c).

22        IDSI further argues that Rule 54(c) requires IDSI to assert its claims and

23  defenses.  The Court disagrees.  Rule 54(c) provides: "A default judgment must not

24  differ in kind from, or exceed in amount, what is demanded in the pleadings. Every

25  other final judgment should grant the relief to which each party is entitled, even if

26  the party has not demanded that relief in its pleadings." Fed.R.Civ.P. 54(c).  IDSI

27  fails to cite any legal authority interpreting this rule as requiring a party to assert

28  claims or defenses.  As there has been no default or final judgment rendered in this

1  case, the Court finds the Rule 54(c) inapplicable at this stage of the litigation.

2  **2. Law of the Case**

3  Under the "law of the case" doctrine, "a court is generally precluded from

4  reconsidering an issue that has already been decided by the same court, or a higher

5  court in the identical case." United States v. Alexander, 106 F.3d 874, 876 (9th Cir.

6  1997) (internal citations omitted). For the doctrine to apply, the issue in question

7  must have been "decided explicitly or by necessary implication in [the] previous

8  disposition." Liberty Mutual Ins. Co. v. E.E.O.C., 691 F.2d 438, 441 (9th Cir.1982).

9  A court may have discretion to depart from the law of the case where: 1) the first

10  decision was clearly erroneous; 2) an intervening change in the law has occurred; 3)

11  the evidence on remand is substantially different; 4) other changed circumstances

12  exist; or 5) a manifest injustice would otherwise result. Alexander, 106 F.3d at 876.

13  Zest contends IDSI is attempting to circumvent the Court's January 20, 2012

14  Order denying Implant Direct's motion for leave to amend its answer to assert a

15  counterclaim for declaratory judgment of invalidity of the '447 patent. (See Dkt.

16  No. 81 at 4.)  On May 19, 2011, Implant Direct filed a motion for leave to amend its

17  answer and add a counterclaim. (Dkt. No. 32.)  Implant Direct argued good cause

18  existed because it had recently discovered three pieces of prior art. (Id.)  The Court

19  denied Implant Direct's motion because it did not act with diligence in conducting

20  the prior art search before the deadline to amend the pleadings. (Dkt. No. 81 at 3-4.)

21  Zest points out that IDSI has filed the exact same counterclaim that Implant Direct

22  sought leave to file with the Court. (See Dkt. No. 32-1, Counterclaim No. 1;

23  compare to Dkt. No. 211, Counterclaim No. 1.)

24  Zest argues that even though IDSI was not a party at the time, the law of the

25  case doctrine may apply even to successors in interest.  See, e.g., Leslie Salt Co. v.

26  United States, 55 F.3d 1388, 1393 (9th Cir. 1995) (applying law of the case doctrine

27  to an appellant's corporate successor).  IDSI responds that law of the case doctrine

28  should not apply here because the evidence before the court upon Implant Direct's

motion was substantially different, there are changed circumstances, and a manifest injustice would result from applying the doctrine. (Dkt. No. 253 at 27.)

The Court need not reach the full conclusion as to whether law of the case doctrine applies here.  It is sufficient to conclude that IDSI, as Implant Direct's successor in interest, may not file an answer and counterclaim asserting new claims and defenses in the litigation. As Implant Direct's successor in interest, IDSI has stepped into the shoes of its predecessor. See Minnesota Mining, 757 F.2d at 1263 ("When the successor in interest voluntarily steps into the shoes of its predecessor, it assumes the obligations of the predecessor's pending litigation"). The litigation therefore must continue unabated. See In re Bernal, 207 F.3d at 598.  The Court views IDSI's filing of an answer and counterclaim as an attempt to file the same answer and counterclaim as Implant Direct.  Accordingly, the Court hereby considers IDSI's answer and counterclaim redundant within the meaning of Fed.R.Civ.P. 12(f). See Fantasy, Inc. v. Fogerty, 984 F.2d 1524, 1527 (9th Cir.1993) ("The function of a 12(f) motion to strike is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial....")  For these reasons, the Court hereby **GRANTS** Zest's motion and hereby **STRIKES** IDSI's answer and counterclaim.

## II. Motion to Strike IDSI's Invalidity Contentions

Zest seeks to strike IDSI's invalidity contentions for the largely same reasons as it sought to strike IDSI's answer and counterclaim.  Zest argues:  (1) IDSI is Implant Direct's successor in interest, and thus Rule 25 prohibits IDSI from serving new invalidity contentions; (2) Undue prejudice; (3) Failure to seek leave from the Court; and (4) Violations of the Court's Scheduling Order and Patent Local Rule 3.3. (Dkt. No. 250 at 11-28.)  In opposition, IDSI argues that as a party opposing a claim of patent infringement, it has the right under the local patent rules to serve invalidity contentions. (Dkt. No. 256 at 5.)

