UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| ZEST IP HOLDINGS, LLC, et al., | ) ) ) | Civil No.10-0541-GPC(WVG) |
| Plaintiffs, | ) ) | ORDER GRANTING IN PART AND DENYING IN PART |
| v. | ) ) | PLAINTIFFS' MOTION FOR SPOLIATION AND DISCOVERY |
| IMPLANT DIRECT MFG., LLC, et al., | ) ) | ABUSE SANCTIONS (DOC. NO. 121) |
| Defendants. | ) ) | RECOMMENDATION REGARDING ADVERSE JURY INSTRUCTION |

**I**

**INTRODUCTION**

Plaintiff Zest IP Holdings, LLC, ("Plaintiffs") have made a Motion For Spoliation And Discovery Abuse Sanctions Against Defendants Implant Direct MFG. LLC, Implant Direct LLC, and Implant Direct INTL ("Defendants"). Plaintiffs seek a default judgment against Defendants, and an adverse inference jury instruction against Defendants for destroy-ing documents, failing to put in place a litigation hold and document retention policy, and discovery misconduct.

10cv0541

Plaintiffs seek sanctions in the form of attorney's fees and costs associated with pursuing the allegedly destroyed documents and for preparing this Motion. Defendants filed an Opposition to the Motion. Plaintiffs filed a Reply to Defendants' Opposition. On October 19, 2012 and May 29, 2013, the Court held hearings on Plaintiffs' Motion.

The Court, having reviewed Plaintiffs' Motion, Defendants' Opposition, and Plaintiffs' Reply, and having entertained the parties' arguments, hereby finds that Defendants did not take adequate steps to avoid spoliation of evidence after it should have reasonably anticipated this lawsuit and did not issue a litigation hold nor implement nor monitor an adequate document preservation policy. Therefore, the Court GRANTS in part and DENIES in part Plaintiffs' Motion For Spoliation And Discovery Abuse Sanctions. The Court RECOMMENDS that an adverse jury instruction against Defendants be given to the jury at the trial of this action.

## II

### PROCEDURAL HISTORY

On March 20, 2010, Plaintiffs filed this action. Plaintiffs allege that Defendants' products infringe on Plaintiffs' U.S. Patent Nos. 6,030,219 and 6,299,447 ("Patents-in-Suit", or "Locator" products) through the manufacture and sale of Defendants' "Go Direct" product. Plaintiffs also allege claims for trademark infringement with respect to Plaintiffs' marks "Zest" and "Locator," false designation of origin, false advertising in viola-

10cv0541

tion of § 43(a) of the Lanham Act, and state statutory law and common law unfair competition.  On August 27, 2010, Plaintiffs amended their Complaint. In the Amended Complaint, Plaintiffs allege that another product of Defendants, the "GPS abutment," infringes on the Patents-in-Suit.

On August 27, 2012, Plaintiffs filed a Motion For Spoliation And Discovery Abuses Sanctions Against Defendants ("Motion"). On October 5, 2012, Defendants filed an Opposition to the Motion ("Opposition"). On October 12, 2012, Plaintiffs filed a Reply In Support Of Plaintiffs' Motion ("Reply"). On March 5, 2013, Plaintiffs filed a Supplemental Brief in support of their Motion. On May 19, 2013, Defendants filed a Response to Plaintiffs' Supplemental Brief. On October 19, 2012 and May 29, 2013, the Court heard oral argument on the Motion.

**III**

**<u>FACTS</u>**

A. **<u>Defendant's Did Not Implement a Litigation Hold</u>**

Plaintiffs argue that Defendants were aware of a potential lawsuit as early as Fall 2008. At that time, Defendants were distributors of Plaintiffs' "Locator" products. Defendants informed Plaintiffs of their plan to make their own clone product to compete with Plaintiffs' "Locator" products.

On August 8, 2008, Plaintiffs informed Defendants that they considered Defendants' planned product to be a knock-off, and an infringement of the "Locator product."

10cv0541

[Declaration of Manuel J. Velez in Support of Motion for Spoliation and Discovery Abuse Sanctions ("Velez Dec."), Exhs. 5, 6]. On October 22, 2008, Plaintiffs sent another letter to Defendants stating that they would file a lawsuit for patent infringement against Defendants should Defendants continue their plan to commercialize their product. (Velez Dec. Exh. 7). Defendants acknowledged receipt of the October 22, 2008 letter. (Velez Dec. Exh. 3 at 150:17 to 159:8). Plaintiffs argue that a litigation hold should have been put in place as of October 22, 2008.

