1

2

3

4

5

6

7

8                    **UNITED STATES DISTRICT COURT**

9                    **SOUTHERN DISTRICT OF CALIFORNIA**

10   ZEST IP HOLDINGS, LLC, a                CASE NO. 10cv541-GPC(WVG)
     Delaware limited liability company;
11   ZEST ANCHORS, LLC, a Delaware           **ORDER:**
     limited liability company,
12                                           **1) OVERRULING OBJECTIONS TO**
                              Plaintiffs,    **MAGISTRATE JUDGE ORDER**
13                                           **AND ADOPTING IN PART**
                                             **RECOMMENDATION FOR**
14        vs.                                **SANCTIONS**

15                                           [Dkt. No. 312.]

16                                           **2) DENYING MOTIONS TO SET**
                                             **ASIDE MAGISTRATE JUDGE**
17                                           **ORDERS**

18   IMPLANT DIRECT MFG. LLC, a              [Dkt. Nos. 345, 370.]
     Nevada limited liability company;
19   IMPLANT DIRECT LLC, a Nevada            **3) GRANTING IN PART AND**
     limited liability company; IMPLANT      **DENYING IN PART MOTION TO**
20   DIRECT INT'L, a Nevada                  **SET ASIDE MAGISTRATE JUDGE**
     corporation,                            **ORDER**
21
                              Defendants.    [Dkt. No. 402.]
22

23

24                           **INTRODUCTION**

25        Currently pending before the Court are objections to a Magistrate Judge's

26   Order and Recommendation for sanctions as well as three additional motions to set

27   aside orders issued by Magistrate Judge Gallo filed by Defendants Implant Direct

28   MFG LLC, Implant Direct LLC, and Implant Direct International (collectively,

                                     - 1 -

"Implant Direct" or "Defendants"). (Dkt. Nos. 312, 345, 370, 402.) The Parties have fully briefed the objections and motions. (See Dkt. Nos. 372, 333, 374-1, 400, 401; 412, 414; 413, 415; 417, 418.) A hearing was held on May 23, 2014. (Dkt. No. 437.) Based on a review of the Parties' extensive briefing, the record, oral arguments by the parties, and the applicable law, the Court: (1) OVERRULES Implant Direct's objections and ADOPTS in part the recommendation of Magistrate Judge William V. Gallo ("Judge Gallo") imposing sanctions for spoliation of evidence, (Dkt. No. 312); (2) DENIES Implant Direct's two motions to set aside the Seventh Amended Case Management Order and Judge Gallo's order related to the joint expert report of Scott D. Hampton and Bruce G. Silverman, (Dkt. Nos. 345, 370); and (3) GRANTS in part and DENIES in part Implant Direct's motion to set aside Judge Gallo's order related to additional discovery. (Dkt. No. 402.)

## BACKGROUND

As set forth in prior orders in this case, this is a patent and trademark infringement action involving dental attachment products. (See Dkt. No. 1.) In the First Amended Complaint, Plaintiffs Zest IP Holdings, LLC and Zest Anchors, LLC (collectively, "Zest" or "Plaintiffs") allege that the marketing and sale of the GoDirect and GPS products (the "Accused Products") by Defendants infringes Plaintiffs' patent and trademark rights. (Dkt. No. 13, "FAC," at 12-13.) The patents at issue are U.S. Patent No. 6,030,219 ("the '219 Patent") and U.S. Patent No. 6,299,447 ("the '447 Patent"). (Id.) Plaintiffs also allege Defendants infringed Plaintiffs' registered marks "ZEST" and "LOCATOR" without Plaintiffs' authorization, resulting in trademark infringement. (Id. at 13.) Plaintiffs allege several additional federal and state law claims, including false designation of origin, false advertising, unfair business practices, and unfair competition. (Id. at 13-17.)

This case has been pending for over four years. (See Dkt. No. 1, filed March 12, 2010.) On April 10, 2012, Judge Larry Burns presided over the claim construction ("Markman") hearing in this case. (Dkt. No. 88.) On August 21, 2012,

Plaintiffs filed a motion to join the IDSI Defendants as successors in interest to the Implant Direct entities pursuant to Federal Rules of Civil Procedure 25(c). (Dkt. No. 116.) On October 22, 2012, this matter was transferred to the undersigned Judge. (Dkt. No. 142.)

Pursuant to Judge Gallo's Third Amended Case Management Order, fact discovery closed on November 21, 2012. (Dkt. No. 157 ¶ 3.) Following the close of fact discovery, the Parties engaged in extensive motion practice throughout 2013 and early 2014.[1] In addition, Magistrate Judge Gallo held numerous status conferences and hearings and issued many orders resolving discovery disputes between the Parties.[2]

Now that many issues of contention between the Parties have been resolved by this Court and by Magistrate Judge Gallo, Defendants have filed objections to and motions to set aside four separate Orders issued by Magistrate Judge Gallo in this case. (Dkt. Nos. 312, 345, 370, 402.) In addition, the IDSI Defendants have filed a Motion for Reconsideration, styled as a Motion for Clarification, which this

---

[1] See, e.g., Dkt. No. 201, Plaintiffs' Motion to Strike the Joint Expert Report of Scott D. Hampton and Bruce G. Silverman; Dkt. No. 216, Defendants' Motion for Reconsideration of the Court's Order on Plaintiffs' Motion to Amend/Correct Infringement Contentions; Dkt. No. 226, Motion to Strike IDSI's Answer and Counterclaim; Dkt. No. 230, Defendants' Motion to Amend/Correct Invalidity Contentions; Dkt. No. 250, Plaintiffs' Motion to Strike IDSI's Invalidity Contentions; Dkt. No. 282, Defendants' Motion to Clarify or Amend Answer; Dkt. No. 306, Defendants' Motion for Reconsideration of the Court's Order on Defendants' Motion to Amend/Correct Invalidity Contentions.

[2] See, e.g., Dkt. No. 187, Status Conference re: Discovery; Dkt. No. 189, Mandatory Settlement Conference; Dkt. No. 225, Motion Hearing on Plaintiffs' Motion for Spoliation and Discovery Abuses Sanctions; Dkt. No. 260, Order Granting Plaintiffs' Application to Compel the Deposition of Stephanie Bergerson; Dkt. No. 267, Order Regarding Production of GPS Male Samples; Dkt. No. 280, Order After In Camera Review of Regulatory Documents; Dkt. No. 285, Order Granting Defendants' Request to Conduct Discovery; Dkt. No. 287, Order to Comply with Chambers Rules; Dkt. No. 312, Order Granting in Part and Denying in Part Plaintiffs' Motion for Spoliation and Discovery Abuse Sanctions; Dkt. No. 320, Order Granting Motion to Strike the Joint Expert Report of Scott D. Hampton and Bruce G. Silverman; Dkt. No. 321, Order Granting Unopposed Motion for Status Conference; Dkt. No. 358, Order Denying Defendants' Application to Compel Production of Unredacted Documents; Dkt. No. 360, Order Regarding Potential Outstanding Discovery; Dkt. No. 396, Order Denying Defendants' Application to Conduct Additional Discovery.

1    Court will address in a separate Order. (Dkt. No. 420.) Although it is Defendants'

2    right to file these motions, see Fed. R. Civ. P. 70, 59(e), motions to set aside a

3    Magistrate Judge's Order and motions for reconsideration consume significant

4    judicial resources, delay litigation, and are rarely granted. See Kona Enterprises,

5    Inc. v. Estate of Bishop, 229 F.3d 877, 890 (9th Cir. 2000) (reconsideration and

6    amendment of a previous order should be used "sparingly in the interests of finality

7    and conservation of judicial resources") (internal citation and quotation marks

8    omitted); Concrete Pipe & Prod. v. Constr. Laborers Pension Trust, 508 U.S. 602,

9    623 (1993) ("Review under the clearly erroneous standard is significantly

10   deferential, requiring a definite and firm conviction that a mistake has been

11   committed."); United States v. Abonce-Barrera, 257 F.3d 959, 969 (9th Cir. 2001).

12        Nevertheless, the Court has considered all of Defendants' objections to and

13   arguments in favor of setting aside Judge Gallo's Orders. The Court addresses each

14   motion in turn.

15                              **LEGAL STANDARDS**

16   **I. Objections to a Magistrate Judge's Order**

17        Section 636 of the Federal Magistrates Act delineates the jurisdiction and

18   powers of magistrate judges. 28 U.S.C. § 636. Section 636(b)(1)(A) permits the

19   district court to designate any pretrial matter to the determination of the magistrate

20   judge, with the exception of eight types of motions: motions for injunctive relief, for

21   judgment on the pleadings, for summary judgment, to dismiss or quash an

22   indictment or information made by the defendant, to suppress evidence in a criminal

23   case, to dismiss or to permit maintenance of a class action, to dismiss for failure to

24   state a claim upon which relief can be granted, and to involuntarily dismiss an

25   action. 28 U.S.C. § 636(b)(1)(A). Section 636(b)(1)(B) allows the magistrate judge

26   to conduct hearings and submit proposed findings of fact and recommendations to

27   the district court on the excepted motions listed in § 636(b)(1)(A).

28        The Ninth Circuit has held that the eight enumerated exceptions "are not an

exhaustive list of all the pretrial matters that are excepted from the magistrate judge's authority." United States v. Rivera-Guerrero, 377 F.3d 1064, 1067 (9th Cir. 2004). The scope of a magistrate judge's authority to issue an order under section 636(b)(1)(A) or to issue a report and recommendation under section 636(b)(1)(B) is therefore determined by the "effect" of the motion at issue; by determination of whether the motion's effect is "properly characterized as 'dispositive or non-dispositive of a claim or defense of a party.' " Id. at 1068 (quoting Maisonville v. F2 America, Inc., 902 F.2d 746 (9th Cir. 1990)).

**A. Non-Dispositive Orders**

If the matter is not dispositive of a claim or defense of a party, a magistrate judge may enter "a written order setting forth [its] disposition." Fed. R. Civ. P. 72(a). The district court shall defer to the magistrate's orders unless they are clearly erroneous or contrary to law. Id. "Review under the clearly erroneous standard is significantly deferential, requiring a definite and firm conviction that a mistake has been committed." Concrete Pipe & Prod. v. Constr. Laborers Pension Trust, 508 U.S. 602, 623 (1993) (quotation omitted); see also Hernandez v. Tanninen, 604 F.3d 1095, 1100 (9th Cir. 2010) (same). "[T]he magistrate judge's decision . . . is entitled to great deference by the district court." United States v. Abonce–Barrera, 257 F.3d 959, 969 (9th Cir. 2001).

**B. Dispositive Orders**

If the matter is one of the eight exceptions to section 636(b)(1)(A) or similar issue dispositive of a claim or defense of a party, the District Court Judge must review the Magistrate Judge's Report and Recommendation de novo. United States v. Rivera-Guerrero, 377 F.3d 1064, 1070 (9th Cir. 2004). The district court "shall make a de novo determination of those portions of the report . . . to which objection is made," and "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). When no objections are filed, a district court may assume the correctness of the magistrate

judge's findings of fact and decide the motion on the applicable law. Campbell v. U.S. Dist. Court, 501 F.2d 196, 206 (9th Cir. 1974); Johnson v. Nelson, 142 F. Supp. 2d 1215, 1217 (S.D. Cal. 2001).

In addition, "a district court has discretion, but is not required, to consider evidence presented for the first time in a party's objection to a magistrate judge's recommendation." United States v. Howell, 231 F.3d 615, 621 (9th Cir. 2000).

## DISCUSSION

Implant Direct has filed objections to and motions to set aside four discovery orders issued by Judge Gallo. (Dkt. Nos. 372, "Spoliation Order"; 345, "Expert Report Order"; 370, "Seventh Am. CMC Order; 402, "Additional Discovery Order.")

## I. Spoliation Order

The first discovery order issued by Judge Gallo and objected to by Implant Direct is an Order Granting in Part and Denying in Part Plaintiffs' Motion for Spoliation and Discovery Abuse Sanctions ("Spoliation Order"). (Dkt. No. 312.)

### A. Procedural History

Zest filed a motion for spoliation and discovery abuse sanctions against Implant Direct on August 27, 2012. (Dkt. No. 121.) The motion was fully briefed, (Dkt. Nos. 127, 131), and the Parties submitted respective supplemental briefs, (Dkt. Nos. 192, 197), as well as supplemental declarations and joint statements. (Dkt. Nos. 129, 151, 152, 160.) Judge Gallo held two hearings on the motion, on October 19, 2012 and on May 29, 2013. (Dkt. Nos. 145, 228.)

On November 25, 2013, Judge Gallo issued an Order: (1) granting in part and denying in part Zest's motion for spoliation and discovery abuse sanctions; and (2) recommending an adverse jury instruction at trial. Specifically, Judge Gallo made the following factual findings and conclusions of law: (1) Defendants' duty to preserve documents arose on October 22, 2008, when Plaintiffs notified Defendants of a potential lawsuit against Defendants should Defendants decide to market their

allegedly infringing product, (Dkt. No. 312 at 13); (2) Defendants failed to implement a "litigation hold or document preservation policy on October 22, 2008, or at any time before the Complaint was filed, or after the Complaint was filed," (id. at 4); (3) Defendants spoliated two categories of documents - the emails of Ines Aravena and Gerald Niznick, (id. at 13-14); (4) an adverse inference jury instruction was warranted; and (5) monetary sanctions were warranted.

