1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

ZEST IP HOLDINGS, LLC, a
Delaware limited liability company;
ZEST ANCHORS, LLC, a Delaware
limited liability company,

Plaintiffs,

v.

IMPLANT DIRECT MFG. LLC, a
Nevada limited liability company;
IMPLANT DIRECT LLC, a Nevada
limited liability company; IMPLANT
DIRECT INT'L, a Nevada
corporation,

Defendants.

CASE NO. 10cv541-GPC(WVG)

**ORDER:**

**1) DENYING IMPLANT DIRECT
SYBRON INTERNATIONAL AND
IMPLANT DIRECT SYBRON
MANUFACTURING, LLC'S
MOTION FOR SUMMARY
JUDGMENT ON ZEST'S CLAIMS
BASED ON POST-ACQUISITION
LIABILITY**

[Dkt. No. 456.]

**2) GRANTING IN PART AND
DENYING IN PART ZEST
ANCHORS, LLC AND ZEST IP
HOLDINGS LLC'S MOTION FOR
SUMMARY JUDGMENT THAT IDSI
IS LIABLE FOR PRE- AND POST-
TRANSACTION CONDUCT AND
BOUND TO THE COURT'S PRIOR
ORDERS AND IMPLANT DIRECT'S
LITIGATION DECISIONS**

[Dkt. No. 467.]

**3) GRANTING IN PART AND
DENYING IN PART IMPLANT
DIRECT INTERNATIONAL,
IMPLANT DIRECT LLC, AND
IMPLANT DIRECT MFG, LLC'S
MOTION FOR PARTIAL
SUMMARY JUDGMENT**

[Dkt. No. 468.]

[10cv541-GPC(WVG)]

**INTRODUCTION**

Presently before the Court are cross-motions for summary judgment on the issue of whether successor-in-interest Defendants Implant Direct Sybron International and Implant Direct Sybron Manufacturing, LLC (collectively, "IDSI") can be held liable in the present action for Zest's claims against them arising out of conduct following the transaction that created the IDSI entities. (Dkt. Nos. 456, 467, 468.) Respective motions have been filed by: (1) the IDSI Defendants, (Dkt. No. 456); (2) Plaintiffs Zest Anchors, LLC and Zest Holdings, LLC (collectively, "Plaintiffs"), (Dkt. No. 467); and (3) named Defendants Implant Direct Mfg. LLC, Implant Direct LLC, and Implant Direct International (collectively, "Implant Direct"), (Dkt. No. 468). The Parties have fully briefed all three motions. (See Dkt. Nos. 489, 490, 491, 498, 499, 500.) A hearing was held on October 3, 2014. (Dkt. No. 532.) Lisa Ferri, Esq., Manuel J. Velez, Esq., and Andrew Edelstein, Esq. appeared on behalf of Plaintiffs; A James Isbester, Esq., Megan Chung, Esq., and Christopher Mead (telephonic) appeared on behalf of the IDSI Defendants; and Michael Hurey, Esq. and Christopher Dugger, Esq. appeared on behalf of the Implant Direct Defendants.

In essence, the Parties' cross-motions seek to determine the scope of the Implant Direct and IDSI Defendants' potential liability for the present litigation due to the transfer of interest between them at the end of December, 2010 ("2010 Transaction"). After the Implant Direct Defendants transferred their assets and liabilities into the newly-created IDSI subsidiaries, no party in this litigation - not the Implant Direct Defendants, the newly formed IDSI Defendants, or the Zest Plaintiffs - timely brought the issue of joinder to the Court's attention until Zest filed a motion to join the IDSI Defendants more than a year and a half later on August 21, 2012. (Dkt. No. 116.)

The Parties now dispute whether the present litigation includes allegations for conduct occurring after the transfer of interest between Implant Direct and IDSI.

The Implant Direct Defendants, as originally named in Zest's initial Complaint filed March 12, 2010,  argue they are not liable for any post-2010 Transaction conduct because they transferred all assets and liabilities to IDSI and ceased conducting business. The IDSI entities, joined to this action as successors-in-interest pursuant to Federal Rules of Civil Procedure 25(c), do not dispute that they assumed the liabilities of the Implant Direct entities for Implant Direct's conduct prior to the 2010 Transaction. However, IDSI maintains that they were joined to this action solely as successors to the actions of Implant Direct, and cannot be held liable for their own post-2010 Transaction conduct unless Zest files a Second Amended Complaint naming the IDSI entities for their own conduct or files a separate action for that separate conduct. Zest argues IDSI takes the case as they found it and are bound to the litigation decisions of Implant Direct and this Court's prior orders in this case. The Court agrees with Zest and Implant Direct.

Based on a review of the Parties' briefing, the lengthy record, submitted evidence, oral arguments by the parties, and the applicable law, the Court: (1) DENIES the IDSI Defendants' Motion for Summary Judgment on Zest's Claims Based on Post-Acquisition Liability, (Dkt. No. 456); (2) GRANTS in part and DENIES in part Zest's Motion for Summary Judgment that IDSI is Liable for Pre- and Post-Transaction Conduct and Bound to the Court's Prior Orders and Implant Direct's Litigation Decisions, (Dkt. No. 467); and (3) GRANTS in part and DENIES in part the Implant Direct Defendants' Motion for Partial Summary Judgment, (Dkt. No. 468).

