1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

9   ZEST IP HOLDINGS, LLC, et al.,     CASE NO. 10-CV-0541-GPC (WVG)

10                Plaintiffs,  **ORDER SETTING FORTH AMOUNT OF MONETARY SANCTIONS TO BE AWARDED TO PLAINTIFFS**

11     v.

12   IMPLANT DIRECT MFG., LLC, et al.,

13               Defendants,

14

15
16      Zest IP Holdings, LLC, et. al. ("Plaintiffs") filed a motion for spoliation and
17 discovery abuse sanctions ("Motion") against Implant Direct MFG., LLC, et al.
18 ("Defendants").   (Dkt. No. 121.)   The Magistrate Judge issued an Order &
19 Recommendation ("O&R") granting in part and denying in part Plaintiffs' Motion.
20 (Dkt. No. 312.)   This Court adopted in part the Magistrate Judge's O&R, granted
21 Plaintiffs' Motion, and took under submission the issue of a reasonable amount of
22 sanctions to be awarded to Plaintiffs due to Defendants' discovery abuses.  (Dkt. No.
23 440.)  Based on the parties' briefs, supporting documentation, and the applicable law,
24 the Court determines that a reasonable amount of sanctions to be awarded to Plaintiffs
25 is **$122,486.95**.

## Background

26      As set forth in prior orders in this case, this is a patent and trademark
27 infringement action involving dental attachment products.  (See Dkt. No. 1.)  In the
28

First Amended Complaint, Plaintiffs allege that the marketing and sale of the GoDirect and GPS products by Defendants infringes Plaintiffs' patent and trademark rights.  (Dkt. No. 13, "FAC," at 12-13.)  The patents at issue are U.S. Patent No. 6,030,219 ("the '219 Patent") and U.S. Patent No. 6,299,447 ("the '447 Patent").  (Id.)  Plaintiffs also allege Defendants infringed Plaintiffs' registered marks "ZEST" and "LOCATOR" without Plaintiffs' authorization, resulting in trademark infringement.  (Id. at 13.)  Plaintiffs allege several additional federal and state law claims, including false designation of origin, false advertising, unfair business practices, and unfair competition.  (Id. at 13-17.)

On August 27, 2012, Plaintiffs filed a motion for spoliation and discovery abuses sanctions ("Motion") against Defendants.  (Dkt. No. 121.)  On October 5, 2012, Defendants filed an opposition to the Motion,  (Dkt. No. 127), and Plaintiffs filed a reply in support of the Motion on October 12, 2012.  (Dkt. No. 131.)  Plaintiffs and Defendants each submitted supplemental briefs (Dkt. Nos. 192, 197), as well as supplemental declarations and joint statements (Dkt. Nos. 129, 151, 152, 160.)  On October 19, 2012 and May 29, 2013, United States District Court Magistrate Judge Gallo ("Magistrate Judge") heard oral arguments on the Motion.  (Dkt. Nos. 145, 228.)

On November 25, 2013, the Magistrate Judge issued an O&R, recommending that Plaintiffs' Motion be granted to the extent that Plaintiffs seek an adverse jury instruction, granting Plaintiffs' Motion to the extent that Plaintiffs seek monetary sanctions, and denying Plaintiffs' Motion to the extent that Plaintiffs seek a default judgment.  (Dkt. No. 312 at 24.)  The Magistrate Judge also ordered Plaintiffs to "file with the Court substantiation of the reasonable attorneys' fees and costs associated with (1) the time spent by Plaintiffs in bringing Defendants' spoliation of evidence to the Court's attention, (2) bringing the current Motion, and (3) obtaining destroyed documents from third parties."  (Id.)

On December 31, 2013, pursuant to the O&R, Plaintiffs filed a statement of costs and fees ("Statement of Costs") associated with their Motion for sanctions against

10-CV-541-GPC (WVG)

Defendants.  (Dkt. No. 325.)  On January 14, 2014, Defendants filed a reply, objecting to the Statement of Costs.  (Dkt. No. 334.)