For the same reasons as stated above, the Court finds IDSI, as Implant

Direct's successor in interest, joins in the litigation as a party to facilitate the litigation - not to start the litigation de novo. See Kloster Speedsteel AB, 793 F.2d at 1583.  Moreover, IDSI may not file preliminary invalidity contentions without leave of Court when the deadline to serve preliminary invalidity contentions lapsed over two years ago. (See Dkt. No. 27, Case Management Conference Order, setting the deadline for preliminary invalidity contentions for May 6, 2011.)  IDSI has not sought leave from Court to file the preliminary invalidity contentions, nor has it articulated any grounds showing good cause for failure to seek leave. As such, the Court finds IDSI has contravened this Court's Case scheduling order. See, e.g., Convolve, Inc. v. Compaq Computer Corp., 00CIV.5141(GBD)(JCF), 2006 WL 2527773 (S.D.N.Y. Aug. 31, 2006) (requiring leave from the Court to amend invalidity contentions). IDSI's procedural failure to seek leave from Court is fatal to filing its' preliminary invalidity contentions.  Accordingly, the Court **GRANTS** Zest's motion and hereby **STRIKES** IDSI's invalidity contentions.

### III. Motion for Leave to File Amended Invalidity Contentions

On April 15, 2013, the Court granted Plaintiffs' motion to file amended infringement contentions to add a revised version of the GPS male. (Dkt. No. 202, Order to Join and Amend.)  To ensure Defendants did not suffer undue prejudice as a result of Plaintiffs' amended infringement contentions, the Court committed to "consider requests by Implant Direct and IDSI for an enlargement of time to address issues propounded by the amended infringement contentions." (Id. at 8.)  Pursuant to this Court's order and the Patent Local Rules, Implant Direct, joined by IDSI, (Dkt. No. 31), has filed the present motion for leave to file amended invalidity contentions. (Dkt. No. 230-1.)

Implant Direct argues Zest's amended infringement contentions have changed the construction and interpretation of its patent claims to include a product with an internal connection. (Dkt. No. 230-1 at 2.)  Implant Direct contends this change in patent construction justifies the Court granting leave to amend their invalidity

contentions. (Id.)  In opposition, Zest argues: 1) Implant Direct has abandoned its' invalidity defenses; 2) Implant Direct has not shown good cause for leave to amend; 3) undue prejudice; and 4) failure to abide by Court scheduling order. (Dkt. No. 252 at 2-23.)

The Court observes that, unlike IDSI's filing preliminary invalidity contentions without seeking leave from the Court, Implant Direct has properly filed a motion to amend its invalidity contentions pursuant to Patent Local Rule 3.6(b).

**1. Legal Standard**

Patent Local Rule 3.6(b) provides:

> As a matter of right, a party opposing a claim of patent infringement may serve "Amended Invalidity Contentions" no later than the completion of claim construction discovery. Thereafter, absent undue prejudice to the opposing party, a party opposing infringement may only amend its invalidity contentions:
> 1. if a party claiming patent infringement has served "Amended Infringement Contentions," and the party opposing a claim of patent infringement believes in good faith that the Amended Infringement Contentions so require;
> 2. if, not later than fifty (50) days after service of the court's Claim Construction Ruling, the party opposing infringement believes in good faith that amendment is necessitated by a claim construction that differs from that proposed by such party; or
> 3. upon a timely motion showing good cause.

Patent Local Rule 3.6(b) (emphasis added).  The Federal Circuit has interpreted the Patent Local Rules to require amendments to invalidity contentions be filed with diligence. O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc., 467 F.3d 1355, 1366 (Fed. Cir. 2006).  Only if the moving party is able to show diligence may the court consider the prejudice to the non-moving party. See CBS Interactive, Inc. v. Etilize, Inc., 257 F.R.D. 195, 201 (N.D. Cal. Jan. 7, 2009); see also Acer, Inc. v. Technology Properties Ltd., 2010 WL 3618687, *3 (N.D.Cal. Sept.10, 2010) ("[The moving party] must demonstrate good cause, an inquiry that considers first whether

the moving party was diligent in amending its contentions and then whether the non-moving party would suffer prejudice if the motion to amend were granted.... If [the moving party] was not diligent, the inquiry should end").