Defendants argue that the duty to preserve evidence arose when Plaintiffs filed this action in March 2010 because until this action was filed, Defendants did not believe that there would be litigation with Plaintiff. Further, Defendants contend that the duty to preserve could not have begun prior to March 2010 because Plaintiffs were aware of Defendants' intent to market the alleged infringing product and did not ask Defendants to save any documents or emails. Defendants did not implement a litigation hold or document preservation policy on October 22, 2008, or at any time before the Complaint was filed, or after the Complaint was filed. Defendants did not take steps to preserve electronic documents, nor did they instruct their employees to preserve documents. Instead, Defendants argue that failure to institute a litigation hold does not warrant sanctions. Defendants further assert that sanctions are not warranted because they have a company policy that "no documents are to be

10cv0541

deleted" and that [Defendants] did not believe any of Defendants' employees would delete company documents. (Velez Dec. Exh. 3 at 47:5 to 47:17).

## B. **Defendant's Failure to Preserve Documents**

### 1. **Ines Aravena's emails**

Ines Aravena ("Aravena") was Defendants' Director of Design Engineering, and oversaw the design development and testing of Defendant's products. Aravena was an independent contractor working for Defendants before she became Defendants' employee. She testified at her deposition that she intentionally deleted her emails because she received so many emails and that no one told her not to delete them. (Velez Dec. Exh. 2 at 212:13-20). She had two email accounts: one on Defendants' system, and one on America On Line ("AOL") that was her personal account. (Velez Dec. Exh. 2 at 212:1-4). She used the AOL account for work purposes, as well as for personal purposes. (Velez Dec. Exh. 2 at 211:13-25, 389:13-19).

Defendants are unable to confirm that all of Aravena's deleted emails were recovered and produced to Plaintiffs but they assert that they produced all of Aravena's emails. Defendants did not have a back-up system to prevent the deletion of documents, but instead took the position that their emails "are automatically preserved to the Intermedia server, which is under Defendants' control." However, on November 15, 2012, Defendants sent a letter to the Court stating that "(s)ubsequent to the

1  hearing of the motion[1], Defendants' counsel discovered

2  that emails can be deleted from the Intermedia email

3  server." (Letter of Michael Hurey to the Court, dated

4  November 15, 2012).  Therefore, Aravena's deleted emails

5  may have been irretrievably lost.

6         **2. <u>Gerald Niznick's Communications To Third</u>**
           **<u>Parties</u>**

7       Dr. Gerald Niznick ("Niznick") is Defendants'

8  President and CEO.  Plaintiffs assert that Defendants

9  failed to collect and produce all electronic

10 communications from Niznick that are relevant to this

11 litigation.  Plaintiffs located in third parties' files

12 Niznick's email communications to third party dentists

13 which may be considered evidence of Niznick's inducing the

14 third party dentists to infringe on Plaintiffs' patents.

15 Niznick's emails to the third party dentists  encourage

16 the dentists to combine Defendants' product with

17 Plaintiffs' "Locator" products. [Velez Dec. Exhs. 11

18 (dated November 12, 2008), 12 (dated December 3, 2008)].

19 It cannot be disputed that Exhibits 11 and 12 once existed

20 in Defendants' electronic files. However, they appear to

21 no longer exist in Defendants' files and Defendants have

22 not produced the emails to Plaintiffs in this litigation.

23      Niznick testified at his deposition that he has six

24 different email accounts. The emails in these accounts

25 were not produced nor preserved. Niznick also testified

26 that he did not search these email accounts because he

27 alleges to have previously saved all e-mail communications

28

---

[1]Defendants refer to the hearing held on October 19, 2012.

10cv0541

relating to Plaintiffs in a folder on his desktop. (Velez Dec. Exh. 3 at 44:6-15). Niznick limited his collection efforts to this file on his desktop and he claims that this file did not contain communications concerning the accused products. (Velez Dec. Exh. 3 at 45:21- 46:3). The contents of the file have been produced to Plaintiff. (Doc. No 127 at 10). Defendants argue that the emails presented by Plaintiff as evidence of spoliation were dated before Defendants had any obligation to preserve evidence. Defendants further argue that Plaintiffs have failed to present any other evidence indicating that any other similar emails exist.