Pursuant to Judge Gallo's Order and Recommendation, Zest has filed a bill of costs, (Dkt. No. 325), to which Implant Direct has objected. (Dkt. No. 334.) In addition, Implant Direct has filed objections to the Order, (Dkt. No. 372), which have been fully briefed by the Parties. (Dkt. Nos. 333, 374-1, 400, 401.)

**B. Standard of Review**

In general, discovery sanctions are non-dispositive matters "which may be imposed directly by a magistrate." Grimes v. City & Cty. of San Francisco, 951 F.2d 236, 240 (9th Cir. 1991) (citing Ocelot Oil Corp. v. Sparrow Indus., 847 F.2d 1458, 1462 (10th Cir. 1988) ("Discovery is clearly a pretrial matter, and magistrates thus have general authority to order discovery sanctions.")). Pursuant to the authority granted to them by the Federal Magistrates Act, 28 U.S.C. § 636, and the Federal Rules of Civil Procedure, Fed. R. Civ. P. 72(a), Magistrate Judges thus routinely issue Orders granting or denying motions for discovery abuse sanctions for spoliation of evidence. See, e.g., Apple Inc. v. Samsung Electronics Co., Ltd., 881 F. Supp. 2d 1132 (N.D. Cal. 2012) (Grewal, Mag.); Peschel v. City of Missoula, 664 F. Supp. 2d 1137 (D. Mont. 2009) (Lynch, Mag.).

Here, however, Plaintiff's original motion for spoliation and discovery abuse sanctions sought a terminating sanction. (Dkt. No. 121-1 at 18.) Although Judge Gallo did not recommend granting a terminating sanction, he nonetheless issued his Order granting in part and denying in part Plaintiff's motion for sanctions as an "Order and Recommendation." (Dkt. No. 312.) In addition, during the October 19, 2012 hearing on Plaintiff's spoliation motion, Judge Gallo indicated to the Parties

that he lacked authority to enter a default judgment or impose an adverse inference and would only make a recommendation for a default judgment or adverse inference if he found either appropriate. (Dkt. No. 145 at 3-4.) Accordingly, the Court will apply the standard of review for findings and recommendations of a magistrate judge pursuant to 28 U.S.C. § 636(b) (providing that the district court "shall make a de novo determination of those portions of the report . . . to which objection is made," and "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge"). Where no objections have been filed, the Court will assume the correctness of the Judge Gallo's findings of fact and decide the motion on the applicable law. See Campbell v. U.S. Dist. Court, 501 F.2d 196, 206 (9th Cir. 1974); Johnson v. Nelson, 142 F. Supp. 2d 1215, 1217 (S.D. Cal. 2001).

**C. Factual Background**

The Court incorporates the factual background as set forth in Judge Gallo's November 25, 2013 Order and Recommendation. (Dkt. No. 312.) As Implant Direct has objected to Judge Gallo's factual findings related to when the duty to preserve evidence arose as well as the spoliation of emails by Dr. Gerald Niznick and Ines Aravena, the Court hereby supplements Judge Gallo's factual findings with the following factual background related to these three categories of Judge Gallo's findings.

**1. Discussions Over Implant Direct's Development of the GoDirect Implant**

Between July and September, 2008, Zest's President at the time, Paul Zuest, and Implant Direct's CEO at the time, Dr. Gerald Niznick, exchanged a series of communications regarding Implant Direct's development of the product later produced and marketed by Implant Direct as the "GoDirect" implant. (Dkt. No. 127-11, Hurey Decl. Ex. 10, Niznick Depo. 44:18-23, 150-59.) Specifically, Dr. Niznick called Mr. Zuest on July 28, 2008, to notify Mr. Zuest that he had filed a patent on a

one-piece implant designed to function with the Zest "Locator" female attachment (the "GoDirect Implant"). (Dkt. No. 336-2,[3] Velez Decl. Ex. 5.) On August 6, 2008, Mr. Zuest sent a letter to Dr. Niznick stating that Zest Anchors, Inc. had discussed the matter at a Board of Directors meeting and consulted with the company's patent attorney. (Dkt. No. 378-4, Velez Decl. Ex. 6.) The letter further stated that Zest considered Implant Direct's plan to develop the GoDirect Implant to be a violation of the distribution agreement between Zest and Implant Direct and that "Zest Anchors, Inc. will be forced to sue for patent infringement of its existing Locator Patents if a company makes a one-piece Locator Attachment Mini Implant without the permission of Zest Anchors, Inc." (Id.) On August 7, 2008, Dr. Niznick sent a letter disagreeing with Mr. Zuest's characterization of the GoDirect Implant development plan as a either a breach of the Parties' distribution agreement or an infringement of Zest's patents. (Dkt. No. 378-3, Velez Decl. Ex. 5.) Dr. Niznick's letter states "[i]f you seek self-help by unilaterally cancelling our contract, I will initiate arbitration and seek both actual and punitive damages." (Dkt. No. 336-2,[4] Velez Decl. Ex. 5.) On October 22, 2008, Mr. Zuest sent a letter "To Whom It May Concern" stating reasons why Implant Direct would not "obtain any patent protection for their copy of the Locator Attachment Mini Implant" and reaffirming Zest's position that "[o]ther companies may not make, use, sell or offer to sell the Locator Attachment Mini Implant without infringing our patent." (Dkt. No. 121-2, Velez Decl. Ex. 7.)

On March 12, 2010, Zest filed the present action for patent infringement, trademark infringement, false designation of origin, false advertising, and unfair competition. (Dkt. No. 1.) On March 15, 2010, Mr. Zuest sent a letter to Dr. Niznick

---

[3]The redacted public version of this letter was filed on the public docket as (Dkt. No. 378-3.) Although the Court granted Zest's motion to file the letter under seal, the Court finds no reason to seal the specific information cited here.

[4]The redacted public version of this letter was filed on the public docket as (Dkt. No. 378-3.) Although the Court granted Zest's motion to file the letter under seal, the Court finds no reason to seal the specific information quoted here.

[10cv541-GPC(WVG)]

attaching the filed complaint. (Dkt. No. 121-2, Velez Decl. Ex. 1.) On July 7, 2010, Implant Direct was served with the Complaint and Summons. (Dkt. Nos. 5-7.)

### 2. Emails of Dr. Gerald Niznick

Between July 2008 and service of the summons in the present action on Implant Direct on July 7, 2010, Dr. Niznick was the President of Implant Direct. As of his declaration on May 3, 2012, Dr. Gerald Niznick was the President of Implant Direct Sybron, LLC, the successor in interest to Implant Direct. (Dkt. No. 121-2, Ex. 16, Niznick Decl. ¶ 1.) Dr. Niznick is the "person who developed and designed the GPS and GoDirect products." (Id. ¶ 3.) Dr. Niznick is also "the person who has the primary responsibility at Implant Direct of searching for and producing documents in response to Zest's document request[s]." (Id. ¶ 2.)

At his deposition on May 11, 2012, Dr. Niznick testified that, although he maintained six separate email addresses, (Dkt. No. 127-11, Hurey Decl. Ex. 10, Niznick Depo. at 43:7-15), he did not search his email accounts or computer desktop for documents in response to Zest's document requests. Instead, Dr. Niznick regularly saved all relevant correspondence that he had with Zest in a file marked "Zest;" similarly, he saved all relevant electronic documents on his desktop in a file labeled "Zest litigation." (Id. at 34:10-14, 37:12-16.) Dr. Niznick produced documents solely from these two sources, and relied on his employees to produce the other requested documents. (Id. at 34-36.) When asked when he first started saving communications to his "Zest" file(s), Dr. Niznick answered:

> When I first communicated with Paul Zuest, much before this litigation was filed, when I communicated with [Zest counsel Ms. Lisa Ferri, Esq.] from Spain, outlining two ways that I could design around this patent and suggesting you withdraw your lawsuit. So we're going back to before the lawsuit was filed and immediately upon the filing of the lawsuit as well. Since that time, everything that related to Zest has been saved.

(Id. at 44:16-45:2.) Dr. Niznick further testified that his attorney provided him with a copy of Zest's document requests in this litigation, and that he "was quite capable to read the document [himself] and determine what needed to be produced . . ." (Id.

at 26:16-24.)

    In support of Plaintiffs' motion for spoliation and discovery abuse sanctions, Plaintiffs have produced two emails between Dr. Niznick and third-party dentists that were not produced by Dr. Niznick or Implant Direct. (Dkt. No. 121-2, Velez Decl. Exs. 11, 12.) The first, dated November 12, 2008, was sent from Dr. Niznick to a dentist with the email address Drimplants@aol.com. (Dkt. No. 121-2, Velez Decl. Ex. 11.) The email, containing two pictures, encourages purchase of the GoDirect implants "available in about 3 months form[sic] Implant Direct - Exclusively" to go along with the Zest Locator abutments. (Id.) Zest obtained this email when Drimplants@aol.com forwarded Dr. Niznick's email to Scott Mullaly, a Zest employee. (Id.)

    The second email produced by Plaintiff is an email from Dr. Niznick (from his email address Nizplant@aol.com) to "implantology@home.ease.lsoft.com" sent on December 3, 2008. (Dkt. No. 121-2, Velez Decl. Ex. 12.) The email states, in response to a question as to whether the GoDirect implant is legal, "I could make the nylon components because it would only be infringement of their patent if I sold them for use with abutments. Zest has agreed to sell me the attachments for resale with the GoDirect because they recognize that Godirect it does not violate its patent." (Id.)

    Implant Direct does not dispute that these emails were not produced by Dr. Niznick in this litigation; neither do they dispute Plaintiffs' claim that the emails were destroyed. Implant Direct claims only that the emails were sent "long before this lawsuit was filed, and before the time that Implant Direct had any obligation to preserve evidence." (Dkt. No. 127 at 10; see also Dkt. No. 390 at 16.)

### 3. Emails of Ines Aravena

    At the time of her deposition on June 19, 2012, Ines Aravena testified that she

was the Director of Design Engineering for Implant Direct.[5] (Dkt. No. 378-2, Velez Decl. Ex. 4, Aravena Depo. at 27.) When Ms. Aravena joined Implant Direct, she started as an independent contractor consultant and would sometimes work from home. (Id. at 71:2-7, 211:22-25.) Ms. Aravena worked with Dr. Niznick to design the GoDirect and GPS products (the "accused products") at issue in this case. (Id. at 140-141; see also Dkt. No. 127-10, Hurey Decl. Ex. 10, Aravena Depo. at 71-73.) Dr. Niznick testified at his deposition that he delegated the responsibility to "respond thoroughly" to any requests related to "engineering drawings or documents that were requested" by Zest to Ms. Aravena as head of his design engineering department. (Dkt. No. 127-11, Hurey Decl. Ex. 10, Niznick Depo. at 34:15-19.) In regard to Zest's request for documents related to the conceiving of the GPS and GoDirect products, Dr. Niznick further testified that he did not think those documents existed, so there was nothing to provide, except for email communications with "Ines" and "Brian Banton," who "were asked to provide whatever they had." (Id. at 35:10-21.)

During her deposition, Ms. Aravena testified that she used two separate email accounts for Implant Direct work: a "work account" and an AOL "home account." (Dkt. No. 378-2, Velez Decl. Ex. 4, Aravena Depo. at 212:1-7.) Ms. Aravena further testified that she deleted work emails from both accounts and was never instructed to refrain from destroying or deleting documents that are relevant to the present litigation. (Id. at 212:8-213:6.) Ms. Aravena stated that she deleted emails because she got "hundreds of e-mails, so it gets bombarded with, you know. I only read them and delete them, so." (Id. at 211:17-20.) She stated this was especially true if she was working from home. (Id. at 211:22-25.)

Zest filed the present spoliation and discovery abuse sanction motion ("spoliation motion) on August 27, 2012. (Dkt. No. 121.) At that time, the discovery

---

[5]The Court notes that, in the context of the other documents filed in this case, Ms. Aravena likely meant "Implant Direct Sybron," the successor in interest to Implant Direct.

cutoff in this case, including expert discovery, was set for November 9, 2012. (Dkt. No. 84 ¶ 3.) In support of Zest's spoliation motion, Zest specifically identified three emails (or sets of emails) from Ms. Aravena to Implant Direct employees that Ms. Aravena testified at her deposition to destroying and that Implant Direct had not produced. (Dkt. No. 121-1 at 5-6.) In addition, Zest claimed Ms. Aravena admitted to creating Computer-Aided Design ("CAD") models as part of the product design process, but Implant Direct had failed to produce the models. (Dkt. No. 121 at 6.)