## BACKGROUND

As set forth in prior orders in this case, this is a patent and trademark infringement action involving dental attachment products. (See Dkt. No. 1.) The procedural history in this four-and-a-half year old litigation is long and complex.

**I.     Case Initiation**

On March 12, 2010, Zest filed the initial Complaint in the present action,

naming Defendants Implant Direct International, Implant Direct LLC, and Implant Direct MFG, LLC. (Dkt. No. 1.) On August 27, 2010, Zest filed a First Amended Complaint ("FAC"), the current operative Complaint. (Dkt. No. 13.) The gravamen of the FAC is that Implant Direct manufactures, offers for sale, and sells the "GoDirect" dental attachment product and the GoDirect Prosthetic System ("GPS") (collectively, "Accused Products") in violation of Zest's patents, and falsely and unfairly uses the ZEST® and LOCATOR® trademarks when marketing the Accused Products. (See Dkt. No. 13 ¶¶ 6, 7, 20, 21, 24-28, 30-32.) The FAC alleges eight causes of action against the Implant Direct Defendants: (1) Infringement of U.S. Patent No. 6,030,219; (2) Infringement of Patent No. 6,299,447; (3) Trademark Infringement; (4) False Designation of Origin; (5) False Advertising; (6) California UCL; (7) California statutory False Advertising; and (8) Common Law Unfair Competition. (Id.) On September 17, 2010, Implant Direct filed an Answer to Plaintiffs' First Amended Complaint. (Dkt. No. 17.)

**II.    Creation of IDSI Entities**

Under the terms of a transaction agreement dated November 17, 2010 ("Transaction Agreement"), Implant Direct entered into a corporate transaction with Sybron Canada Holdings, Inc. for an "arms-length" sale whereby the Implant Direct entities formed and transferred 100% of their interests into wholly-owned subsidiaries, which were then purchased by Sybron Canada Holdings, Inc. ("Sybron"). (See Dkt. No. 521, Velez Decl. Ex. 1.) In particular, Implant Direct Mfg. LLC became Implant Direct Sybron Manufacturing, LLC and Implant Direct International became Implant Direct Sybron International LLC. (See Dkt. No. 146 at 4; Dkt. No. 521-2, Velez Decl. Ex. 3, Chang Depo. at 69:20-70:4.)

Pursuant to the Transaction Agreement, the IDSI entities assumed "the following liabilities of Sellers solely to the extent relating to the ID Business: . . . (iii) . . . all Liabilities arising out of the ownership, use or operation by the Joint Venture Companies of the ID Contributed Assets following the Closing, and (iv)

numbers 1, 2, 3, 5, and 6 on the litigation summary attached to Section 2.16 of the

Sellers' Disclosure Schedule . . ." (Dkt. No. 521, Velez Decl. Ex. 1 at § 9.1(qq).)

The referenced "litigation summary" lists nine items under the heading "A summary

of all pending or threatened litigation or action against the Company." (Dkt. No.

521-1, Velez Decl. Ex. 2, Litigation Summary.) The litigation summary discloses

the present litigation as item two, stating that:

> Zest Anchors filed a Complaint alleging that Implant Direct's GoDirect one-piece implant infringes its patent. GoDirect implants account for about 0.2% of Implant Direct's implant sales, and Implant Direct has filed for a Patent on this product. . . <u>Implant Direct anticipates litigation with Zest when Implant Direct launches its new GPS abutment system, for which Implant Direct has also filed a patent application.</u> Implant Direct believes that it does not infringe the Zest patent, and also that it is protected from claims of inducing infringement because the Zest cap attachment works with the Implant Direct GPS Abutment. **Zest served the Complaint on July 7, 2010 and filed an Amended Complaint on August 27, 2010.**

(<u>Id.</u> at 3) (emphases in original).

Zest has introduced significant evidence, largely unrefuted by Implant Direct

or IDSI, that IDSI continued the sales of the Accused Products and has participated

in the present litigation since the 2010 Transaction. As for sales of the Accused

Products, the evidence reflects that business continued with little change after the

2010 Transaction. IDSI continues to make the same products Implant Direct did,

including the Accused Products. (Dkt. No. 467-4, Velez Decl. Ex. 5, Markman

Hearing Transcr. at 94:17-19; Dkt. No. 521-2, Velez Decl. Ex. 3 at 81:5-20,

118:9-119:9.) Dr. Gerald Niznick ("Dr. Niznick"), the designer of the Accused

Products, served as Implant Direct's President and CEO and was hired to remain as

President and CEO of the IDSI entities. (Dkt. No. 521-4, Velez Decl. Ex. 6, Niznick

Depo. at 243:24-245:6.) Zest has also introduced evidence that the IDSI "maintains

the same address as its predecessor, utilizes the same web address

(www.implantdirect.com), and even employs the same marketing and sales

materials as its predecessor." (Dkt. No. 467-1 at 5) (internal citations omitted).