On June 16, 2014, this Court issued an order adopting in part the Magistrate Judge's recommendation for monetary sanctions and granting Plaintiffs' Motion for monetary sanctions due to Defendants' discovery abuses.[1]  (Dkt. No. 440 at 30.) Pursuant to that order, this Court took under submission the issue of a reasonable amount of monetary sanctions to be awarded to Plaintiffs consistent with the Court's findings, stating that a written order would be issued setting forth that amount.  (Id.)

## Discussion

In the Statement of Costs, Plaintiffs seek reimbursement of $213,983.25 in fees and $10,728.43 in costs, or a total amount of $224,711.68.  (Dkt. No. 325 at 7-8.)  In particular, Plaintiffs seek fees of $213,983.25 in connection with: (1) investigating Defendants' spoliation through failure to preserve documents and destruction of documents; (2) researching, writing, and filing papers associated with the instant Motion; (3) reviewing documents produced by Defendants after Plaintiffs filed the instant Motion; (4) preparing for and traveling to hearings on the instant Motion held on October 19, 2012 and May 29, 2013; and (5) obtaining spoliated documents from third parties.  (Id. at 7.)  Plaintiffs also seek reimbursement of costs of $10,728.43 for filing fees, travel expenses to attend hearings, legal research, and document reproduction.  (Id. at 8.)

In support of their requests, Plaintiffs provide billing records indicating a general description of the work performed, the dates on which the work was performed, the amount of time spent on each date, and which attorney performed the work.  (Dkt. No. 325, Ferri Decl., Exs. 1-2.)  Plaintiffs discount the hours by 20% "in those entries where multiple tasks are described at least one of which is unrelated" to Plaintiffs' instant Motion.  (Id. at 3-4.)  Plaintiffs argue that the hours

---

[1]The Court declined to award monetary sanctions for Defendants' spoliation of evidence.  (Dkt. No. 440 at 27.)  The Court noted that it was granting monetary sanctions on a different ground than the Magistrate Judge.  (Id. at 30 n.8.)

they seek reimbursement for are reasonable, particularly because "[t]he fact that a sophisticated entity like [Plaintiffs] has paid the fees incurred, including long before any sanctions order was entered, is powerful evidence that the number of hours are reasonable." (Id. at 4.)  In assessing the prevailing market rates in the relevant community, Plaintiffs present statistical evidence of all patent infringement actions filed in this District between January 2013 and November 2013, including who served as lead counsel in those actions. (Id. at 4-5.)  Plaintiffs conclude that "multi-state/national law firms that practice patent litigation in this District" constitute the relevant community, and that Mayer Brown's hourly rates are consistent with the hourly rates among the relevant community. (Id. at 5-6.)

In objecting to the Statement of Costs, Defendants argue that: (1) the award of fees by the Magistrate Judge was improper because Defendants did not act in bad faith; (2) Plaintiffs' fee requests are unreasonable and should be reduced; and (3) Plaintiffs' requests for out-of-pocket expenses are unreasonable. (Dkt. No. 334.) As to the unreasonableness of the requested fees, Defendants argue that Plaintiffs request fees for time that is not authorized by the Recommendation: $26,515.00 for preparing the Statement of Costs, and $33,755.00 for other unauthorized activities. (Id.)  Next, Defendants argue that this Court should deny excessive and duplicate attorney time sought by Plaintiffs by reducing the award by $5,805.00, the amount spent by attorney Manuel Velez in preparing for and attending the oral hearings, as well as reducing the award based on Plaintiffs' quarter-hour billing practice. (Id.) Finally, Defendants contend that this Court should not grant fees for time that was block-billed by Plaintiffs' attorneys and should instead deny the total $43,885.75 of block-billed fees or, alternatively,  reduce the block-billed entries by 50%. (Id.)

As for the requested costs, Defendants argue that seeking to recover travel expenses for two attorneys is generally considered duplicative and unreasonable, and request that this Court either deny the total $6,697.50 of travel-related expenses or award travel expenses only for one attorney's attendance at the October 19, 2012

hearing: $1,735.82.  (Id.)

Overall, Defendants seek to reduce the amount of attorney's fees awarded to Plaintiffs by at least $116,658.25, representing a reduction of: $26,515.00 for preparing the fee petition; $33,755.00 for other activities not authorized by the Recommendation; $43,885.75for block-billed entries; $5,805.00 for excessive or duplicate time; and $6,697.50 for unreasonable travel expenses.  (Id.)  Defendants also contend that a further reduction of 20% is warranted on the basis of Plaintiffs' quarter-hour billing practice.  (Id.)