### 2. Patent Local Rule 3.6(b)(1)-(2) - Good Faith

The parties vigorously dispute whether Implant Direct has a good faith belief that Zest's amended infringement contentions require the filing of amended invalidity contentions. Implant Direct asserts it "believes in good faith that if Plaintiffs' patents are interpreted to cover products that only make an internal connection, the patents are invalid." (Dkt. No. 230-1 at 7.)  Due to this purported "broadening" of Plaintiffs' infringement contentions, Implant Direct argues it must be allowed to add prior art references with internal connections, and, among thirty new prior art references, cites US. Patent 4,431,416 (Niznick) (the '416 Patent) as prior art that provides an internal connection. (Id.) In short, Implant Direct interprets Zest's  amended infringement contentions as requiring *only internal* connections, a distinction which Implant Direct argues necessitates amending the invalidity contentions to assert new prior art.  In its' reply, Implant Direct further argues that the addition of the cap and liner to the Accused Products in the amended infringement contentions shows that the Plaintiffs are alleging infringement of a "new product." (Dkt. No. 297.)

In opposition, Zest argues Implant Direct cannot rely on the infringement contentions to advance its invalidity contentions, and therefore cannot show its good faith belief that its amended invalidity contentions are required. (Dkt. No. 252 at 12-13.)  Zest further contends that it has never changed the interpretation of its infringement claims and that Zest has consistently alleged that the new GPS male product has *both* internal and external connections. (Id. at 13-15.)

Upon review of the record, the Court finds that Plaintiffs have consistently alleged that the amended infringement contentions sought to include a revised version of the accused product, which contained both internal and external features.

In it's motion to amend infringement contentions, Zest stated it would only "add a new iteration of one piece of a three-component assembly that is already part of this suit. Zest will not be asserting any new patents, patent claims or infringement theories." (Dkt. No. 107-1 at 4.)  A comparison of the preliminary and amended infringement contentions confirms this is the case. (See Dkt. No. 107-2, Ex. 1, "Preliminary Infringement Contentions; compare to Dkt. No. 107-2, Ex. 10, "Amended Infringement Contentions.")  Additionally, Zest has provided Implant Direct a marked drawing of the new GPS male that points to the "releasable snap engagement" connecting to the abutment at both internal *and* external points. (Dkt. No. 252-1, Ex. 5.)

The Court is not convinced by Implant Direct's argument that Zest has included an entirely new accused product. (Dkt. No. 297 at 4.)  The amended infringement contentions state: "Zest presently contends that Implant [Direct]'s GoDirect and GPS products infringe the asserted claims of the '219 patent and the '447 patent." (Amended Infringement Contentions at B.)  The exact same statement is included in the preliminary infringement contentions. (Preliminary Infringement Contentions at B.)  The amended infringement contentions include one additional sentence: "GPS products ***include***, inter alia, all abutments, males with external connection, males with internal connection, and caps sold using the GPS trademark". (Proposed Amended Infringement Contentions at B)(emphasis added). Implant Direct argues this additional sentence means Zest has a "new interpretation," of the accused products and that Zest did not previously include a cap and liner in the preliminary infringement contentions. (Dkt. No. 297 at 4, n. 1.) The Court disagrees.  The additional sentence comports with Claim 1 of the '219 Patent and '447 Patent in Zest's preliminary infringement contentions: "The GoDirect® and GPS® (hereinafter "Accused Products") form a dental attachment assembly (i) in connection with the LOCATOR® male member and LOCATOR® cap and/or (ii) in connection with one or more of the Implant Direct ("ID") comfort

cap or liners and the metal housing." (Preliminary Infringement Contentions, Ex. A at Claim 1; Ex. B at Claim 1.)  A plain reading of Claim 1 indicates the entire dental attachment assembly is part of the accused product, including caps, liners and metal housing.  (See also Dkt. No. 85, "Joint Claim Construction Chart.")[1] Moreover, the Court rejects Implant Direct's attempt to reinterpret this Court's claim construction. See CBS Interactive, Inc. v. Etilize, Inc., 257 F.R.D. 195, 203 (N.D. Cal. 2009) ("a theory of invalidity based solely on infringement contentions that were not adopted by the court's claim construction order is not recognized in the law").  Based on these reasons, the Court concludes Zest has not broadened the scope of the patents in suit to cover products that solely make an internal connection.