### 3. Regulatory Documents

Plaintiffs argue that regulatory files and submissions to the Food and Drug Administration ("FDA") documents are relevant because they contain design and testing information related to Defendant's products. Plaintiffs argue that these regulatory files and submissions to the FDA made in conjunction with putting Defendants' products on the market have not been produced despite Plaintiffs' repeated requests for them. However, Plaintiffs have not provided any evidence in support of their contention that Defendants destroyed these documents.

Defendants argue that it produced to Plaintiffs all of the regulatory documents requested by Plaintiffs. However, on March 14, 2013, Plaintiffs requested additional regulatory documents for the first time. Defendants

10cv0541

1   anticipated producing these documents to Plaintiff.[2/] The

2   Court assumes that Defendants produced to Plaintiffs the

3   regulatory documents as requested on March 14, 2013. In

4   any event, Plaintiffs do not offer any evidence to suggest

5   that any regulatory documents that they requested have

6   been destroyed.

7   ### 4. Materials Used By Sales Force To Promote Defendants Products

8       Plaintiffs argue that they have located materials in a

9   third party's files, which are, or were, used by

10  Defendants' sales force to promote Defendants' products.

11  Plaintiffs assert that these materials show Defendants'

12  infringement of Plaintiffs' trademarks.

13      Plaintiffs learned from the third party's files that

14  Defendants' sales force distributed a tool to dentists

15  (called "GoDirect Implant Locator Insertion Drill").

16  Plaintiffs argue that the tool and its packaging are

17  relevant as evidence of counterfeiting that may assist them

18  in proving their trademark infringement claims.

19      Defendants have not produced the tool or its packaging

20  to Plaintiffs despite the fact that Plaintiffs' counsel has

21  requested them and Defendants' counsel took pictures of

22  them during the deposition of one of Defendants' sales

23  representatives. Defendants assert that the tool presented

24

25

26  —————————

27      [2/]Defendants agreed to produce these documents subject to Plaintiffs'
    agreement that they would not argue that the fact of Defendants' production shows
    that the Defendant Sybron entities should be joined in this lawsuit. However this

28  is now a moot point, because the Defendant Sybron entities have been joined in the
    lawsuit.

10cv0541

1    by Plaintiffs at the deposition of Abi Dickerson[3/] is not

2    relevant to the current litigation because it was

3    manufactured and sold while Defendants were Plaintiffs'

4    distributor and during Defendants' licensing period with

5    Plaintiffs. Defendants agreed to produce any samples of the

6    tool and its packaging to the extent that Defendants still

7    retained any such material. The Court assumes that

8    Defendants produced to Plaintiffs the tool, its packaging,

9    and any written information about the tool, to the extent

10   that Defendants retained the tool, packaging and written

11   information about the tool. In any event, Plaintiffs do not

12   offer any evidence to suggest that the tool, packaging and

13   written information about the tool have been destroyed.

14        **5.  <u>Customer Complaints</u>**

15        Plaintiffs argue that Defendants kept a spreadsheet/log

16   of customer complaints regarding Defendants' products.

17   Despite Plaintiffs' repeated requests, Defendants have

18   failed to produce the customer complaint documents.

19   Plaintiffs indicate that they have copies of incomplete

20   logs/spreadsheets of the customer complaints. Plaintiffs

21   do not indicate how or why what they received is

22   incomplete. Nor do they present any evidence that the

23   documents they seek in this regard have been destroyed.

24        Defendants argue that they have previously produced to

25   Plaintiffs the customer complaint logs. However, Defendants

26

27

28        [3/] Velez Dec. In Support of Plaintiffs' Supp. Brief, Exh. 7 (dated October 23, 2012).

10cv0541

have obtained additional complaint logs[4/] and anticipates producing these documents to Plaintiff.[5/] The Court assumes that the additional customer complaint logs, as identified in footnote 3, have been produced to Plaintiffs. In any event, Plaintiffs do not offer any evidence to suggest that any of the customer complaint logs have been destroyed.