On September 19, 2012, the deadline for fact discovery was extended to November 21, 2012. (Dkt. No. 126.) During the first week of October, 2012, Implant Direct produced thousands of additional documents to Zest from the Implant Direct email servers, including copies of the emails and CAD models identified by Zest as destroyed. (See Dkt. Nos. 127-16; 129; 160 ¶ 6.)

**D. Discussion**

"Spoliation is an evidentiary doctrine under which a district court can, in its discretion, sanction a party that destroys evidence, if the party is on notice that the evidence is potentially relevant to pending litigation." Leeson v. Transamerica Disability Income Plan, 279 Fed. Appx. 563, 565 (9th Cir. 2008) (citing United States v. Kitsap Physicians Serv., 314 F.3d 995, 1001 (9th Cir. 2002)). Spoliation is "the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence, in pending or future litigation." Kearney v. Foley & Lardner, LLP, 590 F.3d 638, 649 (9th Cir. 2009); Silvestri v. Gen. Motors Corp., 271 F.3d 583, 590 (4th Cir. 2001) (Spoliation "refers to the destruction or material alteration of evidence or to the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation.").

A district court may sanction a party who has despoiled evidence pursuant to the "inherent power of federal courts to levy sanctions in response to abusive litigation practices" or pursuant to Rule 37 against a party who "fails to obey an order to provide or permit discovery." Leon v. IDX Systems Corp., 464 F.3d 951,

958 (9th Cir. 2006) (citing <u>Fjelstad v. Am. Honda Motor Co.</u>, 762 F.2d 1334, 1337-38 (9th Cir. 1985); Fed. R. Civ. P. 37(b)(2)(C)). Courts may sanction parties for spoliation of evidence by instructing the jury that it may draw an inference adverse to the party or witness responsible for destroying the evidence; by excluding witness testimony proffered by the party responsible for destroying the evidence and based on the destroyed evidence; and dismissing the claim of the party responsible for destroying the evidence. <u>In re Napster, Inc. Copyright Litigation</u>, 462 F. Supp. 2d 1060, 1066 (N.D. Cal. 2006) (citations omitted). In addition, courts may impose monetary sanctions against a party or counsel who acts "in bad faith, vexatiously, wantonly, or for oppressive reasons." <u>Leon</u>, 464 F.3d at 961 (citing <u>Primus Auto. Fin. Servs., Inc. v. Batarse</u>, 115 F.3d 644, 648 (9th Cir. 1997)). A party's destruction of evidence need not be in "bad faith" to warrant a court's imposition of sanctions. <u>Glover v. BIC Corp.</u>, 6 F.3d 1318, 1329 (9th Cir. 1993). Simple notice of "potential relevance to the litigation" suffices to support sanctions for destruction or spoliation of evidence. <u>Id.</u> (quoting <u>Akiona v. United States</u>, 938 F.2d 158, 161 (9th Cir. 1991). "However, a party's motive or degree of fault in destroying evidence is relevant to what sanction, if any, is imposed." <u>Realnetworks, Inc. v. DVD Copy Control Ass'n, Inc.</u>, 264 F.R.D. 517 (N.D. Cal. 2009) (citing <u>Baliotis v. McNeil</u>, 870 F. Supp. 1285, 1291 (M.D. Pa. 1994).

Implant Direct objects to Judge Gallo's Spoliation Order on five grounds: (1) Judge Gallo's finding that the duty to preserve evidence arose on October 22, 2008 is erroneous; (2) the finding that Dr. Niznick's emails were spoliated should not be accepted; (3) the finding that Ms. Aravena's emails were spoliated should not be accepted; (4) the adverse inference instruction recommended by Judge Gallo should not be accepted; and (5) the monetary sanction should not be accepted.

**1. Duty to Preserve Evidence**

Implant Direct argues Judge Gallo erred in finding that Implant Direct's duty to preserve evidence arose on October 22, 2008. Specifically, Implant Direct makes

three arguments: (1) no authority supports a duty to preserve evidence before a Defendant commits a wrong; (2) policy considerations preclude a duty to preserve evidence before a Defendant commits a wrong; and (3) litigation was not foreseeable as of October 22, 2008. (Dkt. No. 372 at 6-16.) In short, Implant Direct argues that as of October 22, 2008, Implant Direct was still in the design stage of developing the allegedly offending GoDirect implant, and thus could not have reasonably anticipated being in violation of patent law's restriction against making, using, offering to sell, or selling any patented invention. (Id. at 8) (quoting 35 U.S.C. § 271(a)) (internal quotation marks omitted).

Implant Direct's three arguments thus rely on a characterization of the October 22, 2008 date as "before a Defendant commits a wrong." (See Dkt. No. 372 at 8) ("Implant Direct is not aware of authority to impose a duty to preserve evidence on a potential future defendant where (1) the potential defendant has not committed a wrong, and (2) the potential defendant is not planning to file suit."). Implant Direct argues imposing a duty to preserve evidence "before a wrong is committed" would chill activities in the public interest, "including designing around patents and designing components that can be used with components of combinations as to which the patent had been exhausted." (Id. at 9.)

The Court finds that Implant Direct's arguments misinterpret the duty to preserve evidence. A litigant's duty to preserve potentially relevant evidence arises "as soon as a potential claim is identified," In re Napster, Inc. Copyright Litig., 462 F. Supp. 2d 1060, 1067 (N.D. Cal. 2006), "once a party reasonably anticipates litigation." Zubulake v. USB Warburg LLC, 220 F.R.D. 212, 218 (S.D.N.Y. 2003). This duty can arise prior to the filing of a complaint. See Phillip M. Adams & Assocs., LLC v. Dell, Inc., 621 F. Supp. 2d 1173 (N.D. Utah 2009) (finding the duty to preserve evidence arose prior to the filing of the complaint because "computer and component manufacturers were sensitized to the issue [of litigation related to floppy disk controller errors]" at the time and defendant "should have been

preserving evidence related to floppy disk controller errors"); Realnetworks, Inc. v. DVD Copy Control Ass'n, Inc., 264 F.R.D. 517, 526-27 (N.D. Cal. 2009) (prior to filing of the complaint and shortly before the party's planned announcement of the product later alleged to infringe patents, a party was "on notice that litigation was probable and a potential claim was identifiable because various studios objected to [the accused product's] release and expressed concern that [the product] violated the [Parties'] License Agreement"); see also Apple Inc. v. Samsung Elecs. Co., Ltd., 888 F. Supp. 2d 976, 990 (N.D. Cal. 2012) ("As a general matter, there is no question that the duty to preserve relevant evidence may arise even before litigation is formally commenced.") (citing cases); Baliotis v. McNeil, 870 F. Supp. 1285, 1290 (M.D. Penn. 1994) (rejecting a plaintiff's argument that it had not decided to pursue a claim at the time it destroyed evidence because the party "owed a duty to preserve evidence . . . as soon as it identified a potentially responsible party").

Defendants' arguments instead seek to premise their duty to preserve evidence on their acknowledgment of "committing a wrong" as defined by full accrual of the elements of a cause of action. (See Dkt. No. 372 at 8-9.) If this were the law, Defendants' duty to preserve evidence may never arise. As Judge Gallo found, the August 6, 2008 and October 22, 2008 communications between Mr. Zuest and Dr. Niznick informed Defendants that Zest was communicating with patent attorneys and believed Defendants' planned product to be a knock-off or "copy" of Zest's products which infringed Zest's patents. (Dkt. No. 312 at 3-4) (citing Dkt. No. 121-2, Velez Decl. Exs. 5-7.) In particular, as set forth above, Mr. Zuest stated explicitly that Zest would be forced to break the Parties' contract and sue for patent infringement if Implant Direct continued with their plan to make a GoDirect Implant on August 6, 2008. (Dkt. No. 378-4, Velez Decl. Ex. 6.) In response, Dr. Niznick threatened arbitration. (Dkt. No. 336-2, Velez Decl. Ex. 5.) Although Zest's October 22, 2008 letter is addressed generically, the letter again reaffirms Zest's belief that Implant Direct's planned GoDirect implant is a copy of

Zest's products and an infringement of Zest's patents. (Dkt. No. 121-2, Velez Decl. Ex. 7.) These communications support a finding that Defendants were on notice of potential litigation as early as August 6, 2008 and no later than October 22, 2008.

The Court also finds that imposing a duty to preserve evidence in this case is not unreasonable or against public policy. "The obligation to retain discoverable materials is an affirmative one." Nat'l Ass'n of Radiation Survivors v. Turnage, 115 F.R.D. 543, 557 (N.D. Cal. 1987). Although the "scope of the duty to preserve evidence is not boundless," Baliotis, 870 F. Supp. at 1290, the Court finds it reasonable that the law imposes a duty on Dr. Niznick, the person who designed and developed the accused GoDirect implant in this case, and Ms. Aravena, the one person Dr. Niznick identified as assisting him in designing the product, (See Dkt. No. 121-2, Ex. 16, Niznick Decl. ¶¶ 3), to preserve evidence relevant to the design of the GoDirect implant when Dr. Niznick knew or had reason to know Zest believed Implant Direct's conduct infringed the Zest patents and Zest had threatened litigation if Implant Direct continued to develop the GoDirect implant.

Accordingly, the Court OVERRULES Implant Direct's objections to Judge Gallo's conclusion that Implant Direct's duty to preserve evidence arose by October 22, 2008, prior to the commencement of formal litigation between the Parties.

### 2. Dr. Niznick's Emails

Implant Direct argues Judge Gallo's spoliation finding as to Dr. Niznick's emails should be set aside because Dr. Niznick's purported emails "appear to have been professional forum blog posts posted in 2008 and known to Zest at the time" and because no duty to preserve evidence existed at that time. (Dkt. No. 372 at 16.)

The Court OVERRULES these objections. As set forth above, the Court rejects Defendants' objections to Judge Gallo's finding that Implant Direct's duty to preserve evidence arose on October 22, 2008. Furthermore, while one of the emails allegedly spoliated by Dr. Niznick is unclear as to which email address the email was sent from, (Dkt. No. 121-2, Velez Decl. Ex. 11), the second email plainly

indicates that the email was from Nizplant@aol.com on December 3, 2008. (Dkt. No. 121-2, Velez Decl. Ex. 12.) The Court therefore rejects Implant Direct's unsupported argument that Zest's proffered evidence "appears" to be blog posts rather than emails.

In addition, the Court has conducted an independent review of the Parties' submitted evidence, and adopts Judge Gallo's finding that Dr. Niznick despoiled relevant emails. Specifically, Dr. Niznick's deposition testimony shows that he limited his discovery collection efforts for this litigation to a file on his desktop to which he "saved all e-mail communications relating to Plaintiffs" and did not search or produce any emails from his six email accounts that were not contemporaneously saved in this desktop file. (Dkt. No. 312 at 6-7) (citing Dkt. No. 121-2, Velez Decl. Ex. 3 at 44-46.) Furthermore, Dr. Niznick made decisions as to whether his communications were relevant without ever receiving guidance from legal counsel as to what communication was relevant - not in 2008, when the threat of litigation arose; in 2010, when the present litigation was filed; or any time before the date of his deposition on May 11, 2012. (Dkt. No. 127-11, Hurey Decl. Ex. 10, Niznick Depo. at 26, 34-36, 44-45.) Accordingly, given the circumstantial evidence of Dr. Niznick's deficient electronic preservation methods and the direct evidence of at least two despoiled emails that were destroyed due to Dr. Niznick's failure to adequately preserve evidence, the Court OVERRULES Implant Direct's objections and ADOPTS Judge Gallo's finding that Dr. Niznick despoiled emails relevant to this lawsuit. (Dkt. No. 312 at 14.)

### 3. Ms. Aravena's Emails

Implant Direct objects to Judge Gallo's finding that emails of Ms. Aravena were spoliated on the ground that Ms. Aravena's relevant emails were "to and from other Implant Direct employees" and if any emails were missing, "Zest could have discovered that." (Dkt. No. 372 at 19.) According to Defendants, they produced "over 400 emails" constituting "over 300,000 pages" from Implant Direct and IDSI

employees who worked with Ms. Aravena to develop products. (Id. at 18-19.) Further, although Implant Direct had not produced many documents when the spoliation motion was initially filed, Implant Direct argues they have since located and produced all specific emails and attachments noted by Zest as "deleted by Ms. Aravena" during spoliation motion proceedings. (Id. at 18.)

The Court OVERRULES this objection. Implant Direct's production of the emails of other Implant Direct and IDSI employees does not change the fact that, as Judge Gallo correctly found, Ms. Aravena indisputably "destroyed email communications due to Defendants' failure to put in place a litigation hold." (Dkt. No. 312 at 13.) Implant Direct's subsequent production of other employees' emails and arguments that Zest was not prejudiced are related to the form of sanction this Court should or should not impose, not to the Court's finding that Ms. Aravena spoliated evidence. In particular, even if some of Ms. Aravena's destroyed emails and attachments have been located through production of other Implant Direct employees' email accounts during the pendency of the court's consideration of Plaintiffs' motion for spoliation sanctions, Ms. Aravena still testified that she failed to provide Defendants' counsel with any emails because she deleted them. (Id. at 5, 13) (citing Dkt. No. 121-2, Velez Decl. Ex. 2 at 211-212.) In light of Defendants' failure to implement a litigation hold[6] and Ms. Aravena's regular deletion of emails, the Court adopts Judge Gallo's finding that Ms. Aravena spoliated emails relevant to this litigation.