Likewise, the Court's docket and Zest's uncontroverted evidence reflect that

[10cv541-GPC(WVG)]

1   this litigation continued with substantial IDSI participation after the 2010
2   Transaction. In particular, Zest's counsel declares that Stephen Tomassi, an
3   executive from Sybron and a future board member of IDSI, attended the Early
4   Neutral Evaluation held on December 9, 2010 and indicated that IDSI would "be
5   involved in the case." (Dkt. No. 467-3, Velez Decl. ¶ 3.) Dr. Niznick and/or Rajiv
6   Yadav, Sybron's in-house counsel, participated in all subsequent court-ordered
7   mediations. (Id. ¶ 4.) Dr. Niznick testified that the IDSI entities delegated
8   responsibility for managing the present litigation to him, and that he gave regular
9   reports to the IDSI Board. (Dkt. No. 522 at 24.) According to Dr. Niznick, the
10  management of this litigation was "always done in consultation with Mr. Tomassi
11  and the Board as to what we were doing." (Id.)  Furthermore, at the Markman
12  hearing held in this case, Dr. Niznick affirmed that if there was an infringement
13  finding in this case and damages were awarded, that IDSI would be "responsible for
14  any of the damages for sales made after the [2010 Transaction]." (Dkt. No. 467-4,
15  Velez Decl. Ex. 5 at 94:20-95:2.)

16      In addition, according to the Court's docket, Implant Direct and IDSI appear
17  to have been represented by the same counsel up to and through the Court's formal
18  joinder of the IDSI Defendants to this case. The Court notes that the Parties dispute
19  this fact. At the October 3, 2014 Hearing on the present motions, IDSI's counsel
20  attempted to clarify for the Court that Implant Direct and IDSI were represented by
21  separate counsel after IDSI was brought into this litigation. (Dkt. No. 534 at 13:7-
22  14:10) ("IDSI was represented not by Mr. Hurey and his law firm, but by separate
23  counsel by the name of Patrick Bright. And as far as I know, the record does not
24  suggest that Mr. Hurey was representing IDSI as opposed to Mr. Bright representing
25  IDSI."). However, the record reflects that Mr. Bright entered a notice of appearance
26  in this case on behalf of the Implant Direct entities on September 9, 2011, well
27  before Zest filed their formal motion to join IDSI pursuant to FRCP 25©. (Dkt. No.
28  70.) In addition, Implant Direct's counsel, Kleinberg and Lerner, has brought three

actions against Zest on behalf of the IDSI entities in this district during the
pendency of this litigation. See Implant Direct Sybron International v. Zest IP
Holdings, LLC et al., No. 11-cv-2247-LAB-WVG (S.D. Cal.) (filed September 27,
2011); Implant Direct Sybron International v. Zest IP Holdings, LLC et al., No.
12-cv-01213-JLS-MDD (S.D. Cal.) (filed May 21, 2012); Implant Direct Sybron
International v. Zest IP Holdings, LLC et al., No. 13-cv-1846-GPC-WVG (S.D.
Cal.) (filed August 8, 2013). Neither IDSI nor Implant Direct have submitted
evidence to the Court to otherwise refute Zest's showing that IDSI and Implant
Direct were represented by the same counsel prior to and after IDSI was formally
joined to this case, until new counsel made appearances for the IDSI entities at the
end of April 2014. (See Dkt. Nos. 419, 421, 422.)

## IV.    Joinder of the IDSI Entities

Following a series of discovery disputes between the Parties, Zest filed a
motion to formally join the IDSI entities to the present action as
successors-in-interest to the Implant Direct entities pursuant to Federal Rules of
Civil Procedure 25©. (Dkt. No. 116.) The motion was filed on August 21, 2012, and
was fully briefed, including supplemental briefing. (Dkt. Nos. 146, 156, 170, 177.)
On October 22, 2012, the case was transferred from Judge Larry Burns to the
undersigned Judge. (Dkt. No. 142.) Following a hearing on January 4, 2013, (Dkt.
No. 184, Hearing Transcr.), this Court denied Zest's motion to join the IDSI entities
on the ground that Zest had not properly served IDSI with the motion. (Dkt. No.
185.) The Court further granted Plaintiffs fifteen days to properly effectuate service
and took the motion under submission. (Dkt. No. 185.) On February 19, 2013, the
IDSI entities filed an opposition to Plaintiffs' motion to join. (Dkt. No. 190.) On
February 21, 2013, Zest filed a reply to the IDSI opposition. (Dkt. No. 191.) On
April 15, 2013, this Court issued an order granting Zest's motion to join the IDSI
entities as successors-in-interest to Implant Direct. (Dkt. No. 202.) In particular, this
Court found that the benefits of joinder outweighed Plaintiffs' delay in seeking

1   joinder and that IDSI was not unduly prejudiced because "IDSI has had an

2   opportunity as an interested party to influence the direction that Implant Direct has

3   sought in the litigation up to this point." (Id. at 4-6.)

4         On May 6, 2013, without seeking leave to do so, the IDSI entities filed an

5   Answer to Plaintiffs' Amended Complaint, asserting a counterclaim against

6   Plaintiffs for patent invalidity. (Dkt. No. 211.) On May 31, 2013, Zest filed a

7   motion to strike IDSI's Answer and Counterclaim arguing that IDSI was attempting

8   to file the very same Answer and Counterclaim that Implant Direct was previously

9   disallowed by Judge Larry Burns to file, (see Dkt. No. 81), and that IDSI, as a

10  successor-in-interest to Implant Direct, was not entitled to start the case anew under

11  Rule 25©. (Dkt. No. 226, 226-1.) IDSI opposed the motion, (Dkt. No. 253), and

12  Plaintiffs replied, (Dkt. No. 261). On October 16, 2013, this Court granted Zest's

13  motion to strike IDSI's answer and counterclaim. (Dkt No. 301 at 4-10.)