**A.   Bad Faith**

In objecting to the Statement of Costs, Defendants first argue that the Magistrate Judge improperly awarded fees because Defendants did not act in bad faith.  (Dkt. No. 334 at 2-3.)  According to Defendants, the Ninth Circuit requires a finding of bad faith for an award of monetary damages pursuant to the court's inherent authority, and the Magistrate Judge did not specifically find that Defendants acted in bad faith.  (Id. at 2.)  However, this Court, by order issued June 16, 2014, explicitly found that Defendants "acted in bad faith to impede and delay the discovery process."  (Dkt. No. 440 at 30.)  Because this Court found that Defendants acted in bad faith, Defendants' first argument fails.

**B.   Reasonableness of Fees Requested by Plaintiffs**

Plaintiffs seek attorneys' fees in the amount of $213,983.25.  (Dkt. No. 325 at 7.)  Defendants argue that the requested fees are unreasonable and excessive.

In the Ninth Circuit, courts calculate an award of attorneys' fees using the lodestar method, multiplying "the number of hours the prevailing party reasonably expended on the litigation by a reasonable hourly rate."  Camacho v. Bridgeport Fin., Inc., 523 F.3d 973, 978 (9th Cir. 2008) (internal quotation marks omitted).  The burden is on the fee applicant to demonstrate that the number of hours spent were "reasonably expended" and that counsel made "a good faith effort to exclude from [the] fee request hours that are excessive, redundant, or otherwise

unnecessary." <u>Hensley v. Eckerhart</u>, 461 U.S. 424, 434 (1983).  Further, the fee applicant bears the burden to "submit evidence supporting the hours worked and rates claimed[.]" <u>Id.</u> at 433.  "Where the documentation of hours is inadequate, the district court may reduce the award accordingly." <u>Id.</u>  "The party opposing the fee application has a burden of rebuttal that requires submission of evidence to the district court challenging the accuracy and reasonableness of the hours charged or the facts asserted by the prevailing party in its submitted affidavits." <u>Gates v. Deukmejian</u>, 987 F.2d 1392, 1397-98 (9th Cir. 1992) (citing <u>Blum v. Stenson</u>, 465 U.S. 886, 892 n.5 (1984); <u>Toussaint v. McCarthy</u>, 826 F.2d 901, 904 (9th Cir. 1987)).

The district court has wide discretion in determining the reasonableness of attorney's fees. <u>Gates</u>, 987 F.2d at 1398.  "Although in most cases, the lodestar figure is presumptively a reasonable fee award, the district court may, if circumstances warrant, adjust the lodestar to account for other factors which are not subsumed within it." <u>Ferland v. Conrad Credit Corp.</u>, 244 F.3d 1145, 1149 n.4 (9th Cir. 2001).  Once the lodestar figure is determined, it may be adjusted to account for reasonableness of the time expended based on a weighing of the following factors: "(1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the 'undesirability' of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases." <u>Ballen v. City of Redmond</u>, 466 F.3d 736, 746 (9th Cir. 2006) (quoting <u>McGrath v. County of Nevada</u>, 67 F.3d 248, 252 (9th Cir. 1995)); <u>see also</u> <u>Kerr v. Screen Extras Guild, Inc.</u>, 526 F.2d 67, 70 (9th Cir. 1975).  In subsequent case law, the Ninth Circuit has

1  held that the issue of whether the fee is fixed or contingent is no longer a valid

2  factor to consider in determining reasonable attorney's fees.  In re Bluetooth

3  Headset Prods. Liab. Litig., 654 F.3d 935, 942 n.7 (9th Cir. 2011).

4      Nonetheless, once calculated, the lodestar amount is presumptively the

5  reasonable fee amount.  Van Gerwen v. Guarantee Mut. Life Ins., 214 F.3d 1041,

6  1045 (9th Cir. 2000).  A multiplier may then be used to adjust the lodestar amount

7  upward or downward only in "'rare' and 'exceptional' cases, supported by both

8  'specific evidence' on the record and detailed findings by the lower courts" that the

9  lodestar amount is unreasonably low or unreasonably high.  Id. (citations omitted).