While the Court rejects Implant Direct's argument that Zest has alleged an entirely new product or new infringement theory, Implant Direct has shown that the revised version of the GPS male may have created a need to add one prior art reference.  Implant Direct has offered an explanation as to *one* of the proposed thirty additional prior art references.  Implant Direct contends that the specific prior art reference, the '416 Patent, has an internal connection that could be used to invalidate Plaintiffs' patents and addresses the internal connection in the new GPS male.. (Dkt. No. 230-1 at 7.)  To the extent Zest has amended its' infringement contentions to include the revised version of the GPS male, the Court finds Implant Direct has sufficiently shown it "believes in good faith that the Amended Infringement Contentions so require," amending the invalidity contentions to add the one prior art reference. See Patent Local Rule 3.1(b)(2).  While the '416 Patent may be material to the merits of the case, Implant Direct must also show good cause and Plaintiffs must not suffer undue prejudice.  The Court addresses these elements in turn.

---

[1] The Court finds the legal authority Implant Direct cites regarding res judicata and claim preclusion are inapplicable here. (Dkt. No. 297.)

### 2. Good Cause

As interpreted by the Federal Circuit, local patent rules that permit amendments upon showing of good cause "seek to balance the right to develop new information in discovery with the need for certainty as to the legal theories." O2 Micro International, 467 F.3d at 1366.  On one hand, such local rules are "designed specifically to require the parties to crystallize their theories of the case early in the litigation so as to prevent the 'shifting sands' approach to claim construction." Id. at 1364 (quotations omitted).  On the other hand, "refusing to allow any amendment to contentions based on new information developed in discovery could be contrary to the spirit of the Federal Rules," where "[t]he Federal Rules replaced a system in which the issues had to be conclusively defined at the outset of litigation through the pleadings, with a system that relied on discovery and pretrial hearings to gradually identify the precise issues in dispute as more information became available." Id. at 1366.  To balance these competing concerns, the local rules permit amendment of contentions "promptly after discovering new information." Id. at 1366.

Implant Direct argues good cause exists because the Court previously stated it would allow an "enlargement of time" to address issues raised by Plaintiffs' amended infringement contentions. (Dkt. No. 230-1.)  Zest responds that Implant Direct has failed to show diligence because it waited eleven months after the filing of the motion to amend infringement contentions to file its motion. (Dkt. No. 252 at 17.)  Zest further argues Implant Direct failed to show diligence in searching for the prior art references that it seeks to add to its invalidity contentions. (Id.)

On April 15, 2013, the Court granted Zest' motion to join IDSI and motion to file amended infringement contentions. (Order to Join and Amend.)  On May 15, 2013, Implant Direct and IDSI filed a motion for reconsideration of the Court's Order to Join and Amend. (Dkt. No. 216.)  On May 17, 2013, Implant Direct notified the Court that it would seek leave to amend its invalidity contentions. (Dkt.

No. 217, "Joint Status Report," at 5.)  On May 29, 2013, Implant Direct and IDSI presented to Magistrate Judge Gallo their intention to file amended invalidity contentions. (Dkt. No. 228.)  During that hearing, Magistrate Judge Gallo agreed that Implant Direct could file its motion to amend invalidity contentions by June 21, 2013. (Id. at 56:20.)  On June 21, 2013, Implant Direct filed the motion to amend its invalidity contentions. (Dkt. No. 230.)

A review of the record shows Implant Direct waited nine weeks to file its motion upon receiving notice that Plaintiffs were granted leave to amend its infringement contentions.  In assessing leave to amend invalidity contentions, courts have found a ten week delay fails to establish diligence. See, e.g., Apple, Inc. v. Samsung Electronics Co., Ltd., 11-CV-01846-LHK, 2012 WL 1067548 (N.D. Cal. Mar. 27, 2012).  However, in this case, Defendants were diligent in both notifying the Court of their intention to file amended invalidity contentions, and sought guidance from Magistrate Judge Gallo to set a deadline to file the motion.  Implant Direct met the Court's deadline.  Given these factors, the Court is satisfied that Implant Direct showed diligence in seeking leave to file the motion to amend invalidity contentions.

**i. Thirty New Prior Art References**

Implant Direct seeks to include thirty new prior art references in the amended invalidity contentions (including U.S. and European Patents). (Dkt. No. 252-4 "Proposed Amended Invalidity Contentions;" compare to Dkt. No. 252-3, "Preliminary Invalidity Contentions.")  Implant Direct argues it did not previously assert prior art references because the GPS male with the internal connection was not an accused product. (Dkt. No. 297.)

A review of the amended complaint, filed on August 27, 2010, shows that several prior art references were listed in the face of the patents in suit. (Dkt. No. 13-1, Ex. A.)  Specifically, the '416 Patent is listed as a patent reference. (Id.)  Thus, Implant Direct clearly had prior knowledge of the '416 Patent.  Where

parties have actual knowledge of prior art references, courts often find a lack of diligence. See, e.g., Nano-Second Tech. Co., Ltd. v. Dynaflex Int'l, CV 10-9176 RSWL MANX, 2012 WL 2077253 (C.D. Cal. June 6, 2012) (denying leave to amend invalidity contentions to add one piece of prior art where defendants had in their possession the prior art reference when the complaint was originally filed).