**IV**

**DISCUSSION**

**A. <u>The Court's Inherent Authority To Impose Sanctions</u>**.

The Court's inherent power to impose sanctions is not limited to Article III courts, but extends to Magistrate Judges. <u>Apple v. Samsung</u>, 888 F.Supp 2d 976, 987 (N.D. Cal. 2012)("Apple II"). This inherent power may be invoked "to levy appropriate sanctions against a party who prejudices its opponent through the spoliation of evidence that the spoliating party had reason to know was relevant to litigation." <u>Apple II</u>, 888 F.Supp.2d at 987 [citing <u>Apple v. Samsung</u>, 881 F.Supp.2d 1132, 1135 (N.D. Cal. 2012)("Apple I"). The exercise of a court's inherent powers must be applied with "restraint and discretion" and only to the degree necessary to redress the abuse. <u>Chambers v. NASCO, Inc.</u>, 501 U.S. 32, 45 (1991).

---

[4/] The additional complaint logs are identified as (1) Excel Spreadsheet "GoDirect.XLS;" (2) Excel Spreadsheet "GPS.XLS;" (3) Excel Spreadsheet "GPSLiners.XLS;" and (4) Word document "Pareto."

[5/] Defendants agreed to produce these documents subject to Plaintiffs' agreement that they would not argue that the fact of Defendants' production shows that the Defendant Sybron entities should be joined in this lawsuit. However, this is now a moot point, because the Sybron entities have been joined in the lawsuit.

B. **Sanctions for Spoliation**

Spoliation of evidence is "the destruction or material alteration of evidence or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." Apple II, 888 F.Supp 2d at 989 [citing Silvestri v. Gen. Motors Corp., 271 F.3d 583, 590 (4th Cir. 2001)]. "The obligation to preserve evidence arises when the party reasonably should know the evidence is relevant to litigation or when a party should have known that the evidence may be relevant to future litigation." Apple II, 888 F.Supp.2d at 990.  Evidence of spoliation may be grounds for sanctions. Apple II, 888 F.Supp.2d at 989, [citing Akiona v. U.S., 938 F.2d 158, 161 (9th Cir. 1991)]. The bare fact that evidence has been altered or destroyed does not necessarily mean that the party has engaged in sanction-worthy spoliation. Ashton v. Knight Transp., Inc., 772 F.Supp.2d 772, 799-800 (N.D. Tex. 2011).

Spoliation of evidence raises the presumption that the destroyed evidence goes to the merits of the case, and further, that such evidence was adverse to the party that destroyed it. Apple II, 888 F.Supp 2d at 998 [citing Hynix Semiconductor v. Rambus, 591 F.Supp 2d 1038, 1060 (N.D. Cal. 2006), vacated on other grounds in Hynix Semiconductor v. Rambus, 645 F.3d 1336 (D.C. Cir. 2011)]. In the Ninth Circuit, "a party's destruction of evidence need not be in 'bad faith' to warrant a court's imposition of sanctions." In re Napster, Inc. Copyright Litigation, 462 F.Supp 2d 1060, 1066 (N.D. Cal. 2006) [citing Glover v. BIC Corp., 6

10cv0541

1   F.3d 1318, 1329 (9th Cir.1993)]. The Ninth Circuit has

2   instructed that district courts may impose sanctions even

3   against a spoliating party that merely had "simple notice

4   of 'potential relevance to the litigation.'" Glover, 6 F.3d

5   at 1329 [quoting Akiona v. United States, 938 F.2d 158, 161

6   (9th Cir.1991)].

7        While the Court has the discretion to impose sanctions,

8   "the sanction should be designed to: (1) deter parties from

9   engaging in spoliation; (2) place the risk of an erroneous

10  judgment on the party who wrongfully created the risk; and

11  (3) restore the prejudiced party to the same position he

12  would have been in absent the wrongful destruction of

13  evidence by the opposing party." West v. Goodyear Tire &

14  Rubber Co., 167 F.3d 776, 779 (2d Cir. 1999). To decide

15  which specific spoliation sanction to impose, courts

16  generally consider three factors: "(1) the degree of fault

17  of the party who altered or destroyed the evidence; (2) the

18  degree of prejudice suffered by the opposing party; and (3)

19  whether there is a lesser sanction that will avoid

20  substantial unfairness to the opposing party." Apple II,

21  888 F.Supp.2d at 992. Prejudice is determined by evaluating

22  whether the spoliating party's actions impaired the non-

23  spoliating party's ability to go to trial, threatened to

24  interfere with the rightful decision of the case, or forced

25  the non-spoliating party to rely on incomplete and spotty

26  evidence. In re Hitachi, 2011 WL 3563781 at *6 [citing Leon

27  v. IDX Systems Corp., 464 F.3d 951, 959 (9th Cir. 2006)].