Implant Direct further argues Judge Gallo erred in finding Ms. Aravena's emails "especially probative" based on her position with Implant Direct. (Dkt. No. 372 at 20.) Defendants argue Ms. Aravena worked "part-time for Implant Direct from home as an independent contractor, using her personal AOL email account" in 2008, (id. at 10), and did not become a full-time Director of Design Engineering

---

[6]The Court more fully addresses, below, Implant Direct's objections to Judge Gallo's finding that Implant Direct failed to implement a litigation hold.

with Implant Direct until 2011. (Id. at 19-20 n. 26.) In addition, Implant Direct argues Zest's failure to seek the allegedly spoliated evidence from other available sources (such as re-opening Ms. Aravena's deposition, or deposing certain Implant Direct employees who worked with Ms. Aravena) weighs against a spoliation sanction. (Id.)

The Court OVERRULES Implant Direct's objections. Regardless of when Ms. Aravena transitioned to the "Director of Design Engineering" position, it is undisputed that she worked on the design of the GoDirect implant and that she failed to offer for production any email communications from any period of her employment or work on the allegedly infringing product(s) as of the date of her deposition. Furthermore, as set forth above, Dr. Niznick declared that Ms. Aravena was the only person to work with him on the design of the GoDirect implant, (Dkt. No. 121-2, Ex. 16, Niznick Decl. ¶¶ 3), and that in response to Zest's request for communications related to the conceiving of the GPS and GoDirect products, copies of the communications would come from "Ines" or "Brian Banton," who "were asked to provide whatever they had." (Dkt. No. 127-11, Hurey Decl. Ex. 10, Niznick Depo at 35:10-21.)

In addition, even if Zest could have sought particular pieces of probative evidence from other sources through more extensive discovery, Judge Gallo and Implant Direct have recognized that Plaintiffs' discovery requests have already been "serious and substantial," "leaving no stone unturned." (Id. at 19) (quoting Dkt. No. 161 at 4:21-23). As Dr. Niznick testified that any communications related to the conception of the GPS and GoDirect products would be directly between him and Ms. Aravena or him and Brian Banton, the Court is not convinced that the sources Implant Direct points to can provide the evidence Zest seeks. Regardless, the Court adopts Judge Gallo's finding that Ms. Aravena's communications were probative due to her current and past employment with Defendants and her role in the design, development, and testing of the accused products in this case. (Dkt. No. 312 at 13.)

### a. Litigation Hold

Judge Gallo's finding that Implant Direct spoliated evidence rests in part in his finding that Implant Direct failed to implement a "litigation hold" when their duty to preserve evidence arose or any time thereafter. (See Dkt. No. 312 at 4.) Implant Direct objects that this finding is erroneous because an "effective litigation hold was implemented by September 2012." (Dkt. No. 372 at 21.) According to Implant Direct, they implemented an "effective litigation hold" when they "placed all emails and attachments referring to 'GoDirect,' 'GPS' and other potentially relevant key words on a separate server and provided Zest's counsel direct access." (Id.)

The Court OVERRULES this objection and adopts Judge Gallo's finding that no litigation hold was ever instituted in this case. As Judge Gallo used the term, in the context of the Spoliation Order, "litigation hold" meant the institution of a document preservation policy; steps to preserve electronic documents; and/or instructions to employees to preserve documents. (See Dkt. No. 312 at 4.) By the time Implant Direct provided opposing counsel with access to all relevant, currently-available emails and attachments in September 2012, four years had already passed since the duty to preserve evidence arose and more than two years had passed since commencement of the present litigation. As Judge Gallo correctly found, and Defendants do not dispute, there is no evidence Implant Direct ever notified employees to preserve electronic documents in anticipation of (or due to the filing of) the present action. This finding is supported by the uncontroverted deposition testimony of Ms. Aravena, when she testified that she was never instructed to refrain from destroying or deleting documents that are relevant to the present litigation. (Dkt. No. 378-2, Velez Decl. Ex. 4, Aravena Depo. at 212:8-213:6.)

Although Defendants have introduced evidence that Implant Direct's Employee Handbook (updated May 2005) prohibited the deliberate deletion of data

files, (Dkt. No. 127-12, Hurey Decl. Ex. 11), and have made conflicting representations regarding whether it is physically possible to delete e-mails from the Implant Direct Servers (Dkt. No. 227, Hearing Transcr. 76:14-77:6), the Court finds it undisputed that Implant Direct employees were never notified to preserve communications and documents relevant to the present litigation. The obligation to retain discoverable materials "requires that the agency or corporate officers having notice of discovery obligations communicate those obligations to employees in possession of discoverable materials." <u>Turnage</u>, 115 F.R.D. at 558. Particularly because of the evidence in this case that at least two Implant Direct employees used multiple email addresses (including personal email addresses) for Implant Direct business; at least one employee testified to regularly deleting her emails; and another employee testified to keeping only the emails he thought were relevant; a document preservation notice was clearly necessary for Defendants to meet their obligation of preserving evidence in anticipation of litigation. Accordingly, the Court ADOPTS Judge Gallo's finding that Implant Direct did not implement a litigation hold in this case.

### 4. Recommendation for Adverse Inference Instruction

Having found that Dr. Niznick and Ms. Aravena despoiled evidence after a duty to preserve evidence arose, the Court now turns to the appropriate form of sanction. Courts generally consider three factors in determining what spoliation sanction to impose, if any: "(1) the degree of fault of the party who altered or destroyed the evidence; (2) the degree of prejudice suffered by the opposing party; and (3) whether there is a lesser sanction that will avoid substantial unfairness to the opposing party." <u>Apple Inc. v. Samsung Elecs. Co., Ltd.</u>, 888 F. Supp. 2d 976, 992 (N.D. Cal. 2012) (citing <u>Nursing Home Pension Fund v. Oracle Corp.</u>, 254 F.R.D. 559, 563 (N.D. Cal. 2008)).

Here, in regard to Implant Direct's degree of fault, Judge Gallo found that Implant Direct "destroyed the documents with a culpable state of mind. Defendants,

in conscious, or perhaps willful, disregard of their obligation to preserve documents, allowed the documents to be destroyed by failing to implement a litigation hold and a document preservation policy." (Dkt. No 312 at 20.) With respect to the degree of prejudice suffered by Zest, Judge Gallo found Plaintiffs prejudiced by the destruction of Ms. Aravena's and Dr. Niznick's emails because the "contents of these documents are directly relevant to the claims at issue in this litigation" and Zest is now "forced to go to trial while relying on incomplete evidence." (Id. at 20-21.) Judge Gallo's Order thus recommends the following adverse jury instruction for trial:

> Defendants failed to prevent the destruction of relevant evidence for Plaintiffs' use in this litigation. The evidence pertains to the design, development, and testing, of Defendants' products and Plaintiffs' claims that Defendants induced infringement of Plaintiffs' patents. This failure resulted from Defendants' failure to perform their discovery obligations.
>
> You may, if you find appropriate, presume from that destruction, that the evidence destroyed was relevant to Plaintiffs' case and that the destroyed evidence was favorable to Plaintiffs.
>
> Whether this finding is important to you in reaching a verdict is for you to decide.

(Dkt. No. 312 at 22.)

Implant Direct objects to this particular recommended instruction on the ground that the discovery provided by Implant Direct in this case has been "extremely voluminous" and "[t]here is no reasonable argument Zest's ability to go to trial has been significantly hampered." (Dkt. No. 372 at 23) (citing Apple Inc. v. Samsung Electronics Co., Ltd., 888 F. Supp. 2d 976, 994 (N.D. Cal. 2012)). Defendants argue similarities exist between this case and Apple Inc., where the district court rejected an adverse instruction much like the one recommended by Judge Gallo in this case in favor of a less harsh adverse instruction stating only: "[defendant] has failed to preserve evidence for [plaintiff's] use in this litigation after its duty to preserve arose. Whether this fact is important to you in reaching a verdict in this case is for you to decide." 888 F. Supp. 2d at 994-95. In Apple Inc.,

the district court found no clear error in a magistrate judge's findings that defendant

Samsung spoliated evidence and that plaintiff Apple suffered prejudice. Id. at 994.

However, the court found the prejudice suffered by Apple did not warrant the harsh

instruction recommended by the magistrate judge because Samsung had produced

"over 12 million pages of documents" in total, part of which included 5,159

documents and emails from the "very custodians whose documents Apple identified

as having been likely destroyed." Id. at 994.

As noted by the court in Pension Committee of Univ. of Montreal Pension

Plan v. Banc of Am. Securities, 685 F. Supp. 2d 456, 470 (S.D.N.Y. 2010), an

adverse inference instruction for spoliation of evidence can take many forms

ranging in degrees of harshness. As set forth by the Pension Committee court,

> In its most harsh form, when a spoliating party has acted willfully or in
> bad faith, a jury can be instructed that certain facts are deemed
> admitted and must be accepted as true. At the next level, when a
> spoliating party has acted willfully or recklessly, a court may impose a
> mandatory presumption. . .
>
> The least harsh instruction permits (but does not require) a jury to
> presume that the lost evidence is both relevant and favorable to the
> innocent party. If it makes this presumption, the spoliating party's
> rebuttal evidence must then be considered by the jury, which must then
> decide whether to draw an adverse inference against the spoliating
> party.

685 F. Supp. 2d at 470-71, abrogated on other grounds by Chin v. Port Auth. of

New York & New Jersey, 685 F.3d 135, 162 (2d Cir. 2012) (internal citations and

footnotes omitted).

Here, in regard to Implant Direct's degree of fault, the Court agrees with

Judge Gallo's conclusion that Defendants allowed the destruction of documents

relevant to this case by failing to implement a litigation hold or effective document

preservation policy. Importantly, the Court notes that Implant Direct has introduced

deposition testimony from another matter evidencing that Implant Direct

implemented a litigation hold in that matter and that Implant Direct's information

technology officer took steps to determine whether their electronic data backup

strategy was sufficient in light of that litigation hold. (Dkt. No. 127-13, Hurey Decl.

Ex. 12, Gottenbos Depo. at 90:2-15) (discussing a litigation hold e-mail at Implant Direct in response to <u>Small v. Nobel Biocare USA, LLC et al.</u>, Case No. 06-cv-0683-RH/JLC (S.D.N.Y. filed Jan. 30, 2006)). The Court is therefore not convinced by Implant Direct's current mis-characterization of their document production in September 2012 as an "effective litigation hold" or excuses for not implementing a litigation hold. The Court therefore finds that Implant Direct knew what a litigation hold entailed; knew or should have known that litigation was reasonably foreseeable by October 2008; failed to implement a litigation hold in 2008 or ever; and that these findings support a conclusion that Implant Direct's spoliation of evidence was conscious, intentional, and grossly negligent.

However, in regard to the degree of prejudice suffered by Zest, the Court agrees with Implant Direct that Zest has not been able to make a strong showing of prejudice due to the spoliation of Dr. Niznick's and Ms. Aravena's emails. As Implant Direct argued at the May 23, 2014 hearing on this matter, Implant Direct has now produced all of the emails of Ms. Aravena specifically noted by Zest as despoiled since the filing of Zest's spoliation motion, by locating the emails in the email accounts of either the Implant Direct employee who received or sent the email to Ms. Aravena. In addition, Implant Direct's point is well-taken that, to the extent that email communications were despoiled, many of the relevant communications were similarly to or from other Implant Direct employees.

The Court notes that this is precisely the problem raised by the spoliation of evidence and the intentional or negligent failure to implement litigation holds in cases where much of the evidence and communications are electronically produced and stored. The Parties and the Court are left to speculate on the contents of the despoiled evidence and the degree of prejudice suffered by the party seeking the evidence. Although Zest has not been able to specifically demonstrate prejudice because the communications at issue have not been preserved, the Court is particularly disturbed that the only two Implant Direct employees who worked

[10cv541-GPC(WVG)]

together to design the allegedly infringing products are the two employees who used personal and multiple e-mail accounts to conduct business; did not produce communications between each other; and despoiled evidence. Furthermore, upon the Court's review of the filed excerpts of their respective depositions, the Court is not satisfied that either Dr. Niznick's or Ms. Aravena's deposition testimony can take the place of produced e-mail communications between the two Implant Direct employees as they were designing the allegedly infringing products. Accordingly, the Court finds that Zest suffered prejudice from Implant Direct's spoliation of evidence, at least as to evidence related to Dr. Niznick's communications with third parties over combining the GoDirect product with Zest products and to communications between Dr. Niznick and Ms. Aravena over the development of the GoDirect implant. The Court therefore OVERRULES Implant Direct's objections, ADOPTS the recommendation of an adverse inference sanction against Implant Direct, and GRANTS Zest's motion for an adverse instruction related to the spoliation of evidence at trial.