14  **IV.   Present Motions**

15        More than six months later, on April 28, 2014, new counsel filed a notice of

16  appearance and applied to appear pro hac vice for the IDSI entities. (Dkt. Nos. 419,

17  421, 422.) On April 29, 2014, IDSI filed a "Motion for Clarification of Joinder and

18  Discovery Orders," moving this Court to clarify that the Court's order joining IDSI

19  to the present action as successor-in-interest to IDSI is limited to Implant Direct's

20  conduct prior to the 2010 Transaction. (Dkt. No. 420.) On July 30, 2014, the Court

21  declined to decide the scope of IDSI liability on a "motion for clarification" without

22  the proper legal and evidentiary showings. (Dkt. No. 455 at 5-6.)

23        The Parties have now filed cross-motions for summary judgment on the

24  question of whether IDSI's joinder to this litigation under Federal Rules of Civil

25  Procedure 25(c) is solely for Implant Direct's pre-2010 Transaction conduct or

26  whether IDSI's potential liability is severed as of the date of the 2010 Transaction.

27  ///

28  ///

**LEGAL STANDARD**

Federal Rule of Civil Procedure 56 empowers the Court to enter summary judgment on factually unsupported claims or defenses, and thereby "secure the just, speedy and inexpensive determination of every action." Celotex Corp. v. Catrett, 477 U.S. 317, 325, 327 (1986). Summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A fact is material when it affects the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The moving party bears the initial burden of demonstrating the absence of any genuine issues of material fact. Celotex Corp., 477 U.S. at 323. The moving party can satisfy this burden by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element of his or her claim on which that party will bear the burden of proof at trial. Id. at 322-23. If the moving party fails to bear the initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. Adickes v. S.H. Kress & Co., 398 U.S. 144, 159-60 (1970).

Once the moving party has satisfied this burden, the nonmoving party cannot rest on the mere allegations or denials of his pleading, but must "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file' designate 'specific facts showing that there is a genuine issue for trial.'" Celotex, 477 U.S. at 324. If the non-moving party fails to make a sufficient showing of an element of its case, the moving party is entitled to judgment as a matter of law. Id. at 325. "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). In making this determination, the court must "view[] the evidence in the

light most favorable to the nonmoving party." <u>Fontana v. Haskin</u>, 262 F.3d 871, 876 (9th Cir. 2001). The Court does not engage in credibility determinations, weighing of evidence, or drawing of legitimate inferences from the facts; these functions are for the trier of fact. <u>Anderson</u>, 477 U.S. at 255.

The filing of cross-motions for summary judgment "does not necessarily mean there are no disputed issues of material fact and does not necessarily permit the judge to render judgment in favor of one side or the other." <u>Starsky v. Williams</u>, 512 F.2d 109, 112 (9th Cir. 1975). "[E]ach motion must be considered on its own merits." <u>Fair Hous. Council of Riverside County, Inc. v. Riverside Two</u>, 249 F.3d 1132, 1136 (9th Cir. 2001). Furthermore, the court must consider evidence submitted in support of and in opposition to both motions before ruling on each one. <u>Id.</u>

## DISCUSSION

As an initial matter, the Court notes that the issue now before the Court is the result of the failure, on the part of all involved Parties, to timely address the transfer of interest between the initial Implant Direct Defendants and the successor-in-interest IDSI Defendants. Although it is true that Federal Rules of Civil Procedure 25(c) allows an action to "continue unabated when an interest in the lawsuit changes hands," <u>In re Bernal</u>, 207 F.3d 595, 598 (9th Cir. 2000), the better practice, particularly where a Plaintiff is alleging ongoing infringement involving modifications to existing products, is to seek formal addition of a successor-in-interest via substitution or joinder. At the hearings held on this matter and briefs filed in support of and opposition to joinder, the Parties variously blamed each other for this failure. The law is clear, however, that any of the three sets of Parties in this action could have sought clarification of the scope of Zest's allegations and the scope of IDSI's liability at an earlier time in this litigation. <u>See, e.g.</u>, <u>General Battery Corp. v. Globe-Union Inc.</u>, 100 F.R.D. 258 (D. Del. Oct. 5, 1982) (original defendant moved for substitution of successor-in-interest under FRCP 25(c));

Kowalski v. Mommy Gina Tuna Resources, Nos. 05-00679 BMK, 06-00182 BMK, 05-00787 BMK, 2008 WL 4483774 (D. Haw. Sept. 30, 2008) (plaintiff moved to join successor-in-interest defendant to litigation); In re Bernal, 207 F.3d at 599 ("We hold that the proper procedure was a motion brought under Federal Rule of Civil Procedure 25(c) and addressed to the discretion of the bankruptcy court. [Successor-in-interest defendant] never sought to utilize that procedure, and it failed in its attempt to ensorcel the bankruptcy court into granting 25(c)-evading relief. Just as it failed there, it must fail here.").