10      **1.      Reasonably Hourly Rate**

11      Plaintiffs seek an hourly rate of between $170 per hour and $895 per hour

12  depending on the particular attorney or paralegal.  Specifically, Plaintiffs seek an

13  hourly rate of $850-$895 for their lead counsel, Lisa Ferri; $725 per hour for

14  attorneys John Molenda and Brian Nolan; $590-$695 for attorney Manual Velez;

15  $565 per hour for attorney Neil DuChez; $360-$420 per hour for attorney Megan

16  Levine; $240 per hour for paralegal David West; and $170 per hour for paralegal

17  Benedict Moshier.  (Dkt. No. 325 at 7.)  Defendants do not challenge the

18  reasonableness of Plaintiffs' hourly rates.  (Dkt. No. 334.)

19      To determine the appropriate lodestar amount, the reasonableness of the

20  hourly billing rate must be assessed.  Blum v. Stenson, 465 U.S. 886, 896 n.1

21  (1984).  Courts look to the prevailing market rates in the relevant community for

22  similar work by attorneys of comparable skill, experience, and reputation.

23  Camacho, 523 F.3d at 979.  Generally, the relevant community is the "forum in

24  which the district sits."  Id.  The moving party has the burden to produce

25  "satisfactory evidence, in addition to the affidavits of its counsel, that the requested

26  rates are in line with those prevailing in the community for similar services of

27  lawyers of reasonably comparable skill and reputation."  Jordan v. Multnomah

28  County, 815 F.2d 1258, 1263 (9th Cir. 1987).   Affidavits by the plaintiff's counsel

and other counsel concerning the  prevailing fees in the community, and rate determination in other cases, are satisfactory evidence of the prevailing market rate. United Steelworkers of Am. v. Phelps Dodge Corp., 896 F.2d 403, 407 (9th Cir. 1990).

With respect to the attorneys' rates, Plaintiffs present evidence of the reasonableness of the rates charged in their Statement of Costs and affidavit of their lead counsel, Lisa Ferri.  (Dkt. Nos. 325, 325-1, Ferri Decl.)  To determine the relevant community, Plaintiffs searched on Pacer for all patent infringement actions filed in this District between January 2013 and November 2013, including who served as lead counsel for the parties in those actions.  (Dkt. No. 325 at 4-5.)  Based on the finding that at least one party was represented by a multi-state/national law firm in 31 of 39, or 80%, of all patent infringement actions filed, Plaintiffs conclude that the relevant community consists of multi-state/national law firms that practice patent litigation in this District.  (Id. at 5.)  Plaintiffs note that Mayer Brown, the firm that represents them, is a multi-state/national law firm that practices patent litigation in this District and has represented defendants in two of the actions filed in this District over the past year.  (Id.)  Plaintiffs further note that, due to Mayer Brown's outstanding reputation in patent litigation, Lisa Ferri was retained as counsel in lawsuits both in this District and in the Central District of California. (Id.)  According to Plaintiffs, Lisa Ferri billed using a similar scale of hourly rates in one of the other lawsuits in this District.  (Id. at 5-6.)

Plaintiffs present sufficient evidence to show that Mayer Brown's hourly rates are consistent with the hourly rates charged by other multi-state/national law firms practicing patent litigation in this District. (Dkt. No. 325 at 6.)  In particular, the 2013 National Law Journal Billing Survey ("NLJ Survey") includes billing data for 21 law firms that Plaintiffs identified as lead counsel of parties in actions filed in this District from January 2013 to November 2013.  (Id.)  Plaintiffs note that Mayer Brown's rates fall within the ranges reported for those firms; for instance, Mayer

Brown's $775 average billing rate for partners is consistent with the average range of $515-$900 for partners among the 21 listed firms, and Mayer Brown's $543 average associate billing rate is consistent with the average range of $256-$622 for associates among the 21 listed firms.  (Id.)  Based on the above, the Court finds that the attorney rates charged by Plaintiffs are reasonable.