Despite Implant Direct's knowledge of the '416 Patent as a prior art reference, the Court is satisfied that the failure to include the prior art reference earlier was related to Zest's inclusion of the revised GPS male.  As such, Implant Direct has shown that it was diligent in adding the '416 Patent.  Implant Direct has not offered any explanation as to the relevance of the additional twenty nine prior art references, nor shown diligence in seeking leave to add them.  Thus, Implant Direct has not shown good cause for those additional prior art references.

**3. Undue Prejudice**

Implant Direct contends Zest will not suffer undue prejudice because there is still no trial date, the parties have not filed dispositive motions, and the parties have not taken expert discovery. (Dkt. No. 230-1 at 12.)  Zest argues it will suffer undue prejudice because: 1) reopening fact discovery would delay trial and increase costs; and 2) pursing invalidity defenses and adding several new prior art references radically changes the case at the eleventh hour, causing undue prejudice. (Dkt. No. 252 at 15-17.)

Under Patent Local Rule 3-6(b), Implant Direct may amend its invalidity contentions only "absent undue prejudice to the opposing party." Patent Local Rule 3-6(b).  The right to amend invalidity contentions is subject to the court's countervailing duty to avoid prejudicing Zest through eleventh hour alterations. Eminence Capital, LLC v. Aspeon, Inc., 316 F.3d 1048, 1052 (9th Cir. 2003) ("[I]t is the consideration of prejudice to the opposing party that carries the greatest weight").  The Court considers undue prejudice in light of the local patent rules which were designed to prevent the parties from shuffling or re-framing their

theories in reaction to adverse substantive rulings. See LG Electronics Inc. v. Q-Lity Computer Inc., 211 F.R.D. 360, 367 (N.D.Cal.2002).

The Court agrees with Zest that the addition of thirty prior art references, with little information as to the materiality to the patents in suit, would result in undue prejudice. Requiring Zest to respond to such a substantial number of new combinations served after the close of fact discovery and over two years into the litigation would result in a significant and unexpected burden on Zest. See Convolve, Inc. v. Compaq Computer Corp., 00CIV.5141(GBD)(JCF), 2006 WL 2527773 (S.D.N.Y. Aug. 31, 2006) (finding the addition of seventy two new prior art references resulted in undue prejudice).

Despite this conclusion, the Court finds Zest will not be unduly prejudiced by the addition of one prior art reference, the '416 Patent, that appears material to the patents in suit. As a practical matter, Zest has not filed any substantive motions that will be impacted or rendered moot by Implant Direct's amended invalidity contentions. Second, although fact discovery has closed, the parties may seek, and Magistrate Judge Gallo can consider, limited discovery to address the amended invalidity contentions. As noted by Implant Direct, no experts have been deposed, and no pretrial or trial dates have been set. Moreover, in the Court's view, Implant Direct's request to amend does not appear to be motivated by gamesmanship. As previously noted by this Court in granting Plaintiffs' motion amend its infringement contentions, "the Court will consider an enlargement of time to address issues propounded by the amended infringement contentions." (Order to Join and Amend at 8.) Implant Direct has been transparent and diligent about seeking leave to amend its invalidity contentions. By limiting the substantial number of prior art references, the Court finds the prejudice to Zest does not outweigh the potential materiality of the '416 Patent to the case.

For these reasons, the Court will allow Implant Direct to file a limited version of its proposed amended invalidity contentions to include only one new prior art

reference, the '416 Patent. Accordingly, the Court **GRANTS** in part and **DENIES** in part Implant Direct's motion to amend its' invalidity contentions.  Implant Direct may file revised proposed amended invalidity contentions that include the following prior art references in Section I (a): United States Patent Nos. 6,203,325; 3,656,236; 4,431,416; and European Patent No. EP 0 891 750 A1.

## CONCLUSION

For the above stated reasons, the Court hereby:

1) **GRANTS** Plaintiffs' motion to strike IDSI's answer and counterclaim;

2) **GRANTS** Plaintiffs' motion to strike IDSI's preliminary infringement contentions;

3) **GRANTS** in part and **DENIES** in part Implant Direct's motion to amend its invalidity contentions.  Implant Direct **SHALL** file revised proposed amended validity contentions consistent with this Order on or by October 25, 2013.

**IT IS SO ORDERED.**

DATED:  October 16, 2013

HON. GONZALO P. CURIEL
United States District Judge