28

10cv0541

## C.  **Defendants' Spoliation**

Defendants' duty to preserve documents arose on October 22, 2008, when Plaintiffs notified Defendants of a potential lawsuit against them should they decide to market their alleged infringing product. The evidence is clear that Defendants destroyed at least some documents as alleged by Plaintiffs. Plaintiffs have suffered prejudice as a result of Defendants' spoliation of evidence because the destroyed documents are highly probative of the claims at issue in this litigation.

Plaintiffs show that one of Defendants' key senior employees, Aravena, Director of Design Engineering, indisputably destroyed email communications due to Defendants' failure to put in place a litigation hold. Although Plaintiffs failed to identify specific emails that were not produced, Aravena testified that she did not provide Defendants' counsel with any emails, including emails relating to the design of the accused products, because she deleted them. Further, Aravena testified that no one told her not to delete her emails. Aravena's communications are especially probative of the claims at issue in this litigation because her current and past employment with Defendants involved the design, development, and testing of the products accused of infringing on the Patents-In-Suit. As a result, the Court concludes that Defendants spoliated Aravena's emails.

Plaintiffs also show that Niznick, Defendants' President and CEO, destroyed emails that he sent to third

10cv0541

party dentists.[6]   Niznick testified that of his six email accounts, he did not produce or preserve any of the emails in those accounts because he saved any communications he deemed relevant to a file of his desktop.[7]   However, Plaintiffs obtained two of Niznick's emails from third parties, that were not produced by Defendants, that support the contention that Niznick was inducing the third parties to infringe on the Patents-In-Suit. While Plaintiffs have been able to obtain these communications from third parties, there may have been additional communications of a similar sort that were destroyed that are especially probative of the claims at issue in this litigation. Consequently, the Court concludes that Defendants spoliated at least the two emails from Niznick that Plaintiffs obtained from third parties.

Although Defendants argue that there was no need for a litigation hold because of their document retention policy, it is obvious that Defendants' document retention policy did not prevent documents from being destroyed. Further, Defendants did not have a back-up system to prevent the destruction of documents, and although their employees' emails were automatically preserved to a server

---

[6] The Court is unsure whether Niznick's emails were destroyed intentionally. The emails are dated November 12, 2008 and December 3, 2008, *after* October 22, 2008, when Defendants should have put in place a litigation hold. The Court finds that Niznick's emails were destroyed as a result of Defendants' failure to put in place a litigation hold.

[7] The Court notes that Niznick is not the final arbiter of what evidence is relevant in this action. Previously, the Court admonished Defendants' counsel that they, and not Niznick, should search for and produce documents to Plaintiffs that could be relevant to a claim or defense in this action. (Order Regarding Production of Documents And Deposition of Dr. Gerald Niznick, April 19, 2012, Docket No. 94).

1  under Defendant's control, the emails could have been
2  deleted from the server.

3         Plaintiffs contend that the packaging and
4  information pertaining to the alleged infringing tool were
5  intentionally not produced and destroyed. Plaintiffs
6  obtained the alleged infringing tool from a third party.
7  However, the production of the tool did not include any
8  labels or documents that may have been included with the
9  tool. The labels and any corresponding instructions for the
10 tool are probative of the trademark infringement claims
11 alleged in this litigation. Although Defendants have agreed
12 to produce to Plaintiffs samples of the tool, labels and/or
13 instructions, they may not have retained any samples.
14 Without more, the Court cannot conclude that Defendants
15 spoliated evidence pertaining to the tool.

16      Nevertheless, individually and collectively, the
17 aforementioned facts support imposition of some form of
18 sanction against Defendants. Defendants' inactions warrant
19 sanctions because after they received from Plaintiffs
20 notice of potential litigation, they failed to issue a
21 litigation hold, and failed to monitor their employees'
22 document preservation efforts. These inactions resulted in
23 the destruction of documents relevant to this litigation.