Although the Parties have extensively briefed the present motion, the Parties have not briefed their respective positions on the particular form an appropriate jury instruction should take. Accordingly, the Court will consider the Parities' respective proposed jury instructions consistent with this Order at the time jury instructions are determined at trial.

### 5. Monetary Sanctions

Implant Direct objects to Judge Gallo's award of monetary sanctions, arguing monetary sanctions levied pursuant to the Court's inherent authority require a finding of bad faith. (Dkt. No. 372 at 24) (citing Joseph v. Linehaul Log., Inc., 549 F. App'x 607, 608 (9th Cir. 2013) (unpublished opinion)).

Judge Gallo's order did not specifically state the basis of authority for his award of monetary sanctions in the section of the order discussing monetary sanctions. (See Dkt. No. 312 at 22-23.) However, when stating the sanctions

available to the court upon a finding of spoliation of evidence, the Order cited to Federal Rules of Civil Procedure ("FRCP") 37. (Id. at 16.) The court may levy monetary sanctions under two sources of authority: the Court's "inherent authority," see Leon v. IDX Systems Corp., 464 F.3d 951, 961 (9th Cir. 2006), and under Federal Rules of Civil Procedure 37 (providing for recovery of fees and costs in motions to compel discovery or for failure to obey an order to provide or permit discovery).

The Court declines to award monetary sanctions under Rule 37. Under Rule 37(a), a court may award the costs of bringing a motion to compel disclosure or discovery. Fed. R. Civ. P. 37(a)(5). Under Rule 37(b), a court may award monetary sanctions for a party's failure to comply with a court order. Fed. R. Civ. P. 37(b). Neither circumstance appears to apply to the present motion for spoliation and discovery abuse sanctions.

In addition, the Court finds monetary sanctions for spoliation of evidence under the Court's inherent authority inappropriate. See Leon, 464 F.3d at 961. Although, as stated above, the Court finds Implant Direct's spoliation of evidence conscious, intentional, and grossly negligent, the Court does not believe Implant Direct's destruction of evidence rose to the level of "bad faith" in this case. See, e.g., Leon v. IDX Sys. Corp., No. C03-1158P, 2014 WL 5571412 (finding bad faith where a spoliator resorted to "extraordinary measures" to destroy evidence relevant to the litigation).

However, under the Court's inherent authority, the Court finds monetary sanctions appropriate due to Zest's submitted evidence and the Court's record of Implant Direct's delay, disruption of the discovery process and this litigation, gamesmanship, and repeatedly vexatious discovery abuses between the filing of this litigation and the close of fact discovery in this case.[7] See Primus Auto. Fin. Servs.,

---

[7]The Court notes that Implant Direct has claimed that Zest's motion for spoliation and discovery abuse sanctions is "about spoliation and only spoliation." (Dkt. No. 145, Hearing Transcr. at 21:8-10.) Implant Direct's counsel has stated "we

Inc. v. Batarse, 115 F.3d 644, 648 (9th Cir. 1997) ("A party . . . demonstrates bad faith by 'delaying or disrupting the litigation or hampering enforcement of a court order.'") (citing Hutto v. Finney, 437 U.S. 678 (1978)); see also Leon v. IDX Systems Corp., 464 F.3d 951, 961 (9th Cir. 2006). To be clear, the Court finds that Implant Direct's conduct during the course of fact discovery "constituted or was tantamount to bad faith." Roadway Exp., Inc. v. Piper, 447 U.S. 752, 767 (1980).

In particular, the following factual findings support the Court's finding of bad faith. First, the Court finds that, prior to Zest's filing of the present motion for spoliation and discovery abuse sanctions, the record reflects Zest brought at least two motions to compel production. (See Dkt. No. 46; Dkt. No. 121-2, Velez Decl. Ex. 19); (see also Dkt. No. 145, Oct. 19, 2012 Hearing Transcr. at 7:21-25) (Zest counsel stating "since March 2010 when we filed this case, and since April 2011 when we filed our first document requests, we've been nothing but stymied and blocked in this whole process of discovery. We've brought four motions to compel."). In response to the second motion, Implant Direct mis-represented to Magistrate Judge Gallo that they had fully produced communications involving Ms. Aravena and that counsel had independently confirmed production of Ms. Aravena's communications. (Dkt. No. 121-2, Velez Decl. Ex. 20, March 12, 2012 Implant Direct Letter to Judge Gallo at 3) ("Implant Direct has already produced all relevant documents and emails concerning Ms. Aravena."); (Dkt. No. 94, April 19,

---

would object if the court would be issuing inherent sanctions base[sic] on things . . . that weren't the basis for their motion." (Id. at 24:3-7.) The Court rejects this argument. Zest spent several pages of its memorandum of points and authorities in support of its motion for spoliation *and discovery abuse* sanctions detailing Implant Direct's discovery misconduct. (Dkt. No. 121-1 at 9-12.) Zest's notice of motion and motion stated that it was based on the memorandum of points and authorities. (See Dkt. No. 121 at 2.) Zest also submitted several exhibits in support of the motion specifically documenting Implant Direct's discovery abuses. (Dkt. No. 121-2, Velez Decl. Exs. 13, 17, 19, 20.) Although Implant Direct did not respond to these charges in its response (Dkt. No. 127), Zest again reiterated their request for discovery abuse sanctions in their reply, (Dkt. No. 131 at 8-10.) Zest's counsel then discussed the discovery abuses at the October 19, 2012 hearing on the matter. (Dkt. No. 145 at 5-9.) The Court finds that Implant Direct has had ample notice of Zest's allegations of sanctionable conduct and notice of the factual basis of Zest's allegations as well as opportunities to respond, even if Implant Direct has chosen to ignore them.

2012 Discovery Order at 5-6) ("Defendants' counsel shall independently confirm that responsive documents involving Aravena have been fully produced."); (Dkt. No. 97-2, May 3, 2012 Hurey Decl. ¶ 4) ("I have personally searched Implant Direct's records for documents relating to Ines Aravena that relate to the design or manufacture of the Accused Products. I was able to confirm that Ms. Aravena had a few additional documents that relate to the design and testing of the Accused Products. Implant Direct is producing those Documents to Plaintiff's counsel today.").

Despite Judge Gallo's order for Implant Direct's counsel to independently confirm full production of Aravena's emails, and Mr. Hurey's declaration that he had confirmed production, Ms. Aravena testified at her June 19, 2012 deposition that she: (1) did not search for documents on the Implant Direct servers because she did not have access to the servers, (Dkt. No. 336-1, Aravena Depo at 392: 15-20); and (2) did not remember pulling any e-mails, collecting any e-mails, or producing any e-mails for this litigation, (id. at 398:10-16). It was not until the day before Implant Direct's response to Zest's spoliation motion was due, on October 4, 2012, that Implant Direct notified Zest that Implant Direct was supplementing its document production with "a total of approximately 80,000 documents" responsive to Zest's requests for production. (Dkt. No. 127-16, Dugger Decl. Ex. 1.) At the time, the discovery deadline for both parties was set for November 21, 2012. (Dkt. No. 126 ¶ 3.)

As Implant Direct has recognized, Zest's spoliation motion appears to have been filed "in part because Implant Direct had not produced many documents." (Dkt. No. 372 at 18.) The Court declines to allow Implant Direct to escape monetary sanctions by insisting that they had produced Ms. Aravena's emails in March 2012; declaring to the court that counsel had overseen Ms. Aravena's production of emails in April 2012; not producing emails Ms. Aravena testified to deleting for two months after her deposition in June 2012; forcing Zest to bring a spoliation motion

in August 2012; belatedly producing additional documents the day before their response to the spoliation motion was due in October 2012, which was one and a half months before the deadline for the close of discovery in November 2012; and then claiming to Judge Gallo and this Court that sanctions are not warranted because Ms. Aravena's emails have now been produced. The Court finds this behavior a gross circumvention of the discovery process which prevented Plaintiff from properly preparing for noticed depositions and forced Plaintiff to bring numerous motions to compel and the present motion for spoliation and discovery abuse sanctions. (See Dkt. No. 145, Hearing Transcr. at 18:14-25.) The Court finds that Implant Direct's behavior warrants fee-shifting sanctions. Accordingly, pursuant to this Court's inherent authority and upon the above findings that Implant Direct acted in bad faith to impede and delay the discovery process, the Court ADOPTS Judge Gallo's recommendation for monetary sanctions[8] and GRANTS Zest's motion for monetary sanctions.

As noted above, Zest has submitted a bill of costs, to which Implant Direct has objected. Accordingly, the Court hereby TAKES UNDER SUBMISSION the issue of a "reasonable" monetary sanction consistent with the Court's findings. The Court will issue a written order setting forth the amount of monetary sanction awarded to Zest.

## II. Expert Report Order

The second of Judge Gallo's Orders objected to by Implant Direct is an order granting Zest's motion to strike Implant Direct's joint expert report of Scott D. Hampton and Bruce G. Silverman pursuant to Federal Rule of Civil Procedure 37(c). (Dkt. No. 320.)

### A. Procedural History

On February 9, 2011, Judge Gallo entered a Case Management Order setting

---

[8]The Court notes that it does so on different grounds than those articulated by Judge Gallo in his November 25, 2013 Order and Recommendation.

[10cv541-GPC(WVG)]

forth the following relevant deadlines in this case:

> 13. On or before <u>December 15, 2011</u>, all parties shall exchange with all other parties a list of all expert witnesses expected to be called at trial. . . On or before <u>December 29, 2011</u>, any party may supplement its designation in response to any other party's designation so long as that party has not previously retained an expert to testify on that subject.

> 14. Each expert witness designated by a party shall prepare a written report to be provided to all other parties **no later than** March 9, 2012, containing the information required by Fed. R. Civ. P. 26(a)(2)(A) and (B).
> . . .
> 15. Any party, through any expert designated, shall in accordance with Fed. R. Civ. P.26(a)(2)(C) and Fed. R. Civ. P. 26(e), supplement any of its expert reports regarding evidence intended solely to contradict or rebut evidence on the same subject matter identified in an expert report submitted by another party. Any such supplemental reports are due on or before <u>March 23, 2012</u>.

(Dkt. No. 27 at 7-8) (emphases in original). Pursuant to this scheduling order, on December 15, 2011, Zest designated Susan McDonald, Ph.D. to testify as an expert witness regarding Zest's claims of trademark infringement. (Dkt. No. 320 at 2.) On December 29, 2011, Implant Direct designated Hal Poret to testify as an expert witness regarding Zest's claims of trademark infringement.

On December 19, 2012, following a joint motion by the Parties, Judge Gallo issued a Sixth Amended Case Management Conference Order Regulating Discovery and Other Pretrial Proceedings ("Sixth Am. CMC Order") extending the deadline for parties to prepare expert witness reports. (Dkt. No. 176.) Specifically, the Order provided that the deadline for expert witness reports (paragraph 14 quoted above) was extended to <u>January 22, 2013</u> and the deadline for supplemental expert reports regarding evidence "intended solely to contradict or rebut evidence on the same subject matter identified in an expert report submitted by another party" to February 11, 2013. (<u>Id.</u>)

Pursuant to the Sixth Am. CMC Order, Zest served Implant Direct with the opening expert report of Susan McDonald, Ph.D. on January 22, 2013. (Dkt. No. 412 at 3.) On February 7 and 13, 2013, without seeking approval from the Court, Defendants requested that Plaintiffs agree to extend the dates by which their rebuttal

reports regarding Plaintiffs' trademark infringement claims were due. (Dkt. No. 320 at 3.) Plaintiffs agreed. On February 21, 2013, again without approval from the court, Defendants requested that Plaintiffs agree to extend the deadline to serve rebuttal reports and informed Plaintiffs for the first time that Defendants were designating two new rebuttal expert witnesses, Scott D. Hampton and Bruce G. Silverman, in place of previously designated Hal Poret. (Dkt. No. 320 at 3-4.) Plaintiffs refused to grant Defendants' third request for extension of the deadline to serve rebuttal reports. Without seeking the court's approval to deviate from the Sixth Am. CMC Order, Implant Direct served the rebuttal joint expert report of Scott D. Hampton and Bruce G. Silverman on February 25, 2013. (Id. at 4.)

On April 8, 2013, Zest filed a motion to strike the joint expert report pursuant to Federal Rule of Civil Procedure 37(c). (Dkt. No. 201.) Under Rule 37(c), "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). On December 18, 2013, Judge Gallo issued an order granting Zest's motion to strike. (Dkt. No. 320.) Judge Gallo found: (1) Implant Direct was not substantially justified in designating new expert witnesses and providing expert reports by those expert witnesses; and (2) Implant Direct's failure to timely identify their new experts was not harmless. Accordingly, Judge Gallo held that Defendants are "disallowed from supplying evidence in the form of Hampton's and Silverman's report and/or testimony at any hearing or at trial" due to Defendants' failure to timely disclose Hampton and Silverman as expert witnesses in rebuttal to Plaintiffs' trademark infringement expert and failure to seek permission from the Court to designate new trademark infringement experts. (Dkt. No. 320 at 15.)