Now, nearly four years since transfer and in the face of damages accumulated during the pendency of this lawsuit, the Parties seek to settle the question of whether post-transaction liability is properly considered in this lawsuit, or whether Zest must file an amended complaint or a separate lawsuit for allegations regarding post-2010 Transaction potential liability. (See Dkt. No. 534, Hearing Transcr. at 14:11-17) ("[T]his is going a little bit into the realpolitik of the situation, but in truth, the exposure of Implant Direct, that original product, is minimal. The real exposure to whomever - and IDSI is quite prepared to stand up in this court and defend itself against that exposure - but that the real exposure relates to the revised product that IDSI brought in long after the acquisition."). The Court addresses the three filed motions in turn.

## I.    IDSI's Motion for Summary Judgment

IDSI moves for summary judgment on Zest's claims for post-2010 Transaction liability on two grounds: (1) under the Federal Rules of Civil Procedure 25(c) ("Rule 25©"), IDSI's liability is limited to the conduct of their predecessors, the Implant Direct entities; and (2) it violates due process to hold IDSI liable for its own conduct "without [allowing IDSI to] answer, raise defenses, engage in discovery, or present independent expert witnesses." (Dkt. No. 456-1 at 1.)

### A.    Rule 25(c)

The Parties do not dispute that IDSI may be held liable for any patent and

trademark infringement that IDSI's Implant Direct predecessors committed prior to the 2010 Transaction. (See Dkt. No. 431 at 1.) However, IDSI moves for summary judgment on the ground that Rule 25(c) "only permits IDSI to be joined to this action as Implant Direct's successor, not for its own post-acquisition conduct." (Dkt. No. 456-1 at 4.) The Court disagrees.

The general principles of Rule 25(c) are not in dispute. Under Rule 25, "[i]n case of any transfer of interest, the action may be continued by or against the original party, unless the court upon motion directs the person to whom the interest is transferred to be substituted in the action or joined with the original party." Fed. R. Civ. P. 25(c). As the Parties and this Court have reiterated, "Rule 25(c) is not designed to create new relationships among parties to a suit but is designed to allow the action to continue unabated when an interest in the lawsuit changes hands." In re Bernal, 207 F.3d 595, 598 (9th Cir. 2000) (quoting Collateral Control Corp. v. Deal (In re Covington Grain Co., Inc.), 638 F.2d 1362, 1364 (5th Cir. 1981)).

However, IDSI asserts the novel argument that pre-transfer and post-transfer conduct should be treated separately under Rule 25©. IDSI cites four cases for the proposition that "a successor-in-interest is only liable for the predecessor corporation's conduct, not its own independent actions." (Dkt. No. 456-1 at 5-6) (citing Mobil Oil Corp. v. Linear Films, Inc., 718 F. Supp. 260 (D. Del. 1989); McKesson Info. Solutions, Inc. v. Bridge Med ., Inc., No. CIVS022669 FCD KJM, 2006 WL 658100 (E.D. Cal. Mar. 13, 2006); Mars, Inc. v. JCM Am. Corp., No. 05-3165 (RBK), 2008 WL 5401604 (D.N.J. Dec. 23, 2008); Horphag Research Ltd. v. Consac Indus., Inc., 116 F.3d 1450, 1453 (Fed. Cir. 1997)). Having carefully considered IDSI's cited authorities, the Court finds that none of them support the proposition that, after a Rule 25(c) successor-in-interest is joined, post-transaction conduct is treated separately from pre-transaction conduct.

First, the Mobil Oil case is distinguishable from the present case on its facts. Mobil Oil involved the denial of a plaintiff's Rule 25(c) motion to substitute a

successor-in-interest defendant into a case where the court had determined that the original defendant was not liable. 718 F. Supp. at 272-73. In essence, the court held that the plaintiff could not cure its error of "su[ing] the wrong party," 718 F. Supp. at 263, by substituting the correct successor-in-interest party under Rule 25(c). In this case, Implant Direct's liability for pre-2010 Transaction conduct has yet to be determined, and the propriety of joining IDSI as a successor-in-interest is not at issue. The Mobil Oil case did not address the issue presently before the Court.

Second, the McKesson case likewise involved a denial of Rule 25(c) joinder in a situation distinguishable on its facts. 2006 WL 658100. In that case, the court considered a defendant that transferred all assets (but not liabilities) to a third-party corporation during the pendency of the litigation. The court noted that the plaintiff appeared "at times, to argue that [the transferee] is an independent infringer separate and apart from any acquired liability" which the court found impermissible under Rule 25(c). McKesson, 2006 WL 658100 at *2. However, while assets including the accused "MedPoint System" were transferred from the transferor defendant to a transferee third-party in McKesson, the court made no finding as to whether the transferee was a successor-in-interest to the transferor. Furthermore, the McKesson court noted that the transferee third-party had not retained counsel or reviewed the "existing, massive litigation record" in that case. Id. at *3. Here, the Court has found and the Parties do not dispute that IDSI is a successor-in-interest to Implant Direct. As noted above, Zest has introduced significant evidence that IDSI has participated in and has controlled this litigation since the 2010 Transaction. IDSI's quoted language from the court in McKesson does not compel the conclusion that liability cuts off at the time of transfer between a predecessor and successor-in-interest.