As to the paralegal rates, Plaintiffs state that Mayer Brown billed $240 per hour for Mr. West and $170 per hour for Mr. Moshier.  (Id. at 7.)  The affidavit of Lisa Ferri indicates that those rates were "the usual and customary billing rate[s] for Mayer Brown's national practice, which includes regular practice in this District and throughout California."  (Dkt. No. 325-1, Ferri Decl., at 5-6.)  However, Plaintiffs have not presented any evidence to support that the paralegal rates sought represent the prevailing rates in the Southern District of California.  With the absence of any evidence as to the background and experience of the paralegal, the Court is unable to determine the prevailing rate.  See J&J Sports Prods., Inc. v. Diaz, 12cv1106-W(WMC), 2014 WL 1600335, at *3 (S.D. Cal. Apr. 18, 2014).  In Brighton Collectibles, Inc. v. Coldwater Creek Inc., 06cv1848-H(POR), 2009 WL 160235, at *4 (S.D. Cal. Jan. 20, 2009), the court concluded that $90 to $210 per hour was reasonable for paralegal work.  However, $90 to $210 per hour is a wide range depending on the education, skill and experience of the particular paralegal.  Therefore, because insufficient facts were presented as to the paralegal hourly rate, the Court DENIES Plaintiffs' request for reimbursement of paralegal fees.

In sum, the Court concludes that Plaintiffs' hourly rates for attorneys are reasonable, but the paralegal hourly rate is not.  Accordingly, the Court EXCLUDES the paralegal total amount of **$2,008.00.**

### 2.   Hours Reasonably Expended

The moving party bears the burden of documenting the appropriate hours spent in the litigation and submitting evidence in support of the hours worked.  Hensley, 461 U.S. at 433.  Counsel should exclude hours that are "excessive,

redundant or otherwise unnecessary." Id. at 434.  The Court should decrease the hours that were not "reasonably expended."  Id.  The opposing party must provide "submission of evidence to the district court challenging the accuracy and reasonableness of the hours charged or the facts asserted by the prevailing party in its submitted affidavits." Gates, 987 F.2d at 1397-98 (citing Blum, 465 U.S. at 892 n.5); McGrath, 67 F.3d at 255 (citations omitted) (there must be evidence to challenge the accuracy and reasonableness of the hours charged).  The party opposing fees must specifically identify defects or deficiencies in the hours requested; conclusory and unsubstantiated objections are insufficient to warrant a reduction in fees.  Cancio v. Fin. Credit Network, Inc., No. C04-03755 THE, 2005 WL 1629809, at *3 (N.D. Cal. July 6, 2005).

Even if the opposing party has not objected to the time billed, the district court "may not uncritically accept a fee request," but is obligated to review the time billed and assess whether it is reasonable in light of the work performed and the context of the case.  Common Cause v. Jones, 235 F. Supp. 2d 1076, 1079 (C.D. Cal. 2002) (citing Sealy, Inc. v. Easy Living, Inc., 743 F.2d 1378, 1385 (9th Cir. 1984)); see also McGrath, 67 F.3d at 254 n.5 (noting that court may not adopt prevailing party's representations without conducting an independent review of the fee application).  When the district court makes its award, it must provide a "concise but clear" explanation of its reasons.  Hensley, 461 U.S. at 437.  While the court is not required to rule on each of the defendants' specific objections, it is required to provide some indication of how it arrived at the amount of fees in order to enable meaningful appellate review.  Gates, 987 F.2d at 1398, 1400.

Defendants argue that Plaintiffs' requested fees are excessive for three reasons: (1) Plaintiffs seek reimbursement of fees for activities not authorized by the Magistrate Judge's O&R; (2) Plaintiffs seek reimbursement for excessive and duplicate attorney time on account of two attorneys' preparation for and attendance at hearings on this Motion, as well as Plaintiffs' quarter-hour billing practice; and

(3) Plaintiffs seek reimbursement for block-billed time.  (Dkt. No. 334.)

### a.     Time Not Authorized by the Recommendation

First, Defendants argue that Plaintiffs include in their fee request time that is not authorized by the Recommendation: $26,515.00 for fees spent by Plaintiffs in preparing their Statement of Costs, and $33,755.00 for fees spent on other activities. (Dkt. No. 334 at 3-4.)  The Magistrate Judge's O&R states: "Defendants shall reimburse Plaintiff[s] the reasonable attorneys' fees and costs associated with (1) the time spent by Plaintiffs in bringing Defendants' misconduct to the Court's attention, (2) bringing the instant Motion, and (3) obtaining destroyed documents from third parties.  Plaintiffs shall submit a request for a specific amount of fees and costs, with evidentiary support, for the Court's consideration."  (Dkt. No. 312 at 23.)