24      **D.  <u>Appropriate Sanctions</u>**

25      Courts may sanction parties responsible for
26 spoliation of evidence in four ways: (1) Instruct the jury
27 that it may draw an inference adverse to the party
28 destroying the evidence; <u>In re Napster</u>, 462 F.Supp 2d at

10cv0541

1066, (citing <u>Glover</u> at 1329); (2) Exclude witness testimony based on the destroyed evidence proffered by the party responsible for destroying the evidence; <u>In re Napster</u>, 462 F.Supp 2d at 1066 (citing <u>Glover</u>, 6 F.3d at 1329); (3) Dismiss the claim of the party responsible for destroying the evidence; <u>In re Napster</u>, 462 F.Supp 2d at 1066, [citing <u>Chambers v. NASCO</u>, 501 U.S. 32, 45 (1991)]; (4) Assess monetary sanctions for the costs of bringing the motion for sanctions for spoliation of evidence under Fed. R. Civ. P. 37.

Courts should choose "the less onerous sanction corresponding to the willfulness of the destructive act and the prejudice suffered by the victim." <u>Apple II</u>, 888 F.Supp. 2d at 992, [citing <u>Schmid v. Milwaukee Elec. Tool Corp.</u>, 13 F.3d 76, 79 (3rd Cir. 1994)]. The choice of appropriate sanction must be determined on a case-by-case basis and should be commensurate to the spoliating party's motive or degree of fault in destroying the evidence. <u>Apple II</u>, 888 F.Supp 2d at 993.

Plaintiffs seek the entry of a default judgment against Defendants, and an adverse inference jury instruction to be read to the jury at the trial of this action. Plaintiffs also seek monetary sanctions in the form of their attorney's fees and costs for bringing this Motion and the additional expenses incurred in connection with their efforts in exposing Defendants' spoliation of evidence. Each of these potential sanctions will be considered below.

10cv0541

### 1. **Default Judgment**

> When considering a default sanction in response to spoliation of evidence, the court must determine (1) the existence of certain extraordinary circumstances, (2) the presence of willfulness, bad faith, or fault by the offending party, (3) the efficacy of lesser sanctions, [and] (4) the relationship or nexus between the misconduct drawing the [default] sanction and the matters in controversy in the case. In addition, the court may consider the prejudice to the moving party as an optional consideration where appropriate. This multi-factor test is not a mechanical means of determining what discovery sanction is just, but rather a way for a district judge to think about what to do.

Bobrick Washroom Equip., Inc. v. Am. Specialties, Inc., 2012 WL 3217858 at *5, [citing In re Napster, 462 F.Supp 2d at 1070 (N.D. Cal.2006) (quoting Halaco Eng'g Co. v. Costle, 843 F.2d 376, 380 (9th Cir. 1988); Valley Engineers, Inc. v. Electric Eng'g Co., 158 F.3d 1051, 1057 (9th Cir. 1998)](internal citations and quotations omitted).

The Court concludes that default judgment is inappropriate in this case. Defendants' conduct with respect to not preserving and destroying discovery materials amounts to gross negligence, but that conduct does not rise to the level of bad faith sufficient to warrant default judgment under the circumstances. Leon, 464 F.3d at 961 (affirming default judgment where the defendant admitted he had intentionally deleted information from his company-issued laptop computer and had written a program to remove any deleted files from the computer's hard drive, noting the district court's bad-faith determination, which

10cv0541

1  is a prerequisite to dismissing a case pursuant to a

2  court's inherent power, was not clearly erroneous).

3  ## 2. **Adverse Inference Jury Instruction**

4  The majority of courts, including many courts in

5  the Ninth Circuit, apply "the three-part test set forth in

6  Zubulake v. UBS Warburg, LLC, 220 F.R.D. 212, 216 (S.D. NY

7  2003), for determining whether to grant an adverse

8  inference spoliation instruction." Apple I, 881 F.Supp 2d

9  1138.

10  In Zubulake, the court stated:

11  A party seeking an adverse inference
   instruction (or other sanctions) based on

12  the spoliation of evidence must establish
   the following three elements: (1) that

13  the party having control over the
   evidence had an obligation to preserve it

14  at the time it was destroyed; (2) that
   the records were destroyed with a

15  'culpable state of mind' and (3) that the
   evidence was 'relevant' to the party's

16  claim or defense such that a reasonable
   trier of fact could find that it would

17  support that claim or defense.

18  Zubulake, 220 F.R.D. at 220 [citing Residential Funding

19  Corp. v. DeGeorge Fin'l Corp., 306 F.3d 99, 108 (2d Cir.

20  2002)]; see also Apple II, 888 F.Supp 2d at 989-90;

21  Surowiec v. Capital Title Agency, Inc., 790 F.Supp 997,

22  1005 (D. AZ 2011); Lewis v. Ryan, 261 F.R.D. 513, 521

23  (S.D.Cal. 2009).