**B. Discussion**

Implant Direct moves this Court to set aside Judge Gallo's December 18,

2013 Order striking the joint expert report of Scott D. Hampton and Bruce G. Silverman, advancing seven arguments: (1) Implant Direct complied with the scheduling order; (2) Judge Gallo was not authorized to require Implant Direct to identify rebuttal experts before Zest disclosed their expert opinions; (3) the scheduling order did not clearly require Implant Direct to identify rebuttal experts before receiving Plaintiffs' expert report; (4) Implant Direct was substantially justified; (5) any failure to provide information was harmless; and (6) Judge Gallo erred in not enforcing the 30-day deadline for Zest to file its motion to strike.

### 1. Failure to Comply with Case Management Orders

Implant Direct's first three arguments in favor of setting aside Judge Gallo's December 18, 2013 Order constitute a scattershot approach raising the alternative theories that: (1) Defendants in fact complied with the scheduling orders issued by Judge Gallo; (2) the Sixth Am. CMC Order was inconsistent with the Federal Rules of Civil Procedure; and (3) the Sixth Am. CMC Order was unclear. All three arguments fail to show any clear error in Judge Gallo's December 18, 2013 Order.

First, using a stilted reading of the initial February 9, 2011 Case Management Order (Dkt. No. 27), Defendants claim they did not fail to make rebuttal expert disclosures because on December 29, 2011 they disclosed the expert they, at the time, intended to call at trial to rebut Plaintiffs' expert on trademark infringement (Hal Poret). (Dkt. No. 345 at 12.) Defendants claim there is no evidence Implant Direct intended to call Mr. Hampton or Mr. Silverman at trial when designating Mr. Poret, so "Implant Direct did not fail to disclose any information with respect to the Scheduling Order." (Id.)

Implant Direct's argument misconstrues the nature of the exclusion sanction ordered by Judge Gallo. Judge Gallo's December 18, 2013 Order excludes Mr. Hampton's and Mr. Silverman's joint expert report due to Defendants' failure to timely disclose Mr. Hampton and Mr. Silverman as rebuttal experts or seek permission from the Court to untimely designate new trademark infringement

experts. (Dkt. No. 320 at 15.) Neither the court nor Zest either objects to Defendants' initial disclosure of Mr. Poret as a rebuttal trademark expert or claims that Defendants wholly failed to make any disclosures. As such, Defendants' argument that they in fact complied with the disclosure requirement by designating *Mr. Poret* as a rebuttal expert does not weigh against the application of Rule 37(c)(1) exclusion sanctions to exclude *Mr. Hampton's and Mr. Silverman's* joint report for failure to timely designate *Mr. Hampton and Mr. Silverman* as rebuttal experts. Fed. R. Civ. P. 37(c)(1) ("If a party fails to . . . identify a witness . . . the party is not allowed to use that . . . witness to supply evidence on a motion, at a hearing, or at a trial.").

Second, Implant Direct claims the Sixth Am. CMC Order was inconsistent with the Federal Rules of Civil Procedure because Rule 26(a)(2)(D)(ii) contemplates that parties have a "right to contradict or rebut an opposing party's expert's opinions and to disclose their rebuttal experts *after* receiving the opposing party's report." (Dkt. No. 345 at 13) (emphasis in original). Implant Direct argues the operative scheduling orders improperly set the deadline for Implant Direct's disclosure of rebuttal experts prior to the deadline for Plaintiffs to serve expert reports, thereby depriving Implant Direct the right to present rebuttal expert testimony. (Id. at 13-17.) According to Implant Direct, there was "no way for Implant Direct to know the opinions Dr. McDonald would offer, the bases and reasons for them, or her qualifications to offer those opinions, until Plaintiffs served her report." (Id. at 15.)

However, as set forth in Judge Gallo's Order Granting Plaintiffs' Motion to Strike, Federal Rule of Civil Procedure 26 explicitly provides that a party must make its expert witness disclosures "at the times and in the sequence that the Court orders." Fed. R. Civ. P. 26(a)(2)(D); (see Dkt. No. 320 at 5). Pursuant to the Southern District of California Civil Local Rules, courts in this district therefore regularly issue case management orders which set a discovery schedule that differs

from the deadlines provided for in the Federal Rules of Civil Procedure. See Civ. L. R. 16.1(d)(2). Accordingly, this Court finds that Judge Gallo's issuance of case management orders that supercede the deadlines provided for in the Federal Rules was not contrary to law. Fed. R. Civ. P. 72(a).

Furthermore, the Court finds Implant Direct has not demonstrated that Judge Gallo's specific sequence of disclosure deadlines was contrary to law. Id. Although Implant Direct is correct that rebuttal experts are limited to "attacking the theories offered by the adversary's experts," (Dkt. No. 345 at 14), the scheduling order did not require production of rebuttal expert reports prior to production of affirmative expert reports. The scheduling order merely required identification of rebuttal experts prior to the production of affirmative expert reports. Implant Direct demonstrated that they understood that by timely designating Mr. Poret as their initial rebuttal expert witness on trademark infringement. Important here is the procedural posture by which the Parties raised this issue with the Court. Had Implant Direct diligently sought to correct their improvident designation of Hal Poret as a rebuttal expert witness by moving amend the scheduling order to designate a new expert rebuttal witness, and demonstrated the requisite good cause and lack of prejudice to do so under Rule 16, they may have obtained a different result before Judge Gallo and this Court. Instead, Implant Direct sought extensions of time from Plaintiffs without consulting the Court and served a report by undesignated witnesses, past the Court-ordered rebuttal report deadline, without Court approval to do so. As such, the Court OVERRULES Defendants' objection that Judge Gallo's Order Granting Plaintiffs' Motion to Strike was contrary to law because the Sixth Am. CMC Order was inconsistent with the Federal Rules.

Third, Implant Direct argues Judge Gallo's February 9, 2011 Case Management Order did not clearly require Implant Direct to identify rebuttal experts before receiving Plaintiffs' expert reports. (Dkt. No. 345 at 17.) Implant Direct claims the order "did not set a deadline for identifying rebuttal experts." (Id.)

- 35 -

This argument is belied by the plain language of Judge Gallo's February 9, 2011 Case Management Order and Implant Direct's own designation of other rebuttal experts in compliance with that Order. As set forth above, under the plain language of the February 9, 2011 Order, the parties were required to exchange "a list of all expert witnesses expected to be called at trial." (Dkt. No. 27 ¶ 13.) Paragraph 13 of the Order further provides for supplementation of the Parties' expert witness lists "in response to any other party's designation" by December 29, 2011. (Id.) The plain language of the court's Order thus required disclosure of all expert witnesses, whether designated by the Parties as affirmative or rebuttal experts. Furthermore, on December 29, 2011, Implant Direct designated no less than four rebuttal expert witnesses in response to Zest's expert witness designations pursuant to paragraph 13 of the February 9, 2011 Order. (Dkt. No. 201-2, Velez Decl. Ex. 2, Letter from Implant Direct to Zest) (designating, among others, Dr. Paul Child to "testify concerning Plaintiff's allegations of patent infringement, expert witness reports submitted by Jack E. Lemons, John B. Brunski and Robert C. Vogel, the patents in suit and the accused products."). Implant Direct's claim, now over two years later, that the Case Management Order did not require identification of rebuttal experts therefore lacks credibility and fails to demonstrate that Judge Gallo's Order was clearly erroneous or contrary to law. Fed. R. Civ. P. 72(a).

## 2. Substantially Justified or Harmless

Under Federal Rule of Civil Procedure 37(c), a party may avoid an exclusion sanction if it can show that untimely disclosure of experts was either "substantially justified" or "harmless." Fed. R. Civ. P. 37(c)(1). Judge Gallo found that Implant Direct's untimely designation of Mr. Hampton and Mr. Silverman warranted neither exception. (Dkt. No. 320.)

### a. Substantially Justified

Implant Direct raises several objections to Judge Gallo's finding that Implant Direct's disclosure of Mr. Hampton and Mr. Silverman was not substantially

justified. (Dkt. No. 345 at 19-22.) As argued before Judge Gallo, Implant Direct claims late designation of new trademark infringement rebuttal experts is substantially justified in this case because Implant Direct had no reason to know by the December 29, 2011 deadline to designate rebuttal experts that Plaintiffs' trademark infringement expert, Dr. McDonald, would refrain from using a trademark survey as the evidentiary basis for her expert report. (Id. at 19-20.) Implant Direct claims they did not know until reading Dr. McDonald's report that Implant Direct's pre-designated trademark infringement expert, a survey expert, was not the appropriate expert to rebut Dr. McDonald's report. (Id. at 19.) Implant Direct argues they acted promptly upon receipt of Dr. McDonald's report to retain two proper rebuttal experts. (Id. at 20.)

However, Judge Gallo found Implant Direct's initial designation of Mr. Poret "improvident" because "trademark infringement may be proven in many ways, with or without trademark survey evidence." (Dkt. No. 320 at 8.) Furthermore, Judge Gallo found Implant Direct's late designation of new trademark infringement experts not substantially justified because "Defendants knew that Plaintiffs were not relying on trademark survey evidence to prove their trademark infringement claims" as early as May 2012, yet "did nothing after they learned that Plaintiffs would not rely on trademark survey evidence." (Id.) As Judge Gallo noted, Defendants failed to seek leave of court to designate a new trademark infringement expert in May 2012 and "waited until February 21, 2013 to inform Plaintiffs (but not the Court) that Poret was not a suitable expert and that they were designating two new experts." (Id. at 9.) Judge Gallo therefore found Defendants failed to show substantial justification under Fed. R. Civ. P. 37(c)(1) due to "Defendants' lack of diligence in failing to timely inform Plaintiffs and the Court that their designated trademark infringement expert was not suitable to rebut Plaintiffs' expert's report, their lack of diligence in seeking a remedy therefor, and their misplaced reliance on Fed. R. Civ. P. 26(a)(2)(D)(i)." (Dkt. No. 320 at 10.)

The Court OVERRULES these objections to Judge Gallo's findings. Implant Direct argues their initial designation of Mr. Poret as their trademark infringement expert was not "improvident" because Implant Direct had "every reason to expect" that Dr. McDonald would utilize survey evidence because her biography on a website states that she is "frequently called on to conduct surveys and testify as an expert" and because "[t]his is a case that on its surface would lend itself to survey evidence." (Dkt. No. 345 at 19-20.) While this argument shows Implant Direct's disagreement with Judge Gallo's characterization of their designation of Mr. Poret as improvident, Implant Direct falls far short of showing clear error in Judge Gallo's findings. Notably, Implant Direct does not rebut Judge Gallo's statement that trademark infringement can be proven in many ways.

Implant Direct also objects to Judge Gallo's finding that Defendants did not seek leave to designate new experts in May 2012, claiming Zest did not state Dr. McDonald would not be conducting a survey at that time and that if Implant Direct had asked Zest the basis of Dr. McDonald's opinions at that time, "it is highly likely the information would not have been forthcoming." (Dkt. No. 345 at 20-21.) The Court does not find this argument compelling. As Judge Gallo found, Zest sent a letter to Implant Direct on May 9, 2012 stating, among other things,

> Zest explained to Implant Direct that it has not conduced[sic] any surveys and that none are in process. See, e.g., April 19 2012 S. Schiess Dep. Tr. at 211:16-212:11. Implant Direct insisted that Zest produce a witness to testify to that effect. While Zest believes that this is unnecessary, it will produce a witness to confirm that it has not conducted any surveys.

(Dkt. No. 201-2, Velez Decl. Ex. 10 at 1.) While Zest's letter may have been sent in the context of discussions over Implant Direct's Rule 30(b) deposition notice, (Dkt. No. 345 at 21), the Court finds no clear error in Judge Gallo's finding that Defendants learned in May 2012 that Plaintiffs would not rely on trademark survey evidence.

As for Implant Direct's actions in February 2013, Implant Direct claims their actions were substantially justified because they were in full compliance with Rule

26(a)(2)(D)(ii). (Dkt. No. 345 at 21.) As discussed above, this argument is not well taken, because the court's scheduling orders replaced the deadlines set forth in the Federal Rules as authorized by Fed. R. Civ. P. 26(a)(2)(D) and Civil Local Rule 16.1(d)(2). Furthermore, Implant Direct is incorrect when they claim "[e]ven assuming Implant Direct was mistaken as to the effect of the Scheduling Order . . . it is a mistake that does not show lack of substantial justification." (Dkt. No. 345 at 22.) This argument misconstrues the burden of proof on this Court's review of Judge Gallo's findings. Here, it is Implant Direct's burden to show that Judge Gallo's finding that Implant Direct was not "substantially justified" is clearly erroneous or contrary to law. Fed. R. Civ. P. 72(a). Implant Direct has failed to meet this burden.