Neither do Mars, Inc., 2008 WL 5401604, or Horphag, 116 F.3d 1450 (reversing the district court's joinder of a successor-in-interest into a lawsuit that was already closed two years previously), present factual circumstances similar to

[10cv541-GPC(WVG)]

this case. In particular, <u>Mars, Inc.</u> involved the record owner of a patent seeking to substitute as a successor-in-interest plaintiff under Rule 25©. 2008 WL 5401604 at *1. As in <u>Mobil Oil</u>, the <u>Mars, Inc.</u> court found that a successor-in-interest plaintiff could not cure the fact that the predecessor plaintiff lacked standing to sue. No such concerns exist here.

On the other hand, Plaintiffs cite several cases for the proposition that non-party successors-in-interest can be found liable for their own post-transaction conduct rather than just their predecessors' conduct. <u>See</u> <u>Cloister Speed steel AB v. Crucible Inc.</u>, 793 F.2d 1565 (Fed. Cir. 1986); <u>Novo Industry A/S v. Travenol Labs., Inc.</u>, 677 F.2d 1202, 1211-12 (7th Cir. 1982); <u>Kowalski v. Mommy Gina Tuna Res.</u>, No. 05-00679, 2008 WL 4483774, at *8 (D. Haw. Sept. 30, 2008). For example, in <u>Novo Industry</u>, the Seventh Circuit addressed a case where, as in this case, the accused product was acquired by a third party during the pendency of the lawsuit, and the third party was added to the litigation pursuant to Rule 25(c). 677 F.2d at 1203-04. For most of the opinion, the Seventh Circuit treated the predecessor and successor-in-interest companies as one party. <u>Id.</u> ("For simplicity the defendants-appellants will be referred to collectively as Travelog throughout this opinion."). During the court's discussion of increased damages and attorney's fees, the court affirmed the district court's finding that both the predecessor's and successors' infringement of the plaintiff's patent were deliberate and willful, warranting increased damages and attorney's fees. <u>Id.</u> at 1211-12.

IDSI argues these cases "simply [do] not address or discuss any of the Rule 25(c) or due process arguments that IDSI has raised in this case." (Dkt. No. 490 at 12.) While this statement is accurate, the Court finds that the lack of discussion in these cases favors Zest's interpretation of Rule 25(c) rather than IDSI's. IDSI has pointed to no cases in which a court severed liability at the time of transfer for a successor-in-interest joined to a case under Rule 25(c). (<u>See</u> Dkt. No. 534, Hearing Transcr. at 534:2-8) ("The Court: Do you have a case where there was a Rule 25

joinder and the Court explicitly found there was a cutoff and break of liability as of the time of transfer? [IDSI's Counsel]: Your Honor, I don't know the answer to that."). On the other hand, Zest's cited authorities demonstrate that several courts have brought successors-in-interest into a case and have allowed post-transfer conduct to be included in the calculation of damages. See Novo Industry, 677 F.2d at 1211-12; Kowalski, 2008 WL 4483774, at *8. The Court therefore finds that Rule 25(c) does not prevent liability for post-transaction conduct in this action and DENIES IDSI's motion for summary judgment on this ground.

## B. Due Process

IDSI's second argument for summary judgment on the question of its post-2010 Transaction liability is that due process "requires that IDSI be permitted to defend itself if it is sued for its own conduct." (Dkt. No. 456-1 at 6.) IDSI argues that "any procedural scenario in which it could be held liable and assessed damages for its own conduct without being able to answer and conduct its own defense would be flatly contrary to the Supreme Court's clear rulings about what process is due when a new party is brought into an existing case." (Id.)

IDSI's due process argument relies heavily on Nelson v. Adams USA, Inc., 529 U.S. 460 (2000). In Nelson, the Supreme Court considered a district court's allowance of post-judgment amendment of the pleadings to add the president and sole shareholder of the unsuccessful plaintiff patent-holder in a patent infringement action. Id. at 463. The Supreme Court held that the "District Court erred in amending the judgment immediately upon permitting amendment of the pleading. Due process, as reflected in Rule 15 as well as Rule 12, required that [the president and sole shareholder] be given an opportunity to respond and contest his personal liability for the award after he was made a party and before the entry of judgment against him." Id. IDSI argues Nelson "has been widely followed to preclude procedural maneuvers that seek to hold persons liable for their own conduct unless they have been properly sued, served and allowed to present a defense." (Dkt. No.

1   456-1 at 8) (citing exemplary cases).

2       IDSI argues the requirements of due process in this case is a "pure question of

3   law." (Dkt. No. 456-1 at 3; see also Dkt. No. 456, IDSI's Motion for Summary

4   Judgment (including no supportive evidence).) However, "'Due process' is an

5   elusive concept. Its exact boundaries are undefinable, and its content varies

6   according to specific factual contexts." Panther Pumps & Equipment Co., Inc. v.

7   Hydro craft, Inc., 566 F.2d 8, 24 (7th Cir. 1977) (quoting Hannah v. Larches, 363

8   U.S. 420, 442 (1960)).

9       Having reviewed the extensive factual record built by Zest and uncontested

10  by IDSI, the Court finds that the due process concerns raised by Nelson are not

11  applicable to this case. In particular, the Supreme Court in Nelson noted that Nelson

12  sought only "the right to contest on the merits his personal liability for fees

13  originally sought and awarded solely against [his corporation]." 529 U.S. at 472.