The Court agrees with Defendants that the $26,515.00 spent by Plaintiffs in preparing the Statement of Costs is not explicitly authorized by the Magistrate Judge's O&R.  The Court therefore GRANTS Defendants' objection to the **$26,515.00** incurred in preparing the Statement of Costs.

As for the fees incurred by Plaintiffs in connection with other activities, (Dkt. No. 334-2, Taheri Decl., Ex. 1), Defendants claim that the total amount of fees not authorized by the Recommendation is $33,755.00.  (Id.)  Defendants dispute seventeen billing entries related to: searching for and compiling public documents and materials; reviewing and analyzing deposition transcripts; searching and reviewing certain online sources; drafting a letter to Defendants regarding missing documents; and reviewing and analyzing documents produced by Defendants after Plaintiffs brought the Motion for Sanctions pursuant to the January 24, 2013 order. (Id.)  Defendants object to these entries on the ground that, based on the Magistrate Judge's O&R, Plaintiffs are not authorized to recover fees for those activities, including, for example, reviewing documents and deposition transcripts.  (Dkt. No. 334 at 4.)  The Court concludes that Plaintiffs have not met their burden of showing

10-CV-541-GPC (WVG)

that the disputed activities fall within the scope of authorization.  See Hensley, 461

U.S. at 434. The Court therefore GRANTS Defendants' request for a reduction of

fees in the amount of **$33,755.00.**

### b.      Excessive and Duplicate Attorney Time

Second, Defendants argue that this Court should deny excessive and duplicate

attorney time sought by Plaintiffs.  (Dkt. No. 334 at 5.)  Specifically, Defendants

contend that the Court should reduce the award by $5,805.00, the amount spent for

attorney Manuel Velez's preparation for and attendance at the oral hearings on

October 19, 2012 and May 29, 2013.  (Id.)  Defendants claim that both Lisa Ferri

and Manuel Velez attended every hearing on the present matter and that, while Lisa

Ferri conducted the vast majority of the oral argument, Manuel Velez's participation

was minimal.  (Id.)

"Counsel for the prevailing party should make a good faith effort to exclude

from a fee request hours that are excessive, redundant, or otherwise unnecessary,

just as a lawyer in private practice ethically is obligated to exclude such hours from

his fee submission."  Hensley, 461 U.S. at 434.  However, "necessary

duplication—based on the vicissitudes of the litigation process—cannot be a

legitimate basis for a fee reduction.  It is only where the lawyer does unnecessarily

duplicative work that the court may legitimately cut the hours."  Moreno v. City of

Sacramento, 534 F.3d 1106, 1113 (9th Cir. 2008).  Here, Plaintiffs have not met

their burden to establish that Manuel Velez's preparation for and attendance at the

hearings was necessary.  Therefore, the Court GRANTS Defendants' request for a

reduction of fees in the amount of **$5,805.00** for duplicate attorney time.

Defendants also request an overall award reduction based on Plaintiffs'

quarter-hour billing practice.  (Dkt. No. 334 at 5.)  Defendants claim that Plaintiffs'

practice of billing in quarter-hour increments artificially inflates their hours, and

that courts in the Ninth Circuit have criticized that practice for its tendency to cause

excessive billing.  (Id.)  For instance, Defendants cite Welch v. Metro. Life Ins. Co.,