24  The Ninth Circuit generally has found that "[A]s

25  soon as a potential claim is identified, a litigant is

26  under a duty to preserve evidence which it knows or

27  reasonably should know is relevant to the action." Apple

28  II, 888 F.Supp. at 991, (citing In re Napster, 462 F.Supp

2d at 1067). "When evidence is destroyed in bad faith, that fact alone is sufficient to demonstrate relevance." Zubulake, 220 F.R.D. at 220. "By contrast, when the destruction is negligent, relevance must be proven by the party seeking the sanctions." Id.

To find "culpable state of mind," a court need only find that a spoliater acted in "conscious disregard" of its obligations to not destroy documents. Apple II, 888 F.Supp 2d at 989-990, [citing Hamilton v. Signature Flight Support Corp., 2005 WL 3481423 at *7 (N.D. Cal. 2004), Io Group v. GLBT, Ltd., 2011 WL 4974337 at *7 (N.D. Cal. 2011)]. However, where a non-spoliating party fails to show a degree of fault and level of prejudice, negligent destruction of documents does not warrant an adverse inference instruction or evidence preclusion. Apple II, 888 F.Supp.2d at 993.

If spoliation is shown, the burden of proof shifts to the guilty party to show that no prejudice resulted from the spoliation, because that party "is in a much better position to show what was destroyed and should not be able to benefit from its wrongdoing." Apple II, 888 F.Supp 2d at 998, [citing Hynix Semiconductor v. Rambus, 591 F.Supp 2d 1038, 1060 (N.D. Cal. 2006), vacated on other grounds in Hynix Semiconductor v. Rambus, 645 F.3d 1336 (D.C. Cir. 2011); In re Hitachi, 2011 WL 3563781 at *6].

Defendants had control of all of their email and non-email documents. They had an obligation to preserve them. As soon as Defendants were notified of a potential

10cv0541

1  lawsuit, Defendants were under a duty to preserve evidence
2  which it knew, or reasonably should have known, were
3  relevant to the action. Once Defendants were notified of a
4  potential lawsuit, it was their responsibility to suspend
5  any existing policies related to the deletion or
6  destruction of documents and to ensure all employees knew
7  to preserve all documents related to the alleged infringing
8  products. Here, Defendants would have had reason to know
9  that the documents were relevant in this action because the
10 documents contained information that related directly to
11 the design of the alleged infringing products and were
12 communications to third parties on the use of the alleged
13 infringing products with Plaintiff's product. Accordingly,
14 Defendants had control over the documents and an obligation
15 to preserve them. They did not discharge this obligation.

16      Defendants destroyed the documents with a culpable
17 state of mind. Defendants, in conscious, or perhaps
18 willful, disregard of their obligation to preserve
19 documents, allowed the documents to be destroyed by failing
20 to implement a litigation hold and a document preservation
21 policy. Thus, Defendants were at least negligent in not
22 implementing a litigation hold on or after October 22,
23 2008, and not giving any affirmative instructions to their
24 employees to preserve potentially relevant documents.

25      Plaintiffs are prejudiced by the destruction of
26 Aravena's and Niznick's emails because the contents of
27 these documents are directly relevant to the claims at
28 issue in this litigation. As a result, Plaintiff is now

10cv0541

forced to go to trial while relying on incomplete evidence.

Defendants attempt to rebut the presumption of prejudice by stating that they produced all of Aravena's emails, that Plaintiff has not shown that any specific emails are missing, and that her emails were irrelevant to Plaintiff's expert's opinions. Further, Defendants contend that Plaintiffs are not prejudiced by the destruction of Niznick's communications with third parties, because Plaintiffs have failed to show that any other similar emails exist. Finally, Defendants argue that since Plaintiffs already have the tool and its packaging, they need nothing more and cannot be prejudiced. However, none of these contentions actually rebut the presumption, because spoliation of evidence carries the presumption that the destroyed evidence goes to the merits of the case. Further, it is not possible for Plaintiffs to point to specific emails that were destroyed. Moreover, Plaintiffs have submitted ample evidence for this Court to determine that documents relevant to the claims in this action were destroyed because of Defendants' negligent conduct.