### b. Harmlessness

Implant Direct further objects to Judge Gallo's finding that Implant Direct's untimely disclosure of rebuttal experts Hampton and Silverman was not harmless. Implant Direct argues Judge Gallo erred in finding prejudice to Zest because Judge Gallo did not identify any actual harm suffered by Zest and "hypothetical prejudice" does not constitute harm. (Dkt. No. 345 at 22-23.)

While Implant Direct is correct that Judge Gallo did not identify the particular harm suffered by Zest, Judge Gallo's finding is supported by case law stating that "[d]isruption to the schedule of the court and other parties is not harmless," (Dkt. No. 320 at 12) (citing Wong v. Regents of the Univ. of Cal., 410 F.3d 1052, 1060 (9th Cir. 2005)), and Judge Gallo's statement that Defendants' "non-compliance with deadlines" and "recalcitrance" support a finding that "late provision of the new experts' report was not harmless." (Id.) Although Implant Direct claims they "did not disrupt the schedule in any way," (Dkt. No. 345 at 22), this claim is rebutted by the facts that: (1) Implant Direct designated two new experts in place of one; (2) the new experts have different expertise from the expert previously designated; (3) the new experts were designated two years after the deadline to do so; and (4) Implant

Direct did not seek leave from the court to do so, resulting in the current lengthy dispute over whether the expert rebuttal testimony is admissible. The burden is on the party facing sanctions, Implant Direct, to prove harmlessness. <u>Yeti by Molly, Ltd. v. Deckers Outdoor Corp.</u>, 259 F.3d 1101, 1107 (9th Cir. 2001). Implant Direct has not done so, and thus has also failed to show clear error in Judge Gallo's order. Fed. R. Civ. P. 72(a).

### 3. Untimely Motion

Finally, Implant Direct objects to Judge Gallo's Order granting Plaintiffs' motion to strike the expert reports on the ground that Plaintiffs failed to timely file the motion. (Dkt. No. 345 at 24.) In footnote 1 of Judge Gallo's Order, the court noted that Plaintiffs' motion was filed 11 days after the deadline by which Plaintiffs should have filed their motion, but chose "to relieve Plaintiffs of the requirements for filing papers for discovery disputes for the 11-day late filing of their Motion." (Dkt. No. 320 at 15 n. 1.) Judge Gallo did so "due to the seriousness of Defendants' conduct as discussed in this Order, and Defendants' repeated recalcitrant conduct exhibited throughout the proceedings in this case." (<u>Id.</u>) Implant Direct argues this extension was in error, claiming the court only has discretion to extend a deadline pursuant to Fed. R. Civ. P. 6(b)(1) if "it takes action or if a request is made before the original time or its extension requires." (Dkt. No. 345 at 24) (citing Fed. R. Civ. P. 6(b)(1)) (internal quotation marks omitted).

However, it is well-recognized that "a district court possesses the inherent power to control its docket and promote efficient use of judicial resources." <u>Dependable Highway Exp., Inc. v. Navigators Ins. Co.</u>, 498 F.3d 1059, 1066 (9th Cir.2007) (citing <u>Landis v. North Amer. Co.</u>, 299 U.S. 248, 254 (1936)); <u>see also</u> <u>Murray v. Laborers Union Local No. 324</u>, 55 F.3d 1445, 1452 (9th Cir. 1995) (finding that "[d]istrict court judges must have ample discretion to control their own dockets"). Indeed, it is common for district courts to *sua sponte* extend deadlines. <u>See generally</u> <u>Ayala v. Anderson</u>, No. CIV S-04-0903-RRB-CMK-P, 2008 WL

110115, at * 1 (E.D. Cal. Jan. 8, 2008); Phillips v. Beck, No. 06-00628 SOM/KSC, 2007 WL 4392019, at *7 (D. Haw., Dec. 17, 2007); Garrison v. Washington State Dept. of Corrections, No. C05-5837FDB/KLS, 2007 WL 4166141, at *1 (W.D. Wash. Nov. 20, 2007). Accordingly, Implant Direct has failed to show the extension of time was either clearly erroneous or contrary to law. Fed. R. Civ. P. 72(a).

## III. Case Management Order

The third order issued by Judge Gallo and objected to by Implant Direct is the Seventh Amended Case Management Conference Order ("Seventh Am. CMC Order") regulating discovery and other pretrial proceedings in this case. (Dkt. No. 361.) Specifically, Implant Direct objects to the portion of the Seventh Am. CMC Order extending the deadline to submit affirmative expert reports to March 14, 2014 and allowing Plaintiffs leave to supplement their expert reports. (Dkt. No. 370 at 2.)

### A. Procedural History

On July 25, 2012, Zest filed a motion to amend their infringement contentions to add a new iteration of the Implant Direct products alleged to infringe Zest's patents ("the revised GPS male") which was brought to market mid-litigation. (Dkt. No. 107.) On December 19, 2012, Judge Gallo entered the Sixth Amended Case Management Order ("Sixth Am. CMC Order") setting January 22, 2013 as the deadline for serving opening expert reports. (Dkt. No. 176.) Zest claims to have received 641,841 pages of belatedly-produced discovery documents from Implant Direct in January 2013. (Dkt. No. 413 at 4-5.) On January 22, 2013, pursuant to the Sixth Am. CMC Order, Zest served Implant Direct with the expert report of Dr. Brunski detailing Zest's patent infringement claims.

On April 15, 2013, this Court granted Zest's motion to amend their infringement contentions to add the revised GPS male. (Dkt. No. 202.) On May 3, 2013, Judge Gallo ordered the Parties to file a joint statement addressing the areas of proposed additional discovery by all parties and a proposed schedule for the proposed additional discovery in preparation for a hearing on May 29, 2013. (Dkt.

No. 210.) The parties filed the joint statement on May 17, 2013. (Dkt. No. 217.) In the joint statement, Zest indicated intent to supplement its expert reports to: (1) include the revised GPS male; and (2) to include documents produced by Implant Direct in January 2013 as attachments to the reports. (Id.) On May 23, 2013, Implant Direct filed an ex parte motion to file a supplemental opposition to Zest's request to update its experts' reports. (Dkt. No. 219.) Although the ex parte motion was denied for failure to show good cause to file a supplemental opposition, (Dkt. No. 237), Judge Gallo held a hearing on the Parties' respective positions regarding Zest's ability to supplement its expert reports on May 29, 2013. (Dkt. No. 227, Hearing Transr. at 1:7-54:15.) Judge Gallo took the Parties' arguments under consideration, stating that "[a] lot of this is going to depend, I fully believe, on any ruling by Judge Curiel." (Id. at 53:9-15.)

On December 10, 2013, Zest filed an unopposed motion for a status conference. (Dkt. No. 318.) On December 18, 2013, Judge Gallo granted the motion and ordered the Parties to file a "Joint Discovery Plan regarding dates for completion of expert witness discovery and all other dates to be set in the case." (Dkt. No. 321.) Accordingly, on January 27, 2014, the Parties filed a Joint Discovery Plan. (Dkt. No. 354.) In its portion of the Joint Discovery Plan, Zest again indicated intent to "update the expert reports of Drs. Brunski and Vogel to include the new GPS male . . . [and to] update the expert reports of Drs. Vogel and McDonald to include documents belatedly produced by ID." (Dkt. No. 354 at 2.) On January 29, 2014, Judge Gallo held a telephonic status conference to discuss the Joint Discovery Plan and remaining pre-trial dates in this case. (See Dkt. No. 360 at 1.) According to Zest, Judge Gallo again heard arguments from the Parties regarding Zest's request to update their expert reports. (Dkt. No. 413 at 6.) On January 31, 2014, Judge Gallo issued a Seventh Am. CMC Order allowing Plaintiffs to supplement their expert witness reports "as discussed in the Joint Discovery Plan, dated January 24, 2014." (Dkt. No. 361 at 1.)

Implant Direct now objects to the Seventh Am. CMC Order, claiming Judge Gallo erred in "amending the scheduling order to allow Plaintiffs to supplement their experts' reports." (Dkt. No. 370-1 at 6.)

**B. Discussion**

Defendants argue Judge Gallo erred in granting Plaintiffs leave to supplement their experts' reports: (1) because Plaintiffs failed to show good cause to modify the scheduling order; (2) because Plaintiffs' failure to comply with the scheduling order prejudiced Implant Direct; (3) because Plaintiffs "should not be relieved of the consequences of their noncompliance with the scheduling order"; and (4) because Plaintiffs failed to make a timely motion to amend the scheduling order. (Dkt. No. 370-1.)

As an initial matter, magistrate judges are "afforded broad discretion in the management of discovery." Twin Star Int'l Inc. v. Whalen Furniture Mfg., Inc., No. 11cv1984 AJB (WVG), 2013 WL 3455762 at *2 (S.D. Cal. July 9, 2013) (Battaglia, J.); see also SLPR, LLC v. San Diego Unified Port Dist., No. 06cv1327-MMA(POR), 2010 WL 3420748 at *1 (S.D. Cal. Aug. 30, 2010) (Anello, J.) (recognizing the "broad discretion [magistrate judges have] over discovery and general case management"). As stated above, a district judge may reconsider a magistrate judge's ruling on a non-dispositive motion only "where it has been shown that the magistrate [judge]'s order is clearly erroneous or contrary to law." 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a).

Defendants' first, second, and fourth objections to Judge Gallo's grant of leave to supplement expert reports are premised on Implant Direct's assertion that Judge Gallo's scheduling orders required Plaintiffs' experts to provide "all opinions [they] would offer in the case," and that Plaintiffs' request to supplement their expert reports required Plaintiffs to meet the formal requirements for modifying a court's scheduling order under Federal Rule of Civil Procedure 16. (Dkt. No. 370-1 at 8, 14.) Defendants claim Plaintiffs should have been required to bring a timely

formal motion showing good cause and lack of prejudice to Implant Direct in order to amend the scheduling order to supplement their expert reports. (Id.)

These objections fail to demonstrate clear error in the Seventh Am. CMC Order. As Defendants admit, the Southern District of California Civil Local Rules provide that magistrate judges maintain "discretion to waive all or part of the requirements of [the local rules pertaining to the required contents of filed motions] in deciding discovery motions." Civ. L. R. 26.1(e). No local rule requires that a magistrate judge must "expressly" waive formal filing requirements, and Implant Direct points to no authority imposing such a requirement. Furthermore, Judge Gallo heard and considered the Parties' arguments as to the Parties' claimed "good cause to amend" and resulting "prejudice" during the lengthy May 29, 2013 hearing and during a January 29, 2014 telephonic status conference. Whether or not this Court would have ruled similarly in the first instance is not at issue; Defendants have failed to show that Judge Gallo's Order was clearly erroneous or contrary to law. See Twin Star Int'l Inc., 2013 WL 3455762 at *2.

Defendants' third objection to Judge Gallo's grant of leave for Plaintiffs to supplement their expert reports is essentially a fairness argument. (Dkt. No. 370-1 at 14.) Defendants argue Plaintiffs should not be allowed to supplement their expert reports because this is "at least the third time Plaintiffs have failed to comply with scheduling orders and been relieved of the consequences of such noncompliance." (Dkt. No. 370-1 at 14.) The Court OVERRULES this objection. Again, Defendants' argument fails to show that Judge Gallo's Order was clearly erroneous or contrary to law. Fed. R. Civ. P. 72(a).

**IV. Additional Discovery Order**

The fourth order issued by Judge Gallo and objected to by Implant Direct is an order denying Implant Direct's application, submitted by letter to the court, to conduct additional discovery past the discovery deadline. (Dkt. No. 396.)

**A. Procedural History**

On May 17, 2013, in a "Joint Statement Regarding Discovery" filed in preparation for a status conference and motion hearing before Judge Gallo, Implant Direct listed five areas in which Defendants required additional discovery as well as three motions Implant Direct intended to file. (Dkt. No. 217.) These areas of additional discovery included: (1) discovery to determine "whether and on what basis Plaintiffs contend that Implant Direct is liable for patent infringement relating to the GPS internal connection product"; (2) discovery relating to the invalidity of Plaintiffs' patents; (3) discovery as to Plaintiffs' damages from the GPS internal connection; (4) deposition of Plaintiffs' experts; and (5) designation of experts relating to invalidity. (<u>Id.</u> at 2-3.) Implant Direct indicated intent to file a motion for a new <u>Markman</u> hearing; a motion to amend its invalidity contentions; and to clarify or amend its answer to assert patent exhaustion. (<u>Id.</u> at 3.)

On May 29, 2013, Judge Gallo held a hearing to discuss, among other things, outstanding discovery issues. After hearing from the Parties regarding their respective positions, Judge Gallo took the additional discovery requests under consideration pending this Court's determination of the three motions Implant Direct intended to file as well as a motion for reconsideration already under advisement. (Dkt. No. 227, May 9, 2013 Hearing Transcr. at 53:9-15.)