14  The Court finds that IDSI has had this opportunity via the due process rights

15  recognized by Rule 25(c). In particular, Rule 25 provides that a motion to substitute

16  or join a successor-in-interest must be served, together with a notice of hearing, on

17  the parties and non-parties prior to joinder. Fed. R. Civ. P. 25(a)(3), (c). The Court

18  therefore denied Zest's initial motion to join, (Dkt. No. 185), and granted joinder,

19  (Dkt. No. 202), only after IDSI had an opportunity to contest the joinder and the

20  Court's finding that IDSI is the successor-in-interest to Implant Direct, (Dkt. No.

21  190).

22      In addition, as set forth above, Zest has introduced significant evidence that

23  IDSI has acted as a party in this litigation and had an opportunity to contest liability

24  since the 2010 Transaction. The Court finds that the 2010 Transaction Agreement

25  expressly disclosed this litigation as well as ongoing and anticipated claims by Zest.

26  Despite knowledge of the pending lawsuit and Zest's claims against Implant Direct,

27  IDSI continued sales and marketing of the Accused Products unabated. IDSI

28  delegated responsibility for control over this litigation to its President and CEO, Dr.

Niznick, who provided regular updates to IDSI's board of directors. IDSI's in-house counsel participated in court hearings and conferences. IDSI participated in discovery. The Court also finds that Dr. Niznick affirmed at the <u>Markman</u> hearing in this case that his understanding was that if damages for patent infringement were awarded in this case, IDSI would be "responsible for any of the damages for sales made after the closing of [the 2010 Transaction]." (Dkt. No. 467-4, Velez Decl. Ex. 5 at 94:20-95:2.) In addition, the Court finds that IDSI has been represented by the same counsel as Implant Direct, (<u>see, e.g.</u>, Dkt. No. 190, signed by Patrick Bright and filed by Christopher Dugger), and has had an opportunity to influence this litigation since the 2010 Transaction. <u>Cf.</u> <u>Montana v. United States</u>, 440 U.S. 147, 154 (1979) (precluding parties and non-parties, who assume control over litigation in which they have a direct financial interest, from contesting matters that they have had a full and fair opportunity to litigate protects their adversaries from multiple lawsuits, conserves judicial resources, and minimizes the possibility of inconsistent decisions).

IDSI argues that voluntary cooperation in discovery does not make a third party a defendant. (Dkt. No. 490 at 7) ("If that were the rule [that voluntary cooperation in discovery makes a third party a defendant], counsel for third parties would be forced to require the expense of formal discovery mechanisms in every context."). However, it is not voluntary cooperation that makes IDSI a party to this case; it is successor-in-interest principles under Rule 25©. IDSI's voluntary cooperation is relevant to rebut IDSI's argument that it has not received due process and has had no chance to contest its liability. (<u>See</u> Dkt. No. 534, Oct. 3 2014 Hearing Transcr. at 27:19-28:9) ("The Constitution . . . trumps the FRCP.").

At the hearing on the present motions, IDSI's counsel also argued that representation by the same attorneys does not mean that IDSI had the opportunity to affect this litigation or "assess the record and decide what affirmative defenses to state on its own behalf until, I believe, April 15, 2013." (Dkt. No. 534 at 12:15-

13:6) ("But you must have cases before you in which multiple parties are defended by the same lawyer. . . If that law firm, on behalf of one defendant, takes a particular position, does that mean . . . Defendant Two had the opportunity to affect what Defendant One did in respect to that issue? I think it's pretty clearly the case no, that it's not."). The Court finds that counsel's assertion ignores the factual circumstances in this case, in which: (1) the same counsel represented both Implant Direct and IDSI; (2) Dr. Niznick, IDSI's President and CEO, affirmed his understanding prior to IDSI's formal joinder in this case that IDSI would be responsible for any damage for sales made after the 2010 Transaction if there is an infringement finding in this case and damages are awarded; and (3) Dr. Niznick participated actively in this litigation and made regular reports regarding this litigation to the IDSI Board.

IDSI's briefing and oral arguments on its Motion for Summary Judgment seek to assert due process rights divorced from the factual circumstances of the present case. While this is understandable, because the facts are not in its favor, this Court has found that IDSI is a successor-in-interest to Implant Direct and has had an opportunity to contest its liability in this litigation over the nearly four years since it acquired Implant Direct's assets and liabilities and began making and selling the Accused Products. IDSI's argument that due process prevents any potential liability for post-2010 Transaction conduct does not warrant summary judgment, and the Court DENIES IDSI's motion on this ground. See, e.g., In re Bernal, 207 F.3d 595, 599 (9th Cir. 2000) ("Nevertheless, [successor-in-interest] does not even begin to explain why CAC, its predecessor, allowed its default to be taken, and *that* is what [the successor-in-interest] would have to do were it allowed to substitute into this action now that it has been assigned CAC's rights.").

## II.    Zest's Motion for Summary Judgment

Zest's Motion for Summary Judgment, (Dkt. No. 467), largely mirrors its response in opposition to IDSI's Motion for Summary Judgment. Zest argues that

IDSI's liability includes that of its predecessor as well as IDSI's own post-transaction conduct; that IDSI is bound to the Court's prior orders and Implant Direct's litigation decisions; and that allowing IDSI to re-do this case will waste judicial resources and unduly prejudice Zest. (See Dkt. No. 467-1.) Zest moves for "summary judgment that Defendants Implant Direct Sybron Manufacturing LLC and Implant Direct Sybron International are liable for pre- and post- transaction conduct and are bound by the Court's prior orders and the litigation decisions of Defendants Implant Direct Mfg. LLC, Implant Direct LLC, and Implant Direct Int'l." (Dkt. No. 467.)