480 F.3d 942, 949 (9th Cir. 2007), where the Ninth Circuit upheld the district court's 20% across-the-board reduction on requested hours billed in quarter-hour increments.  The Ninth Circuit in <u>Welch</u> recognized that the district court expressly correlated its reduction to the opposing party's actual over-billing.  "Having reviewed the firm's summary time sheet, the court found the hours were inflated because counsel billed a minimum of 15 minutes for numerous phone calls and e-mails that likely took a fraction of the time.  Our own review of the time sheet confirms that it is replete with quarter-hour or half-hour charges for the drafting of letters, telephone calls and intra-office conferences." <u>Id.</u>  Defendants also cite <u>World Triathalon Corp. v. Dunbar</u>, 539 F. Supp. 2d 1270, 1286 (D. Haw. 2008), where the district court applied a 10% reduction for quarter-hour billing.  In <u>Dunbar</u>, "[t]he billing statements [were] replete with quarter-hour and half-hour entries for phone calls, communications with the Court, conferences, and communications with co-counsel, which likely took a fraction of the time billed."  The district court in <u>Dunbar</u> further justified its reduction on the ground that the billing practice "likely resulted in requests for excessive hours with respect to the other billings because of the large fractional increments." <u>Id.</u>

Here, the Court finds that Plaintiffs' quarter-hour billing practice, in general, likely resulted in some requests for excessive hours.  For instance, Plaintiffs seek reimbursement for discussions and meetings with co-counsel, drafting an email to co-counsel, participating in conference calls with co-counsel, and attending a client conference.  (Dkt. No. 334-1, Taheri Decl., Ex. 1).  These activities are analogous to those in the cases cited above and likely took only a fraction of the time billed.  The Court therefore GRANTS Defendants' request and REDUCES Plaintiffs' total fee award by **20%.**

### c.  Fees for Block-Billed Time

Third, Defendants contend that this Court should not grant fees for time block-billed by Plaintiffs' attorneys and thus should either deny the total $43,885.75

of block-billed fees or reduce the block-billed entries by 50%. (Dkt. No. 334 at 6-8.) Defendants cite several cases for the proposition that block billing "makes it difficult to apportion fees between tasks that are allowed for recovery (e.g., those related to the Motion for Sanctions) and tasks that are not" and "makes it more difficult to determine whether the amount of time spent on a particular task was reasonable." (Id. at 6.) Here, Plaintiffs discounted their hours by 20% "where multiple tasks are described at least one of which is unrelated to [Plaintiffs'] Motion for Sanctions." (Dkt. No. 325 at 3-4.) In support, Plaintiffs cite Antoninetti v. Chipotle Mexican Grill, Inc., 2012 WL 2923310, at *3 (S.D. Cal. July 17, 2012), where the Court reduced the number of block-billed hours by 20%. (Id. at 4.)

Defendants object on the grounds that Plaintiffs apply a 20% discount to counter the problems involving correct apportionment of block billed time, but Antoninetti reduced block-billed fees by 20% because the practice of block billing "may increase time by 10% to 30%." (Dkt. No. 334 at 7) (citing Antoninetti, 2012 WL 2923310, at *3) (quoting Welch, 480 F.3d at 949). Therefore, according to Defendants, "Antoninetti reduced the number of hours expended by a percentage to account fo the difficulty of ascertaining the reasonableness of the time expended, not the apportionment." (Dkt. No. 334 at 7.) Further, Defendants cite several cases to show that courts have used their discretion to strike block-billed time entirely or reduce such time by 50% where block-billed entries make it impossible to determine which hours were spent on activities for which recovery was authorized. (Id.)

In the instant case, the Court finds that Plaintiffs' own 20% reduction of block-billed hours is appropriate, and a further reduction is unwarranted. In Welch, 480 F.3d at 948, the district court applied an across-the-board reduction of 20% on the requested hours because the party had block-billed some of its hours. The Ninth Circuit noted that the district court arrived at that percentage as a "middle ground" based on a report by the California State Bar's Committee on Mandatory Fee Arbitration, which determined that block billing may increase time by 10% to 30%.

Id. The Ninth Circuit acknowledged that the district court had the authority to reduce block-billed hours, but held that it erred in applying an across-the-board reduction because not all of the hours were block-billed in that case. Id. Here, Plaintiffs have already discounted their block-billed hours by 20%, which is reasonable in light of the range of 10% to 30% set forth in the California State Bar's report. Moreover, Plaintiffs have not applied a reduction to all requested hours; rather, they have properly limited the reduction to hours that were actually block-billed. Defendants' argument that Plaintiffs confuse the remedy for two distinct problems caused by block billing (i.e., reasonableness and apportionment) is unavailing. In both Antoninetti, 2012 WL 2923310, at *3, and Welch, 480 F.3d at 949, a 20% reduction on block-billed hours was warranted, and that is precisely the method that Plaintiffs have applied in the instant case. Thus, the Court DENIES Defendants' request to strike block-billed entries in their entirety or, in the alternative, to reduce block-billed entries by 50%.