As a sanction for Defendant's spoliation of relevant evidence, the Court RECOMMENDS that an adverse inference instruction should be read to the jury. This recommendation is warranted in light of the degree of Defendants' fault and the degree of prejudice Plaintiffs have suffered. Based on Defendants' conscious and/or willful disregard of its obligations, and in the absence of

10cv0541

bad faith, the Court RECOMMENDS that the jury be instructed as follows:

> Defendants failed to prevent the destruction of relevant evidence for Plaintiffs' use in this litigation. The evidence pertains to the design, development, and testing, of Defendants' products and Plaintiffs' claims that Defendants induced infringement of Plaintiffs' patents. This failure resulted from Defendants' failure to perform their discovery obligations.
>
> You may, if you find appropriate, presume from that destruction, that the evidence destroyed was relevant to Plaintiffs' case and that the destroyed evidence was favorable to Plaintiffs.
>
> Whether this finding is important to you in reaching a verdict is for you to decide.

Food Service of America, Inc. v. Carrington 2013 WL 4507593 at *22 (D. AZ 2013), Chamberlain v. Les Schwab Tire Center of California, 2012 WL 6020103 at *6 (E.D. Cal. 2012).

### 3. **Attorney's Fees and Costs**

Monetary sanctions may be imposed where one party has wrongfully destroyed evidence. See, e.g., National Ass'n of Radiation Survivors, 115 F.R.D. 543, 558-59 (C.D. Cal. 1987). Plaintiffs claim that they are entitled to their attorneys' fees incurred as a result of Defendants' misconduct, with bringing this Motion, and with additional investigation efforts involved in bringing the misconduct to the Court's attention.

Here, the Court finds that monetary sanctions are warranted. Defendants' negligence and their denial of

spoliation of evidence caused delay and unnecessary costs that could have been avoided had Defendants simply put in place a litigation hold and monitored a document preservation policy, as they were obligated to do. Further, it is particularly egregious that, to date, Defendants have not presented any evidence that they have ever implemented a litigation hold in this case.

Therefore, Plaintiffs are entitled to an award of reasonable attorney fees in light of the degree of Defendants' culpability. Defendants shall reimburse Plaintiff the reasonable attorneys' fees and costs associated with (1) the time spent by Plaintiffs in bringing Defendants' misconduct to the Court's attention, (2) bringing the instant Motion, and (3) obtaining destroyed documents from third parties. Plaintiffs shall submit a request for a specific amount of fees and costs, with evidentiary support, for the Court's consideration.

## V

## CONCLUSION

The Federal Rules of Civil Procedure do not require perfection or guarantee that every possible responsive document will be found and/or produced. Parties are required to preserve evidence relevant to litigation and to prevent spoliation. Defendants failed to preserve multiple documents that are relevant to Plaintiff's claims with the requisite culpable state of mind to support a finding of spoliation of evidence.

10cv0541

After review of all the evidence presented, and for the reasons stated above, the Court rules as follows:

1. The Court RECOMMENDS that Plaintiffs' Motion for Sanctions, to the extent that Plaintiffs seek an adverse inference jury instruction, be GRANTED.

2. Plaintiff's Motion for Sanctions, to the extent Plaintiffs seek monetary sanctions, is GRANTED.

3. Plaintiff's Motion for Sanctions, to the extent Plaintiffs seek a default judgment, is DENIED.

**IT IS FURTHER ORDERED** that on or before <u>December 31, 2013</u>, Plaintiffs shall file with the Court substantiation of the reasonable attorneys' fees and costs associated with (1) the time spent by Plaintiffs in bringing Defendants' spoliation of evidence to the Court's attention, (2) bringing the current Motion, and (3) obtaining destroyed documents from third parties.

As noted above, the undersigned Magistrate Judge RECOMMENDS that  Plaintiffs' Motion for Sanctions, to the extent that Plaintiffs seek an adverse inference jury instruction, be GRANTED.

This Recommendation of the undersigned Magistrate Judge is submitted to the United States District Judge assigned to this case, pursuant to the provision of 28 U.S.C. Section 636(b)(1).

**IT IS ORDERED** that no later than <u>December 31, 2013</u> any party to this action may file written objections with the Court and serve a copy on all parties.  The document

10cv0541

should be captioned "Objections to Recommendation for Adverse Inference Jury Instruction."

**IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the Court and served on all parties no later than January 14, 2014. The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED:  November 25, 2013

_____
Hon. William V. Gallo
U.S. Magistrate Judge

10cv0541