On December 10, 2013, Zest filed an unopposed motion for a status conference. (Dkt. No. 318.) On December 18, 2013, Judge Gallo granted the motion and ordered the Parties to file a Joint Discovery Plan "regarding dates for completion of expert witness discovery and all other dates to be set in the case." (Dkt. No. 321.) On January 27, 2014, the Parties filed a Joint Discovery Plan, in which Defendants indicated intent to serve an expert report on the subject of patent invalidity and plans to depose and serve document requests related to Plaintiffs' experts witnesses. (Dkt. No. 354 at 7.) Other than these two issues, no other discovery issues raised by Defendants in the May 17, 2013 Joint Statement Regarding Discovery were raised in the January 27, 2014 Joint Discovery Plan.

(Compare Dkt. No. 217 with Dkt. No. 354.)

On January 29, 2014, Judge Gallo held a status conference to discuss the "resumed scheduling of the litigation to bring the case to a conclusion." (Dkt. No. 360 at 1.) On January 31, 2014, Judge Gallo issued an order stating the court's belief that it had "resolved all pending discovery issues" and welcoming Defendants to produce evidence of any previous unresolved requests. (Id.) On February 7, 2014, Implant Direct filed a statement seeking discovery on the following three issues: (1) Plaintiffs' infringement contentions relating to the new internal connection GPS cap and liner and the basis for any such contentions; (2) the invalidity of Plaintiffs' patents; and (3) Plaintiffs' alleged damages regarding the new internal connection GPS cap and liner, including in the form of Rule 30(b)(6) deposition. (Dkt. No. 366 at 2.) Defendants indicated intent to "serve requests for admission, contention interrogatories and document requests limited to each of these subjects" and stated they "may need to serve subpoenas on third-party witnesses to obtain information, or authenticate prior art that relate to the issue of validity." (Id. at 3.) In addition, on February 21, 2014, Implant Direct submitted a letter brief to the Court requesting leave to "designate an expert witness on the subject of patent invalidity." (Dkt. No. 402-3, Dugger Decl. Ex. 1.)

On March 3, 2014, Judge Gallo issued an Order Denying Defendants' Application to Conduct Additional Discovery ("March 3, 2014 Order"). (Dkt. No. 396.) Specifically, the Order: (1) denied Defendants' request to conduct additional fact discovery into Plaintiffs' infringement contentions; (2) denied Defendants' request to conduct additional fact discovery regarding the invalidity of Plaintiffs' patents; (3) denied Defendants' request to conduct additional fact discovery regarding Plaintiffs' damages evidence as it relates to the "new" GPS internal male connection; and (4) denied Defendants' request to designate an expert to testify about the invalidity of Plaintiffs' patents. (Id.) Implant Direct has filed the present motion seeking to set aside Judge Gallo's March 3, 2014 Order. (Dkt. No. 402.)

**B. Discussion**

While acknowledging that this Court may modify or set aside only the portions of Judge Gallo's March 3, 2014 Order that are "clearly erroneous" or "contrary to law," Defendants object to each of Judge Gallo's denials of additional discovery. (Dkt. No. 402-1 at 8.)

### 1. Fact Discovery into Plaintiffs' Infringement Contentions

Judge Gallo denied Defendants' request to conduct additional fact discovery into Plaintiffs' infringement contentions because Defendants' "entire argument to justify the request for additional discovery in this area is that Plaintiff has added an entirely 'new' accused product in the litigation after the discovery cutoff." (Dkt. No. 396 at 4.) Citing this Court's rejection of Defendants' characterization of the revised GPS internal male product as a "new" product, Judge Gallo denied Implant Direct's request to re-open fact discovery as to Plaintiffs' infringement contentions. (Id.) Judge Gallo further found that "Defendants already have conducted discovery about Plaintiffs' infringement and amended infringement contentions" and that, to the best of the court's knowledge, Plaintiffs had updated their interrogatory responses in light of the amended infringement contentions. (Id. at 5.)

Objecting to Judge Gallo's denial of additional fact discovery into Plaintiffs' infringement contentions, Implant Direct argues Judge Gallo's denial of further infringement contention discovery was erroneous because "Defendants never had the opportunity to conduct discovery as to Plaintiffs' amended contentions or the internal connection product." (Dkt. No. 402-1 at 14.) Implant Direct further argues Plaintiffs "never served supplemental answers after the May 29, 2013 hearing, despite their saying they would do so." (Id. at 15.)

As a factual matter, it appears Judge Gallo was not provided with full information regarding whether or not Plaintiffs served supplemental interrogatory responses following the May 29, 2013 hearing, and assumed that they had. (See Dkt. No. 396 at 5.) To the extent that Plaintiffs did not serve the supplemental

contention interrogatories mentioned in the Parties' May 17, 2013 Joint Statement Regarding Discovery, (Dkt. No. 217 at 5), and at the May 29, 2013 hearing, (Dkt. No. 227 at 21:10-14), this Court SUSTAINS Defendants' objection and ORDERS Plaintiffs to do so. Plaintiffs indicated the updated interrogatories could be provided "within a week," (Dkt. No. 277 at 24:5-8); accordingly, the Court agrees that Defendants are entitled to supplementary contention interrogatories regarding Plaintiffs' infringement contentions in light of the revised GPS internal connection allegations and ORDERS Plaintiffs to provide this information as soon as practicable and no later than one week from the date of this Order.

As to Implant Direct's argument that they "never had opportunity to conduct discovery" as to the internal connection product, the Court OVERRULES this objection. Implant Direct argues they never had an opportunity to conduct discovery because fact discovery closed for them in November 2012, while Plaintiffs did not serve a supplemental interrogatory response that discussed the GPS internal connection until January 8, 2013. (Dkt. No. 402-1 at 14-15.) Furthermore, Implant Direct argues this Court did not grant Plaintiffs' motion to amend their infringement contentions until April 15, 2013, and that Implant Direct could not have moved to compel discovery because the discovery period had closed. (Id. at 15 n. 10.) However, Implant Direct does not explain why they failed to move to amend the scheduling order to reopen fact discovery, and have not done so to this date. Although Implant Direct's arguments establish that they have not in fact conducted discovery into Plaintiffs' contentions regarding the GPS internal connection, Implant Direct fails to show that Judge Gallo clearly erred when he found Implant Direct had "the opportunity to conduct the discovery that is now being requested, when it was appropriate to do so." (Dkt. No. 396 at 3); Fed. R. Civ. P. 72(a).

In addition, Implant Direct sets forth a lengthy discussion of Implant Direct's theory that "Plaintiffs' supplemental [expert] reports[sic] shows that they have changed their arguments, and are now advancing new theories of infringement."

[10cv541-GPC(WVG)]

(Dkt. No. 402-1 at 17-20.) The Court declines to consider this new argument. As an initial matter, the Court need not consider new legal arguments and facts that are introduced for the first time while requesting a district judge's review of a magistrate judge's ruling on a nondispositive matter pursuant to Fed. R. Civ. P. 72(a). Hendon v. Baroya, No. 1:05-cv-01247-AWI-GSA-PC, 2012 WL 995757 at *2 (E.D. Cal. Mar. 23, 2012) (citing Zimmerman v. City of Oakland, 255 F.3d 734, 740 (9th Cir. 2001)); see also United States v. Howell, 231 F.3d 615, 621 (9th Cir. 2000) ("A district court has discretion, but is not required, to consider evidence presented for the first time in a party's objection to a magistrate judge's recommendation.").

In addition, the Court finds that the crux of Implant Direct's complaint is that Plaintiffs' supplemental expert report is inconsistent with Plaintiffs' Fourth Supplemental Interrogatory Responses. (Dkt. No. 402-1 at 18.) To the extent that the Court now orders Plaintiffs to provide updated interrogatory responses, the Court finds that Dr. Brunski's supplemental expert report, (Dkt. No. 411-2, Dugger Decl. Ex. 5), and the updated interrogatories should provide Defendants with the information they claim to seek. (See Dkt. No. 217) (stating that Defendants seek information as to "whether and on what basis Plaintiffs contend that Implant Direct is liable for patent infringement relating to the GPS internal connection product"). Implant Direct has not met their burden of showing clear error in Judge Gallo's finding that, "other than expert discovery as addressed in the Seventh Amended CMC Order, no additional discovery in this area is justified." (Dkt. No. 396 at 6) (internal citation omitted).

### 2. Patent Invalidity & GPS Internal Male Damages Fact Discovery

Judge Gallo denied Defendants' request to conduct additional fact discovery into patent invalidity and Plaintiffs' damages related to the GPS internal male connection on similar grounds, finding the "time has come and gone for Defendants to conduct" discovery into patent invalidity and Plaintiffs' alleged damages. (Dkt.

No. 396 at 6-7.) Implant Direct objects to Judge Gallo's denial, arguing Judge Gallo "never re-opened discovery to allow Implant Direct to serve the interrogatory (or any other discovery)." (Dkt. No. 402-1 at 20-21.) Implant Direct argues they "could not, unilaterally, after the discovery cutoff, serve damages discovery just because Plaintiffs stated that they would be amenable to responding to an interrogatory." (Id. at 21.)

While Implant Direct may be correct that discovery was not open, Implant Direct fails to explain why they did not move the court to re-open discovery. A review of the docket shows that Implant Direct successfully moved the court for permission to conduct discovery on other issues between May 2013 and the present dispute. (See, e.g., Dkt. No. 285, Order Granting Defendants' Request to Conduct Discovery.) Accordingly, this Court finds Defendants have failed to show that Judge Gallo's denial of additional fact discovery into patent invalidity and Plaintiffs' damages related to the GPS internal male connection was clearly erroneous or contrary to law. Fed. R. Civ. P. 72(a).

### 3. Designation of an Invalidity Expert

Last, Judge Gallo denied Defendants' application to designate an expert on patent invalidity two years after the deadline to designate expert witnesses. (Dkt. No. 396 at 7.) Judge Gallo did so finding that "Plaintiffs' patents have not changed one iota throughout the course of this litigation." (Id. at 8.)

Implant Direct objects to Judge Gallo's denial on the ground that Judge Gallo's order is "inconsistent with other rulings made by this Court." (Dkt. No. 402-1 at 9.) Quoting from this Court's October 16, 2013 Order Granting in part and Denying in part Implant Direct's Motion to Amend Invalidity Contentions, (Dkt. No. 301), Implant Direct argues that they should be able to designate an invalidity expert because this Court granted their motion to amend their invalidity contentions. (Dkt. No. 402-1 at 10-11.) According to Implant Direct, it is "logically inconsistent" for Judge Gallo to allow Plaintiffs to supplement their infringement expert reports

after the Court allowed amendment of Plaintiffs' infringement contentions but to deny Defendants the opportunity to designate an invalidity expert after the Court allowed amendment of Defendants' invalidity contentions. (Id. at 11.)

This objection is OVERRULED. The record reflects that Judge Gallo allowed Plaintiffs to supplement previously timely submitted expert report by a timely designated expert after this Court allowed Plaintiffs to amend their infringement contentions. (Dkt. No. 361.) Here, Defendants sought to designate a wholly new expert on invalidity over two years after the deadline to designate expert witnesses; over a year after the deadline to submit expert reports; and four months after this Court granted in part Defendants' motion to amend their invalidity contentions. Given these circumstances, Defendants have failed to show that Judge Gallo's denial was clearly erroneous or contrary to law. Fed. R. Civ. P. 72(a).

## CONCLUSION AND ORDER

For the foregoing reasons, the Court:

1. **OVERRULES** Implant Direct's objections and **ADOPTS** in part the recommendation of Magistrate Judge William V. Gallo ("Judge Gallo") imposing sanctions for spoliation of evidence, (Dkt. No. 312);

    a. **GRANTS** Zest's motion for an adverse jury instruction due to Implant Direct's spoliation of evidence, (Dkt. No. 121);

    b. **GRANTS** Zest's motion for monetary sanctions due to Implant Direct's discovery abuses, (Dkt. No. 121);

2. **DENIES** Implant Direct's motion to set aside the Seventh Amended Case Management Order, (Dkt. No. 345);

3. **DENIES** Implant Direct's motion to set aside the Order Striking the Joint Expert Report of Scott D. Hampton and Bruce G. Silverman, (Dkt. Nos. 370); and

4. **GRANTS** in part and **DENIES** in part Implant Direct's motion to set aside Judge Gallo's order related to additional discovery. (Dkt. No. 402.)

//

1    In addition, the Court hereby **ORDERS** that: (1) The Parties shall include

2    proposed adverse jury instruction language related to the spoliation of evidence

3    consistent with this Order in their proposed jury instructions for trial; and (2) Zest

4    shall serve supplementary contention interrogatory responses regarding Zest's

5    infringement contentions in light of its revised GPS internal connection allegations

6    on Implant Direct as soon as practicable, but no later than one week from the date of

7    this Order.

8        Furthermore, the Court hereby **TAKES UNDER SUBMISSION** the amount

9    of monetary sanctions to be awarded to Zest in relation to its grant of Zest's motion

10   for monetary sanctions and will issue a written monetary award consistent with this

11   opinion.

12       **IT IS SO ORDERED.**

13   DATED:  June 16, 2014

14
15   HON. GONZALO P. CURIEL
     United States District Judge

16

17

18

19

20

21

22

23

24

25

26

27

28

[10cv541-GPC(WVG)]