To the extent that Zest moves this Court for a definitive ruling that their allegations against IDSI for IDSI's post-2010 Transaction conduct related to IDSI's continuation of Implant Direct's sale of the Accused Products is formally a part of this case without the need for Zest to file a further amended complaint, the Court GRANTS the motion for the reasons set forth above. Furthermore, the Court GRANTS the motion with respect to the fact that IDSI is bound to the Court's prior orders and the litigation decisions of Implant Direct. See In re Bernal, 207 F.3d at 599.

However, to the extent Zest moves for summary judgment on IDSI's post-2010 Transaction liability, the Court DENIES the motion. Zest has introduced no evidence in support of its present motion to warrant judgment as a matter of law on the question of IDSI's liability for patent or trademark infringement.

## III.   Implant Direct's Motion for Summary Judgment

Implant Direct moves for partial summary judgment "that their liability, if any, for damages to Zest in this action is limited to events that occurred prior to December 30, 2010 . . . the date on which Implant Direct ceased doing business." (Dkt. No. 470 at 1.) Implant Direct argues it cannot be held liable for "any acts of patent infringement after December 30, 2010 because it did not make, use, sale, offer for sale, or import any products that Zest accuses of infringement after that

date," and likewise cannot be liable for "trademark infringement after December 30, 2010 because it did not use Zest's trademarks after that date." (Id.) Implant Direct's motion is supported by the testimony of Dr. Niznick. (Id.) (citing Dkt. No. 185 at 4 ("while Implant Direct still exists, the company no longer serves any business purpose, other than to pay taxes").

Without citing any legal authority, Zest opposes Implant Direct's motion on the ground that Implant Direct seeks "an advisory decision on a [sic] issue that is not ripe for adjudication on summary judgment." (Dkt. No. 489 at 17.) Zest also argues that "events taking place after December 30, 2010 are relevant to ID's liability for patent infringement" as well as Implant Direct's liability for induced and contributory infringement and trademark infringement. (Id. at 17-22.)

Zest has raised no genuine issues of material fact precluding summary judgment on Implant Direct's claim that it ceased to conduct business after December 30, 2010. In addition, Zest has failed to provide any proof of Implant Direct's actual intent to cause the acts which constitute the post-December 30, 2010 infringement. See Hewlett Packard Co. v. Bausch & Lomb, 909 F.2d 1464, 1469-70 (Fed. Cir. 1990) (actual intent to cause the acts which constitute infringement is a necessary prerequisite to finding active inducement); Global-Tech Appliances, Inc. v. SEB S.A., 131 S. Ct. 2060, 2068 (2011) (induced infringement under § 271(b) requires knowledge that the induced acts constitute patent infringement).

To the extent that Implant Direct seeks summary judgment on Zest's claims that Implant Direct infringed Zest's patents, induced or contributed to infringement of Zest's patents, or infringed Zest's trademarks after December 30, 2010, the Court GRANTS Implant Direct's motion. See EOS GMBH Electro Optical Systems v. DTM Corp., No. SA CV 00-1230 DOC (MLGx), 2002 WL 34536679, at *5-6 (C.D. Cal. Feb. 6, 2002) (granting then-defunct corporation's motion for summary adjudication that plaintiff could get no relief for infringement after it ceased to exist, in large part because plaintiff's argument of continuing liability was "tantamount to

accusing a dead man of robbing a bank").

However, the Court notes that Zest's opposition to Implant Direct's motion also focuses on the relevancy of events taking place after December 30, 2010 to the calculation of Implant Direct's damages. (See, e.g., Dkt. No. 489 at 18-19) (arguing that Implant Direct manufactured an inventory of Accused Product prior to December 30, 2010 and transferred this inventory to IDSI, which then sold the inventory of Accused Product after December 30, 2010). To the extent that Implant Direct's motion seeks to exclude *evidence* from post-transfer conduct that bears on issues of Implant Direct's liability for pre-transaction conduct, the Court DENIES the motion.

## CONCLUSION AND ORDER

For the foregoing reasons, the Court:

1.   **DENIES** Implant Direct Sybron International and Implant Direct Sybron Manufacturing LLC's Motion for Summary Judgment on Zest's Claims Based on Post-Acquisition Liability, (Dkt. No. 456);

2.   **GRANTS** in part and **DENIES** in part Zest Anchors, LLC and Zest IP Holdings LLC's Motion for Summary Judgment that IDSI is Liable for Pre- and Post- Transaction Conduct and Bound to the Court's Prior Orders and Implant Direct's Litigation Decisions, (Dkt. No. 467); and

3.   **GRANTS** in part and **DENIES** Implant Direct International, Implant Direct LLC, and Implant Direct Mfg. LLC's Motion for Partial Summary Judgment, (Dkt. No. 468).

**IT IS SO ORDERED.**

DATED:  November 4, 2014

HON. GONZALO P. CURIEL
United States District Judge