## C.     Reasonableness of Costs Requested by Plaintiffs

As to costs, Defendants argue that Plaintiffs have failed to explain why it was necessary for two attorneys to travel to California to attend every hearing, and that seeking to recover travel expenses for two attorneys is generally considered duplicative and unreasonable. (Dkt. No. 334 at 8-9.) Defendants cite case law for the proposition that "[c]ourts are especially reluctant to award fees for traveling to a hearing where an insufficient showing has been made that local counsel alone could not have attended and/or the out-of-state counsel could not have attending telephonically." (Id. at 9.) Defendants request that this Court either deny entirely $6,697.50 of travel-related expenses or award travel expenses for only one attorney to attend the October 19, 2012 hearing, amounting to $1,735.82. (Dkt. No. 334 at 8-9.)

With respect to long-distance travel for out-of-state attorneys, courts generally do not allow fees for such time absent a showing that recovering for travel

time is customary in the particular facts of the case.  See Comcast of Ill. X, LLC v. Jung Kwak, 2010 WL 3781768, at *6-7 (D. Nev. Sept. 17, 2010); see also Jankey v. Beach Hut, 2006 WL 4569361, at *4-5 (C.D. Cal. Dec. 19, 2006).  Courts are especially reluctant to award fees for traveling to a hearing where an insufficient showing has been made that local counsel alone could not have attended and/or the out-of-state counsel could not have attended telephonically.  See, e.g., Comcast, 2010 WL 3781768, at *7; Stanford v. Ocwen Fed. Bank, FSB, 2012 WL 37383, at *2 (E.D. Cal. Jan. 26, 2012) (reducing fees for travel time where telephonic appearance was possible).  That reluctance reflects the Court's need to guard against awarding "self-imposed and avoidable" fees.  Comcast, 2010 WL 3781768, at *5.  Here, Plaintiffs have not established that recovery for attorney travel time is customary under the particular facts of the case.  However, the Court does not find that Plaintiffs, by sending one attorney to attend the hearing, incurred fees that were "self-imposed" or "avoidable."  See id.  The recovery of travel expenses for both attorneys here is more questionable.  Therefore, the Court GRANTS Defendants' request to reduce travel expenses to **$1,735.82**, the amount spent to send one attorney to attend the October 19, 2012 hearing.

Based on the above, the following amounts have been excluded from the total of $224,711.68 sought: (1) $2,008.00 for paralegal fees; (2) $26,515.00 for preparing Statement of Costs; (3) $33,755.00 for other non-recoverable activities; (4) $5,805.00 for duplicate attorney time; (5) $29,180.05[2] for quarter-hour billing; and (6) $4,961.68[3] for travel expenses.  Therefore, the amount of fees and costs totals **$122,486.95**.

---

[2]The Court calculated $29,180.05 as follows.  The Court awarded a 20% overall reduction in fees based on quarter-hour billing.  The total fees were $145,900.25 after excluding the following from the $213,983.25 in fees sought: (1) $2,008.00 for paralegal fees; (2) $26,515.00 for preparing Statement of Costs; (3) $33,755.00 for other non-recoverable activities; and (4) $5,805.00 for duplicate attorney time.  Twenty percent of $145,900.25 is $29,180.05.

[3]The Court calculated $4,961.68 by subtracting $1,735.82 from total travel expenses of $6,697.50.

10-CV-541-GPC (WVG)

**D.**     **Lodestar Adjustment**

Neither party has raised the issue that the lodestar should be adjusted upward or downward based on the Kerr factors.  The Court concludes that this is not a rare and exceptional case supporting an adjustment and declines to adjust based on the Kerr factors.  See Van Gerwen, 213 F.3d at 1045.

**CONCLUSION**

Based on the above, the Court awards Plaintiffs monetary sanctions in the amount of **$122,486.95**.

**IT IS SO ORDERED.**

DATED:  December 3, 2014

HON. GONZALO P. CURIEL
United States District Judge